UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,    :
     :
     :    CASE NO. 20-CR-188
     :
v.     :    **MEMORANDUM OF POINTS AND**
     :    **AUTHORITIES ISO MOTION TO**
     :    **COMPEL DISCOVERY AND SET**
HAMID AKHAVAN,    :    **DISCLOSURE DEADLINES**
    a/k/a "Ray Akhavan",    :
     :
     :
    Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DEFENDANT HAMID AKHAVAN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND SET DISCLOSURE DEADLINES

William Burck
Derek Shaffer
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Email: williamburck@quinnemanuel.com
Email: derekshaffer@quinnemanuel.com

Ira P. Rothken
Jared Smith
Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone: (415) 92404250
Email: ira@techfirm.net
Email: jared@techfirm.net

Christopher Tayback
Paul Slattery
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Email: christayback@quinnemanuel.com
Email: paulslattery@quinnemanuel.com

Sara Clark
Quinn Emanuel Urquhart & Sullivan, LLP
Pennzoil Place
711 Louisiana St., Suite 500
Houston, TX 77002
Telephone:  (713) 221-7010
Email: saraclark@quinnemanuel.com

*Attorneys for Hamid Akhavan*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ....................................................................................................... ii

I.      Introduction ........................................................................................................... 1

II.     Relevant Background ............................................................................................ 3

     A.      The Indictment ........................................................................................... 3

     B.      Essential Prosecution Evidence Based on Indictment .............................. 4

     C.      Essential Defense Evidence Based on Indictment ..................................... 6

     D.      Procedural History and Specific Requests ................................................ 6

III.    Analysis................................................................................................................ 10

     A.      Federal Rule of Criminal Procedure 16(a)(1)(E): Documents and Objects .......... 11

     B.      Memoranda Regarding Interviews or Meetings in this Matter .............................. 21

     C.      Federal Rule of Criminal Procedure 16(a)(1)(A)-(C): Statements by Mr. Akhavan, other Defendants, and alleged co-conspirators.................................... 21

     D.      Federal Rule of Criminal Procedure 16(a)(1)(D): Prior criminal records. ........... 21

     E.      *Brady* and specific *Brady* materials: financial institutions, merchant category codes, and ▮ cannabis dispensaries................................................. 22

     F.      *Giglio* and Jencks Act Materials should be provided 50 days before trial. ........... 23

IV.     Conclusion ..........................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

**Cases**

*Sandusky v. Goetz*, 944 F.3d 1240 (10th Cir. 2019 ..................................................... 14

*Strickler v. Greene,* 527 U.S. 263 (1999) ................................................................. 22

*United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975) ............................................. 18

*United States v. DiMarzo*, 1993 WL 426936 (S.D.N.Y. Oct. 21, 1993) ..................... 14

*United States v. Feola,* 651 F. Supp. 1068  (S.D.N.Y. 1987), *aff'd,* 875 F.2d 857 (2d Cir. 1989)
............................................................................................................................. 16

*United States v. Ferguson*, 478 F. Supp. 2d 220 (D. Conn. 2007) ............................. 21

*United States v. Freeman*, 2019 WL 2590747 (S.D.N.Y. June 25, 2019) .................. 20

*United States v. George*, 786 F. Supp. 11 (D.D.C. 1991) ......................................... 11

*United States v. Giffen*, 379 F. Supp. 2d 337 (S.D.N.Y. 2004) ................................. 21

*United States v. Havens,* 446 U.S. 620 (1980) ......................................................... 24

*United States v. Inadi*, 475 U.S. 387 (1986) ............................................................ 24

*United States v. Levine*, 249 F. Supp. 3d 732, 733 (S.D.N.Y. 2017) .................. 20, 24

*United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) ............................................ 11

*United States v. Mahaffy,* 693 F.3d 113 (2d Cir. 2012) ............................................ 22

*United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) ....................................... 14

*United States v. NYNEX Corp.*, 781 F. Supp. 19 (D.D.C. 1991) ............................... 12

*United States v. Rivas*, 377 F.3d 195  (2d Cir. 2004) ............................................... 22

*United States v. Rosenthal*, 1991 WL 267767 (S.D.N.Y. Dec. 3, 1991 ..................... 20

*United States v. Turkish*, 458 F. Supp. 874 (S.D.N.Y. 1978) ................................... 19

*United States v. Vilar*, 530 F. Supp. 2d 616 (S.D.N.Y. 2008) ........................ 18, 19, 20

*Youngblood v. West Virginia,* 547 U.S. 867 (2006) .................................................. 22

**Statutes**

18 U.S.C. § 3500 .................................................................................................... 24

Cal. Bus. & Prof. Code, Div. 10, Ch. 5, *et seq.* (2018) ............................................. 15

*Consolidated Appropriations Act of 2020*, Pub. L. No. 116-93, § 531, 133 Stat. 2317 (2019) . 2, 6

**Rules**

Fed. R. Cim. P. 16(a)(1)(A)-(C) ............................................................................... 8

Fed. R. Crim. P. 16(a)(1)(A) and (B) ........................................................................ 21

Fed. R. Crim. P. 16(a)(1)(D) .............................................................................. 9, 21

Fed. R. Crim. P. 16(a)(1)(E) ..................................................................... 7, 11, 16, 21

Fed. R. Crim. P. 6(e)(3) ........................................................................................... 18

**Other Authorities**

*Marijuana      Dispensaries      in      California*,      WeedMaps      (2020),
https://weedmaps.com/dispensaries/in/unitedstates/california?filters%5BanyRetailerService%
5D%5B%5D=storefront&filters%5Bamenities%5D%5B%5D=is_medical&filters%5Bameniti
es%5D%5B%5D=is_recreational ............................................................................. 15

*Recreational pot: Processors of credit, debit cards relax rules*, DENVER POST (Jan. 7, 2014, last update Oct. 2, 2016) https://www.denverpost.com/2014/01/07/recreational-pot-processors-of-credit-debit-cards-relax-rules/ ........................................................................................... 5

*Taxes and Cannabis: Why doesn't' my medical marijuana card exempt me?*, Eaze (May 12, 2019) ............................................................................................................................... 15

*Visa, MasterCard Relax Rules for Marijuana Purchases*, CONVENIENCE.ORG (Jan. 10, 2014) https://www.convenience.org/Media/Daily/ND0110143; David Migoya ...................................... 5

Defendant Hamid Akhavan hereby respectfully submits this Memorandum of Law in support of his Motion to Compel Discovery and Set Disclosure Deadlines.

## I.     Introduction

Defendant Hamid Akhavan (Mr. Akhavan or the "Defendant") brings this motion seeking an order compelling the Government to produce certain specific and exculpatory discovery related to the charge in this case, as well as other more general categories of discovery, on a schedule that will allow sufficient time for defense counsel to utilize the materials for trial.  Although Mr. Akhavan requested these categories of discovery by letter, the Government's responses have been vague, negative, or non-committal leading up to the deadline for filing motions.

The one-count indictment against Mr. Akhavan alleges a conspiracy to commit bank fraud by misrepresenting the products underlying certain credit and debit card transactions in order to get banks to process transactions involving marijuana, allegedly contrary to bank and credit card network policies.  Mr. Akhavan sought identification of the specific banks, credit and debit card policies, and transactions at issue via a Motion for Bill of Particulars, which was partly denied on the basis that such details would be reflected in discovery.  Yet no such information has in fact been produced in discovery, and the Government will not commit to producing it.

Timely production of this evidence is essential here.  According to the Indictment,  a crime occurred wherever a bank had a policy against marijuana transactions and would not have processed a transaction absent a fraudulent representation.  At the same time, the Indictment acknowledges that a material percentage of banks and credit card companies had no such policy: "*many* United States banks *are* unwilling to process [marijuana] payments" and "*most* banks in the United States *were* unwilling to process credit and debit card transactions involving marijuana."  (Indictment ¶¶ 1, 12) (emphasis added).  A fair read of the verb tenses indicates a

majority of banks today will process marijuana transactions, and that a substantial number of banks would have done so at all relevant times.[1]  It is essential to Mr. Akhavan's defense to know exactly what policies of which banks and which credit card companies – if any – prohibited the specific marijuana transactions he is alleged to have conspired to facilitate.

Moreover, the Rohrbacher-Farr Amendment prohibits DOJ from using appropriated funds to interfere, via prosecution or otherwise, with any State's implementation of laws to authorize the use, distribution, possession, or cultivation of medical marijuana.  *Consolidated Appropriations Act of 2020*, Pub. L. No. 116-93, § 531, 133 Stat. 2317 (2019).  As many of the transactions at issue were for medical marijuana, for which Mr. Akhavan cannot be prosecuted, disclosure of the specific transactions alleged to underlie the Indictment is critical.  The Government should produce its evidence of which transactions do and do not fall within the ambit of its Indictment, including its evidence distinguishing medical from recreational marijuana transactions.

The Government surely considered these important categories of discovery, along with several other categories of evidence described below, in order to arrive at the Indictment, and it should now be compelled to produce them in order to enable defense against the Indictment.  And the Government should be producing the requested materials without obstruction or delay, on a schedule that will permit the defense to adequately prepare for trial in this complex matter.

---

[1]    The bare list of banks provided by the Government in a June 22, 2020 letter, attached as Exhibit A– and all the information it fails to provide – are addressed *infra* at pages 12 and 13.

## II.      Relevant Background

### A.      The Indictment[2]

On March 9, 2020, a Grand Jury issued a one-count Indictment against Hamid Akhavan and Ruben Weigand.[3]  It alleges generically that "many United States banks are unwilling" to process transactions involving marijuana. (Indictment at ¶1); *see also* (Indictment at ¶12) ("[M]ost banks in the United States were unwilling to process credit and debit card transactions involving marijuana . . . .").  It also alleges the Defendants and their California-based company provided a mobile platform to process marijuana-related transactions for California and Oregon purchasers through both debit and credit card payments.  (Indictment at ¶¶ 3-4).

These payments were allegedly conducted through "payment networks" run by Credit Card Companies like Visa and MasterCard.  The Government asserts these companies "have rules that prohibit their credit cards from being used for marijuana purchases." (Indictment at ¶5) (claiming policies also apply to many debit cards).  The Government then explains violations of these alleged prohibitions may result in a merchant being terminated from the network.  (Indictment at ¶7-8).

The scheme outlined in the Indictment boils down to inducing some set of U.S. banks to process credit card and debit card transactions involving marijuana when they would otherwise not do so.  Yet the Indictment hides the ball about how that scheme actually operated, and the Government has not produced evidence that clarifies its theory.  The only allegation in the Indictment logically related to how a scheme might operate is the use of "merchant category codes" alleged to be deceptive.  (Indictment ¶9).  According to the Indictment, because there were no

---

[2]    This summary of the Indictment closely tracks the summary found in Mr. Akhavan's concurrently-filed Motion to Dismiss in the event the Court is already familiar with that Motion.

[3]    Capitalized terms not otherwise defined have the meanings ascribed to them in the Indictment.

merchant codes specifically for marijuana, someone (implicitly the Defendants) needed to assign intentionally false merchant codes to dispensaries in order to set up processing of the transactions.

However, the Indictment does not identify *who* — the Defendants, alleged co-conspirators, or other third parties — generated or assigned those codes.  (Indictment ¶ 9).  It alleges merely that Akhavan "and others" "worked with and directed others to apply incorrect [merchant codes] to their transactions," and that various transactions were ultimately processed. (Indictment ¶ 14). In other words, an unindicted, unnamed party took every alleged action that forms the gravamen of the alleged crime, including assigning the merchant category codes.

Further, the Indictment is very sparse about what merchant category codes actually are and how they work.  It assumes these codes are precise, well-understood warranties to the acquiring bank as to the subject matter of a transaction—such that use of an inaccurate or inapposite category code, or underlying sale of an item that has no applicable category code, translates to an intentional falsehood.  (Indictment ¶ 9).  But that blinks (or at least elides) reality, as discussed below.

### B.    Essential Prosecution Evidence Based on Indictment

There are a few categories of evidence that are obviously essential to the Government's case based on this Indictment.  Presumably, these categories of evidence would have been available to the grand jury and are in the Government's possession; they simply have not been produced yet.

*First, issuing bank policies*:  The transactions at issue are not unlawful in the states in which they occurred.  Moreover, merchant category codes are merely a general categorization of goods sold by a merchant, not a warranty of compliance with any particular bank or credit card policy. The bank fraud here is predicated on the processing of marijuana transactions being a violation of the express individual policies of certain banks.

4

*Second, credit card company policies*:  The Indictment alleges Credit Card Companies –
*e.g.*, Visa or Mastercard – have policies against processing marijuana transactions, presumptively
with respect to both credit cards and debit cards.  (Indictment at ¶5).  The policies of these Credit
Card Companies – and there are only a handful of them – are an essential piece of proof of the
Government's case.  Again, they have not been produced, which is of particular concern because
the public statements of policy of the Credit Card Companies have been *opposite* what the
Government alleges here.[4]

*Third, merchant bank evidence*:  The mechanism for the fraud alleged in the Indictment is
the assignment of allegedly deceptive merchant category codes or MCCs.  (Indictment ¶9).  The
Indictment, however, does not allege Mr. Akhavan or any entity he controls assigned codes.
(Indictment ¶ 14).  Specifics of the who, what, when, and where for assigning and processing the
MCCs are therefore fundamental to the Government's proof.   Despite this, there has been no
production of evidence linking merchant banks, their contracts with the Credit Card Companies
and/or issuing banks, their communications with Defendants, the assignment of MCCs to
transactions, or those MCCs being the cause of the transactions going through.

*Finally, statements by banks*:  Ultimately, this is a bank fraud case wherein the issuing
banks are the entities that were allegedly deceived into taking actions they would not have absent
deceptive conduct.  Basic proof of the elements requires evidence (1) that the issuing banks
actually reviewed these MCCs, and (2) that they rely on the MCCs to decide whether to permit or

---

[4]   *See Visa, MasterCard Relax Rules for Marijuana Purchases*, CONVENIENCE.ORG (Jan.
10, 2014), https://www.convenience.org/Media/Daily/ND0110143; David Migoya, *Recreational
pot: Processors of credit, debit cards relax rules*, DENVER POST (Jan. 7, 2014, last update Oct. 2,
2016),        https://www.denverpost.com/2014/01/07/recreational-pot-processors-of-credit-debit-
cards-relax-rules.

deny a transaction.  It would also require evidence that particular banks would not have engaged in transactions at issue if given more or different information.  None of this has been produced.

### C.     Essential Defense Evidence Based on Indictment

As a result of the Rohrbacher-Farr Amendment, Mr. Akhavan cannot be prosecuted based on transactions for medical marijuana.[5]  Despite this, the Government has produced no evidence illuminating the contours of the underlying transactions.  In fact, in a June 22 letter to defense counsel, the Government acknowledged for the first time that **100%** of the transactions at issue before January 2018 (the Indictment's opening sentence contends the conspiracy goes back to 2016) were actually for *medical* marijuana.  (Exhibit A).  It then stated that **99%** of transactions *thereafter* were for *recreational* marijuana, (*id.*), which is not remotely plausible.  The Government's evidence on this point is important to Mr. Akhavan's defense.

### D.     Procedural History and Specific Requests

Prior to undersigned counsel's entry into this case, the Government provided certain discovery to the Defendants.  That discovery does not contain the materials sought by this motion. If the Government nonetheless claims to have produced all the materials it possesses that are responsive to this Motion, then it should be willing to confirm as much, which it has not done.

---

[5]   Rohrbacher-Farr was first passed in 2014 and has been included in every omnibus appropriations bill since.  It provides:  "None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Washington, and Wisconsin, to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *Consolidated Appropriations Act of 2020*, Pub. L. No. 116-93, § 531, 133 Stat. 2317 (2019).

On June 17, 2020, the undersigned counsel requested via letter (the "Discovery Letter") that the Government produce the documents described herein, or, as applicable, confirm its prior production and identify relevant bates numbers.[6] Those requests are summarized as follows:

*First*, the Government should comply with Federal Rule of Criminal Procedure 16(a)(1)(E), including insomuch as it will produce:

- any and all policies or guidelines utilized by the acquiring, merchant or issuing banks as described in the Indictment with respect to the processing of marijuana sales, whether medical or recreational;

- any and all public and private communications by Visa and MasterCard, and any of their members or affiliates, on processing cannabis credit card transactions in the US;

- any and all Visa and MasterCard contracts and rules, regulations and other evidence relevant to the charges in the Indictment, including, but not limited to such materials (1) applicable to each of the entities and classes of entities and issues alleged in the superseding indictment such as the acquiring/merchant banks in the EU, the issuing banks in the US, credit card processing entities, and the merchants in the EU and US; (2) relevant to which members or entities or persons were responsible for onboarding the merchants and choosing the exact merchant category codes ("MCC[s]") for merchants, including those alleged in the superseding indictment, and implementing them in the Visa and MasterCard networks, and any and all contractual remedies and penalties for negligently or willfully selecting inaccurate MCC codes or any other conduct alleged in the superseding indictment; (3) related to whether or not an MCC code in the Visa and MasterCard networks is recognized, contractually or otherwise, as a method of discerning and rejecting credit card transactions involving cannabis in the US; and (4) that permit the on boarding of merchants by acquiring banks, even if some, but not all, issuing banks prefer not to process such transactions;

- any and all documents, interviews, analyses or any other item relating to the financial transactions and/or transaction processing at issue in the Transaction Laundering Scheme (as defined in the Indictment);

- all documents, objects, and anything else seized by the Government, during any search or seizure conducted in this matter;

- to the extent not already produced, all documents, including electronic data, produced to the Government by any third party during the investigation of this matter;

---

[6] The June 17, 2020 Letter is attached as Exhibit B.

- memoranda, notes, or recordings of any and all proffers that the Government has received from anyone in connection with this matter, including attorneys representing individuals or companies, and any materials the Government received in connection with any proffers;

- any protocols utilized by taint teams to review the contents of email and cloud-based accounts or the content of any electronic devices associated with the Defendant;

- copies of all grand jury testimony in the investigation of this matter, including grand jury testimony of all potential witnesses; and

- all potential trial exhibits and any other documents the Government may introduce at trial, as well as witnesses that may be called at trial.  (With respect to this final category of materials, Mr. Akhavan requests only that they be produced 50 days before trial.)

  _Second_, the Government should produce all memoranda regarding interviews or meetings

that were conducted in association with this matter, including but not limited to:

- memoranda generated by employees or agents of the Federal Bureau of Investigation ("FBI");

- interview memoranda for all current or former employees, officers, directors, owners, or other personnel of (1) the Online Marijuana Marketplace (as defined in the Indictment); (2) ███████████████████; (3) any of the Payment Processors (as defined in the Indictment) and any of the acquiring, merchant or issuing banks or other financial institutions referenced in the Indictment; (4) any of the alleged Phony Merchants (as defined in the Indictment); and (5) any of the Credit Card Companies (as defined in the Indictment);

- any interview memoranda regarding any interview with "Tanya," "Ollie," Kanye Wilkins, Nina Akhavan, Medhat Mourid, Greg D'Amore, Will Ayala, or "CW-1" (as defined in produced document HA_USAO_00000248, et seq.) (Agent Affidavit in Support of Application for Search and Seizure Warrant), and any other individual interviewed by the FBI or other Government agency in connection with this matter; and

- complete copies of all notes taken during any such meeting or interview, including but not limited to handwritten notes.

  _Third_, the Government should produce, pursuant to Fed. R. Cim. P. 16(a)(1)(A)-(C):

- all written and oral statements of the Defendant; and

- all notes, transcripts, memorandum, and recordings of any interview conducted of, or of statements otherwise made or adopted by, the Defendants or any alleged co-conspirators.

_Fourth,_ the Government should comply with Federal Rule of Criminal Procedure 16(a)(1)(D) by producing any and all prior criminal records of the Defendant.

_Fifth_, the Government should comply with its obligations under _Brady_ and its progeny, and produce any exculpatory and impeachment material, including:

- statements, documents, communications or other material that contradicts in any way that the Credit Card Processors or financial institutions would categorically reject any marijuana-related transaction, including evidence suggesting that these entities turned a blind eye to such activity, including communications, whether public or private, by Visa, MasterCard, and any of their members, regarding processing of cannabis credit card transactions, including admissions that they permit the same;

- statements, documents, communications and/or other materials that contradict in any way that the Defendant "used merchant codes for other products" (Indictment ¶ 9); "create[d] the Phony Merchants" and "establish[ed] Visa and Mastercard merchant processing accounts" (Indictment ¶13); or "worked with and directed others to apply incorrect MCCs to the Online Marijuana Marketplace Company marijuana transactions" (Indictment ¶ 14); and

- all evidence related to the legality of the ███ cannabis dispensaries and their conduct under the State law where such dispensaries were located - for example medical cannabis dispensaries in California

_Sixth_, the Government should comply with its obligations under _Giglio_ 50 days before trial and identify any non-prosecution or plea agreements for any witness it intends to call, as well as any documentation or communications regarding the same, including, but not limited to:

- "CW-1", as defined in Government production HA_USAO_00000248, _et seq_ (Agent Affidavit in Support of Application for Search and Seizure Warrant);

- ███ as well as "CEO" and "CEO-2", as defined in HA_USAO_00000248, _et seq._ (Agent Affidavit in Support of Application for Search and Seizure Warrant); and

- Any and all co-conspirators named in the Government's letter dated June 19, 2020 in response to the Court's Order of May 1 that the Government file a bill of particulars in this matter.[7]

---

[7]   This Letter is being filed under seal and is Exhibit C.

_Finally_, the Government should similarly comply with the Jencks Act 50 days before trial, which would ensure that exhibit lists, witness lists, _Giglio_ material, and Jencks Act material are all available at the same time and sufficiently in advance of trial to facilitate intelligent preparation.

The Government responded to Mr. Akhavan's Discovery Letter setting forth the above requests on June 22 and 23.  The June 22 letter attached a 25-page list of banks without tying them to any policies or transactions and made the statements above about medical marijuana, while otherwise ignoring Mr. Akhavan's requests.[8]  The June 23 letter acknowledged certain discovery obligations, resisted setting a specific deadline for disclosure of some categories, and was otherwise non-committal about the discoverability of the specific documents and information requested above.[9]

Accordingly, the Defendant is respectfully filing the instant motion to preserve his rights, obtain the above described material from the Government, or, as applicable, obtain the Governments' assurance that all responsive materials have been provided.

**III.    Analysis**

Mr. Akhavan's respectfully requests an order providing relief that falls into three general categories.  First, he seeks evidence – idiosyncratic to this case – necessary to understand the crime he is alleged to have committed (given the paucity of facts in the Indictment) and to mount a defense – which banks, with which policies, and which transactions are alleged to have been the subject of bank fraud?

---

[8]    _See_ Letter dated June 22, 2020, attached as Exhibit A.

[9]    _See_ Letter dated June 23, 2020, attached as Exhibit D.

Second, he seeks information typical of federal criminal cases, such as prior convictions of his, his own written statements, and memoranda of interviews of alleged co-conspirators.  The Government's June 22 and 23 letters simply ignored these items.[10]

Finally, Mr. Akhavan seeks to set firm deadlines for the completion of certain obligatory disclosures from the Government, including witness lists, exhibit lists, *Giglio* material, and Jencks Act material.  Given the breadth of potential entities relevant to the Government's theory here, this is not a case where trial preparation can be done on guesswork and intuition of who will be called.

A. **Federal Rule of Criminal Procedure 16(a)(1)(E): Documents and Objects.**

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the Government must produce any documents if:  (i) they are material to preparing the defense, (ii) the Government intends to use them in its case-in-chief, *or* (iii) they were obtained from or belong to Mr. Akhavan.

With respect to the first prong, "[t]o show materiality under this rule the defendant must demonstrate that the requested evidence bears some abstract logical relationship to the issues in the case. . . . .There must be some indication that the pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor."  *United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993) (citations and quotations omitted) (ellipses in original).  The documents sought in discovery "need not directly relate to the defendant's guilt or innocence.  Rather, they simply must play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal."  *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (citations and quotations omitted).

This "materiality standard normally is not a heavy burden" and "evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible

---

[10]   The June 22 and June 23, 2020 letters are attached as Exhibits A and D, respectively.

evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* at 351 (citations and quotations omitted); *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25, n.8 (D.D.C. 1991) ("the government should interpret the 'material to the preparation of the defendant's defense' language … broadly to ensure fairness").

> **1. The Government should produce the bank and Credit Card Company policies against marijuana transactions as they are the predicates of the alleged crime.**

It is worth underlining the Rube-Goldberg-like design of the Government's allegations of a crime here because it makes clear the necessity of the documents under this heading and because it illustrates the necessity of documents below. The Government's theory is like an electrical circuit with a series of switches (a particular bank, a particular policy, a defendant making a particular misrepresentation, etc.) *all of which* must be flipped on at the same time *in the same transaction* for there to be a crime, as alleged. One switch or another being on at a time is not enough.

The first switch is that a particular bank had an explicit policy against the processing of marijuana transactions. Unable to directly prosecute marijuana-related transactions under Rohrbacher-Farr, the bank fraud alleged here is predicated entirely on the contents of the policies of individual private party banks. No violation of specific bank's policy means no crime.

On June 22, 2020, the Government wrote in partial response to Mr. Akhavan's June 17 letter. It purported to respond on the issue of identifying banks, but it just made clear how woefully inadequate the Government's evidence is. (Exhibit A). It attaches a single-spaced 25-page list of banks, and it states, in a careful and awkward sentence: "please find attached . . . a non-exhaustive list of U.S.-based issuing banks associated with individuals who made MasterCard and Visa credit card purchases from the Online Marijuana Marketplace Company in the course of the Scheme."

The problems are obvious.  Did those banks process those purchases or were they just associated with people who made the purchases?  Did those banks have policies against marijuana transactions?  When were the transactions?  Were they medical?  Would the banks not have processed them with a different code?  Will they say so?  The list, while many pages long, it provides no information.  Indeed, because it is expressly "non-exhaustive," there is no assurance that any institutions omitted could be crossed off as irrelevant.  The Government should be required to produce such discovery materials to the defense.

### 2. The Government should produce contracts and rules governing assignment of merchant category codes as they are the alleged mechanism of the fraud.

The Government's theory of fraud depends upon the MCCs, which are *the* alleged vehicle for the fraudulent representations that made the entire alleged scheme work.  (Indictment ¶ 9).  Accordingly, the Government should be ordered to produce *all* the documents relevant to its allegations regarding MCCs, whether those documents pertain to the contracts underlying the assignment of MCCs or communications between merchant banks and Mr. Akhavan.

### 3. The Government should produce transaction analyses linking banks with relevant policies to particular non-medical transactions.

Other evidence is necessary to fill in holes in the Government's theory.  Specifically, three would need to be evidence of a bank, with an ascertainable policy, processing a given transaction at a given time and location, on a credit or debit card, based on an MCC assigned by a particular merchant bank, and so forth – as predicate to the steps alleged in the Indictment.  The Government should produce any such analyses.

First, absent these analyses, it is impossible to investigate the materiality or causal significance of MCCs.  The alleged mechanism for the scheme is MCCs, but the Government has yet to pair an allegedly fraudulent MCC with a bank, a policy against marijuana transactions, and

a statement by the bank it would not have processed a transaction but for the MCC assigned. *C.f.,*
*e.g., United States v. DiMarzo*, 1993 WL 426936, at *2 (S.D.N.Y. Oct. 21, 1993) (concluding
indictment for bank fraud is sufficient where it "sets forth the dates upon which defendant
deposited or attempted to deposit altered or forged stolen checks, the nature of the alteration or
forgery, the name of each bank in which each check was deposited or attempted to be deposited,
and the name of the account and bank against whom each of the checks was drawn.").

Second, absent these analyses, it is impossible to prepare a defense with respect to whether
an MCC was intended to induce a bank to take actions it otherwise would not have. The implied
intent of the MCC selected would depend on what MCCs were available for the transaction based
on the Credit Card Network and bank, and what the underlying transaction was.

Finally, the lack of transaction-level evidence makes it impossible for the Government to
establish it is not running afoul of the Rohrabacher-Farr Amendment's prohibition on interfering
with state medical marijuana laws. The Ninth Circuit has interpreted the Amendment to mean
that, "[i]f the federal government prosecutes [] individuals [engaged in activity permitted under
state law], it has prevented the state from giving practical effect to its law providing for non-
prosecution of individuals who engage in the permitted conduct." *See United States v. McIntosh*,
833 F.3d 1163, 1176–77 (9th Cir. 2016). More recently, the Tenth Circuit permitted a district
court to consider whether the Amendment prohibits the Bureau of Prisons from continuing to
expend funds to incarcerate someone based on a conviction for conduct that complied with state
law. *See Sandusky v. Goetz*, 944 F.3d 1240, 1244, 1247 (10th Cir. 2019).

As discussed *supra* at 6, the Government has recently admitted *100%* of transactions at
issue up to January 1, 2018 were for medical marijuana (despite indicting Mr. Akhavan for conduct

back to 2016), but the Government somehow now contends that a full *99%* of transactions starting January 1, 2018 were for recreational marijuana. *See* Ex. A (June 22, 2020 Letter).

The Government needs to produce its evidence on this point. To start, it needs to establish that this prosecution is actually lawful. Moreover, the extremity of the Government's position – that transactions went from 100% to 1% medical in a day – is likely based on a misunderstanding, at best. That transactions take place at a dispensary entitled to distribute recreational marijuana does *not* preclude them being for medical marijuana. A substantial portion of California's implementation medical marijuana now relies upon a dispensary system where dispensaries can sell to both medical and recreational users.[11] Notably, the Government has some means to discern recreational from medicinal marijuana purchases: medical marijuana users are exempt from the substantial taxes imposed on the sale of marijuana, and they are entitled to purchase and carry much more marijuana than a recreational user.[12] Transaction records of dispensaries will thus either indicate or provide clear evidence that a purchaser presented a medical marijuana card.

---

[11]  California's Business and Professions Code, Division 10, Chapter 5, describes the licensing requirements for marijuana distributors after January 1, 2018, and the grounds on which a license may be refused. Notably, there is no requirement that a retailer sell only one or the other. That is, a retailer, or dispensary, may sell both medical and recreational marijuana. *See* Cal. Bus. & Prof. Code, Div. 10, Ch. 5, *et seq.* (2018). And, a quick internet search reveals that at least most California dispensaries sell both. *See Marijuana Dispensaries in California*, WeedMaps (2020), https://weedmaps.com/dispensaries/in/united-states/california?filters%5BanyRetailerService%5D%5B%5D=storefront&filters%5Bamenities %5D%5B%5D=is_medical&filters%5Bamenities%5D%5B%5D=is_recreational.

[12]  *See Taxes and Cannabis: Why doesn't' my medical marijuana card exempt me?*, Eaze (May 12, 2019, https://www.eaze.com/article/taxes-cannabis-doesnt-medical-marijuana-card-exempt (explaining that medical marijuana recommendation holders may save up to 10% off their purchases of marijuana at retail stores, as compared to recreational users, and that medical marijuana ID card holders are simply exempt from the taxes recreational users pay).

The Government should be compelled to produce its evidence distinguishing the underlying transactions that are medical and those that are allegedly recreational, or it should be forced to acknowledge it has none.

### 4. The Government should produce or permit inspection of the remaining categories of documents, under Rule 16(a)(1)(E).

The remaining categories of documents sought by Mr. Akhavan should likewise be produced to ensure a fair trial. As discussed above, Rule 16(a)(1)(E) entitles Mr. Akhavan to discovery of any documents that are material to preparing his defense, that the Government intends to use at trial, or that were obtained from him.

*Documents and Other Items Collected During Searches and Seizures:* Here, the Government has conducted several searches and seizures of the Defendant's data, including obtaining his communications and cell phones, all of which belongs to the Defendant and should be produced to him. To the extent the Government has further items collected during searches and seizures of third parties, unindicted or indicted co-conspirators, or others that may be material to the Defendant's case in its possession or control, it should produce them without further delay.[13] *See United States v. Feola,* 651 F. Supp. 1068, 1144 (S.D.N.Y. 1987), *aff'd,* 875 F.2d 857 (2d Cir. 1989) ("defendants are entitled to inspect or copy all of the materials herein which are material to the defense, as those requested appear to be; are intended to be used by the Government at trial; or were obtained from or belong to the defendants").

*Documents Produced by Third Parties:* Similarly, the Government should produce any materials produced by third parties, including witnesses, unindicted co-conspirators, including the

---

[13] The Defendant notes that, given the current pandemic, physical inspection and copying may not be feasible. The Defendant requests, to the extent possible, electronic copies of all seized materials.

"Online Marijuana Marketplace Company," the "Phony Merchants," merchant banks and/or issuing banks that are material to the case. The Government's productions from third parties to date consist of limited bank records, cellular phone and internet service provider records, and a smattering of other documents (including a private investigative report prepared regarding Mr. Akhavan, presumably at the direction of another law firm).

Given the Government's recent disclosure of extensive lists of unindicted co-conspirators and potentially allegedly victimized banks, however, it is likely that the Government has in its possession additional relevant material from third parties. Further, given the Government's recent communications referencing information received from attorneys for the Online Marijuana Marketplace Company, an unindicted co-conspirator, it is likely that the Government has in its possession relevant information from what appears to be an internal investigation by the Online Marijuana Marketplace Company that may bear on the alleged "scheme," including exculpatory information about the Defendant and/or relevant impeachment evidence.[14]

*Taint Protocols:* Certain materials produced by the Government to date, including email communications, contain sensitive and privileged materials. For example, the Government has produced an image of data on a cloud related to a phone seized from Mr. Akhavan that contains some privileged material. *See* Letter dated Apr. 30, 2020 from G. Berman to D. Chesnoff, attached at Exhibit E. These documents, and others, raise concerns about the Government's review and production of privileged materials, including those addressed to or from law firms. These concerns implicate the Defendant's right to seek to suppress certain evidence in advance of trial. Accordingly, the Government should be ordered to provide an explanation on the protocols it has implemented to ensure the prosecution team is not exposed to protected materials.

---

[14] *See* Exhibit A (June 22, 2020 Letter).

*Transcripts of Grand Jury Testimony:* The Court may order the disclosure of grand jury testimony or records "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3). Here, the Indictment is subject to dismissal for lack of specificity. *See* Mem. of Law, ECF 66 , at 7-13. Indeed, it is impossible to tell from the Indictment on what offense the grand jury actually indicted the Defendant, leaving the Government free to fill in the details of the purported bad conduct as it sees fit. As set forth more fully in the Defendant's Memorandum of Law on his Motion to Dismiss, this is impermissible. Accordingly, the grand jury testimony should be disclosed.

### 5. The Government should produce and/or identify potential trial exhibits and trial witnesses at least 50 days before trial.

To ensure that Mr. Akhavan is able to defend himself adequately in this complex case, the Court should order the Government to disclose its initial list of witnesses no later than 50 days before trial. *See United States v. Cannone*, 528 F.2d 296, 298–300 (2d Cir. 1975) (courts have discretion to order pre-trial production of a witness list); *United States v. Vilar*, 530 F. Supp. 2d 616, 638–39 (S.D.N.Y. 2008) (ordering production of witness list at least 60 days before trial).

This is not the ordinary case in which the likely Government witnesses are small in number and easy to predict. The Government disclosures to date suggest the universe of "potential witnesses" in this case includes all current and former employees, officers, and directors of the Online Marijuana Marketplace Company, issuing banks, merchant banks, and the Credit Card Companies. In fact, as discussed above, the Government's June 22 letter attached a list of what it apparently contends are relevant issuing banks that runs on for 25 single-spaced pages and contains more than 1000 names of institutions, all without any information regarding their significance.

Mr. Akhavan acknowledges that he must prepare for trial without knowing from the outset exactly who the Government's witnesses will be; but given the vast number of individuals the Government has intimated are potential witnesses, and the difficulty of predicting which ones will actually be called, Mr. Akhavan requests an initial witness list at least 50 days before trial.

Courts considering a request for pretrial identification of Government witnesses must balance the defendant's "need" for the list against the "possible dangers" disclosure might create. *See Vilar*, 530 F. Supp. 2d at 637–38 (citing cases).  In doing so, courts "frequently" consider the factors enumerated in *United States v. Turkish*, 458 F. Supp. 874, 881 (S.D.N.Y. 1978):

(1)     Did the offense alleged in the indictment involve a crime of violence?

(2)     Have the defendants been arrested or convicted for crimes involving violence?

(3)     Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?

(4)     Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial or will be unwilling to testify at trial?

(5)     Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?

(6)     Do the defendants have limited funds with which to investigate and prepare their defense?

Here, the factors favor disclosure. *On the first two*, the fraud offenses at issue are not crimes of violence.  *On the third*, the volume of discovery (over 8, 200 files (some of which are zipped files containing multiple nested files, constituting almost 14 GB of data) produced to date) and the nature of the charges indicate that trial evidence will consist largely of testimony related to materials that cannot easily be altered.  *On the fourth*, there is no "realistic possibility" that disclosure will cause any witness to refuse to appear or testify at trial.  *On the fifth*, there is no dispute that that "preparation of the defense [is] complex and difficult" given that the events at

19

issue:  (i) took over the course of years; (ii) concern a vast number of transactions involving din several states each involving a merchant, merchant bank, Credit Card Company, and issuing bank; (iii) involve a mass of discovery and vast pool of potential witnesses; and (iv) contemplate the analysis and application of complex analyses to the vast pool of transactions.  *On the sixth*, even with the resources at Defendant's disposal, the significant size of the potential witness pool (including individuals from several states and Europe) imperils his ability to mount an adequate defense absent a timely, good-faith disclosure of the Government's witness list.

Defense counsel are familiar with this Court's Individual Rules of Practice, but this Court has also recognized that disclosure of a witness list 50 days before trial is appropriate in complex fraud prosecutions.  *See Levine*, 249 F. Supp. 3d 732, 733, n.1 (S.D.N.Y. 2017) (Rakoff, J.) ("The Court also ordered the Government to provide to the defense its witness list and exhibit list 50 days before trial."); Mar. 30, 2017 Minute Entry, *Levine*, No. 16-cr-00715 (S.D.N.Y.) (ordering disclosure of witness list 50 days before tax and wire fraud trial).  So have other courts.  *See e.g.*, *Vilar*, 530 F. Supp. 2d at 638–39 (ordering disclosure of witness list 60 days before securities fraud trial); *see also United States v. Rosenthal*, 1991 WL 267767, at *4–5 (S.D.N.Y. Dec. 3, 1991) (ordering disclosure of witness list 30 days before securities, mail, and wire fraud trial involving voluminous evidence and large pool of witnesses).

Similarly, with respect to potential trial exhibits, Mr. Akhavan requests they be produced 50 days before trial, along with the *Giglio* and Jencks Act materials discussed below.  *See Levine*, 249 F. Supp. 3d at 733 n.1 ("The Court also ordered the Government to provide to the defense its witness list and exhibit list 50 days before trial.").  Other judges have done similarly. *See United States v. Freeman*, 2019 WL 2590747, at *4 (S.D.N.Y. June 25, 2019) (ordering production of exhibit list 30 days before wire fraud, identity theft, and conspiracy trial); *United States v. Giffen*,

379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) (ordering disclosure of exhibit list 30 days before FCPA trial).

**B.      Memoranda Regarding Interviews or Meetings in this Matter**

Mr. Akhavan further seeks any interview or meeting memoranda or notes generated in the course of the Government's investigation. These materials are likewise sought under Federal Rule of Criminal Procedure 16(a)(1)(E) to aid in Mr. Akhavan's preparation of his defense, and the materiality of the information should be clear from the facts in this Motion.

Mr. Akhavan seeks interview memoranda for all agents of the Online Marijuana Marketplace, ████████ the Payment Processors, any alleged Phony Merchants, and Credit Card Companies. He also seeks any interview memoranda of individuals identified by name or code name in the Agent Affidavit in Support of Application for Search and Seizure Warrant, as set forth *infra* at 7-8.

**C.      Federal Rule of Criminal Procedure 16(a)(1)(A)-(C)Statements by Mr. Akhavan, other Defendants, and alleged co-conspirators.**

Mr. Akhavan also seeks evidence of all written or oral statements by him, as must be disclosed under Rule 16(a)(1)(A) and (B). *See United States v. Ferguson*, 478 F. Supp. 2d 220, 237 (D. Conn. 2007) (requiring production of interview notes, in addition to other written records). This request extends to evidence of any written or oral statements, or evidence thereof, of Mr. Akhavan's alleged co-conspirators under Rule 16(a)(1)(C) and (E).

**D.      Federal Rule of Criminal Procedure 16(a)(1)(D): Prior criminal records.**

Under this rule, when requested, the Government "must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government knows – or through due diligence could know – that the

21

record exists."  Mr. Ahkavan does not anticipate this request ultimately proving controversial but hereby makes the request and reserves his rights given the Government has not addressed it.

E.   **_Brady_ and specific _Brady_ materials: financial institutions, merchant category codes, and ▓▓▓ cannabis dispensaries.**

_Brady_ requires that the Government disclose evidence that is "material" and "favorable" to a defendant. _United States v. Rivas_, 377 F.3d 195, 199 (2d Cir. 2004).  Favorable evidence is either exculpatory or impeaching.  _Strickler v. Greene,_ 527 U.S. 263, 281–82 (1999).  Evidence becomes material if "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict".  _Youngblood v. West Virginia,_ 547 U.S. 867, 870 (2006) (quotation marks omitted).  "Aside from exculpatory material, _Brady_ applies to material that would be an effective tool in disciplining witnesses during cross-examination." _See, e.g._, _United States v. Mahaffy_, 693 F.3d 113, 131 (2d Cir. 2012) (quotations and citation omitted).

In his June 17, 2020 letter, Mr. Akhavan requested either confirmation that materials had been produced, along with their bates numbers, or the production of _Brady_ materials in three specific categories.  They were.

1.   Materials that would contradict that Credit Card Processors or financial institutions would categorically reject marijuana-related transactions.

2.   Materials that contradict the allegations regarding Defendants using false MCCs, setting up phony merchants,  or instructed others to do so.

3.   Materials related to the legality of ▓▓▓ cannabis dispensaries, which are clearly a driving force behind the alleged scheme.

The Government first indicated it would not respond to Mr. Akhavan until after the motion deadline, but it then sent a perplexing letter on June 23, 2020. (Exhibit D).  The letter asserts the

Government is generally aware of its *Brady* obligations and has provided indices, without reference to the specific categories called out by Mr. Akhavan or the corresponding bates numbers for those categories.  This despite these categories being selected, obviously, because of the dearth of evidence on these points in the Government's productions.  The Government went on to quibble in general terms with whether Mr. Akhavan could render anything *Brady* material by calling it out, while not engaging with the categories he identifies – which plainly are *Brady* material.

Mr. Akhavan is simply looking for confirmation that the Government has or will produce all the material it has in the categories he identified, and that it will either provide the bates numbers from existing productions or call this material out by bates numbers when it is produced.  That is not a complicated ask and should be provided here voluntarily and ordered if not.

### F.      *Giglio* and Jencks Act Materials should be provided 50 days before trial.

With respect to *Giglio* and Jencks Act materials, the Government simply asserts in its June 23 letter that it will not produce these materials until much closer to trial, without disputing any of the categories cited by Mr. Ahkavan as *Giglio* and Jencks material.

First, Mr. Akhavan's requests for specific materials plainly fall within disclosable material under *Giglio*.  With respect to "CW-1" in the Agent Affidavit in Support of Application for Search and Seizure Warrant appears to obtain the majority of his information in support of his allegations of potential criminal activity from CW-1, and this witness seems likely to form a key element of the Government's case.  With respect to co-conspirators actually identified by the Government, obviously their plea deals or non-prosecution agreements are essential to preparation for trial.

Second, Mr. Akhavan does request *Giglio* and Jencks Act materials be provided at the same time as the witness and exhibit lists:  50 days before trial.  The reasons are the same as above for

the witness and exhibit lists.  If documents and witnesses should be disclosed 50 days before trial, the *Giglio* and Jencks Act materials relevant to those witnesses should be for the same reasons.

With respect to the Jencks Act, while it prevents the Court from ordering early disclosure of 18 U.S.C. § 3500 material, *see*, *e.g.*, *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001), courts (including this one) have recognized that the Government's failure to produce Jencks Act material well before trial can necessitate long delays during the trial in order to ensure a meaningful opportunity to use Jencks Act material.  Here, unless the Government produces Jencks Act material at least 50 days before trial, there is a genuine risk that such delays will be occasioned.

The Government has no just reason for refusing to produce prior witness statements 50 days before trial.  "There is no gainsaying that arriving at the truth is a fundamental goal of our legal system," *United States v. Havens,* 446 U.S. 620, 626 (1980), and courts have long recognized "the critical importance of cross-examination in the truth-seeking process," *United States v. Inadi*, 475 U.S. 387, 406 (1986).  Examination of a witness's prior statements is essential preparation for cross-examination; yet, as far as Mr. Akhavan is aware, he has not seen, nor received in discovery, any prior statement of any likely Government witness.

Where, as here, the Government has identified well over 100 potential Government witnesses and provided over 8,200 files in discovery, the Court should, at minimum, encourage the Government to disclose § 3500 material 50 days before trial, in conjunction with the production of initial witness and exhibit lists. *See* Mar. 30, 2017 Hr'ing Tr., ECF No. 27 in *Levine*, No. 16-cr-00715 (S.D.N.Y.), at 34:10-14 ("[W]hat I will order is that the witness list and the list of exhibits be provided 50 days before trial and I'm going to ask the government right now to agree to provide 3500 material on that same date."); Mar. 30, 2017 Minute Entry, *Levine*, No. 16-cr-00715

(S.D.N.Y.) ("Witness and Exhibit Lists plus 3500 material shall be produced: By the Govt to the defense within 50 days of trial . . .").

## IV.     Conclusion

For the foregoing reasons, the Court should order the Government to produce appropriate discovery by a date certain, seasonably in advance of trial, as set forth herein.

June 26, 2020                          Respectfully submitted,

ROTHKEN LAW FIRM                       QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Ira Rothken*                      */s/ William A. Burck*
Ira Rothken                            William A. Burck
Jared Smith                            Derek L. Shaffer
3 Hamilton Landing                     777 6th Street NW 11th floor
Suite 280                              Washington, DC 20005
Novato, CA 94949                       Telephone: (202) 538-8000
Telephone: (415) 92404250              Fax: (202) 538-8100
Email: ira@techfirm.net               Email: williamburck@quinnemanuel.com
Email: jared@techfirm.net             Email: derekshaffer@quinnemauel.com

                                       Christopher Tayback
                                       Paul J. Slattery
                                       865 S Figueroa Street 10th Floor
                                       Los Angeles, CA 90017
                                       Telephone: (213) 443-3000
                                       Fax: (213) 443-3100
                                       Email: christayback@quinnemanuel.com
                                       Email: paulslattery@quinnemanuel.com

                                       Sara C. Clark
                                       711 Louisiana St., Ste. 500
                                       Houston, Texas 77002
                                       Telephone: (713) 221-7000
                                       Fax: (713) 221-7100
                                       Email: saraclark@quinnemanuel.com