# EXHIBIT A



June 22, 2020

To Whom It May Concern:

Please accept this as proof of completion of treatment for Hamid Akhavan. Hamid Akhavan entered Alo House on a volunteer basis on 3/26/2020.

Alo House Recovery is a residential and inpatient treatment center for people with a desire to change their lives. Hamid Akhavan attended psycho educational groups, individual and group therapy, 12 step meetings, relapse prevention, EEG Neurofeedback, life skills training, and aftercare planning on a weekly basis. It was clinically recommended that Hamid Akhavan be in our care for 90 days and successfully completed that term. Hamid Akhavan completed treatment on June 22, 2020.

Hamid Akhavan was is subjected to random urinalysis, and BAC tested on a weekly basis and tested negative since beginning treatment.

If you have any further questions feel free to contact me at 310-650-5202.

Respectfully,

Matthew P. Morgan M.S., SUDCC-IV, C.N.S.
Case Management
Alo House Recovery Centers





# EXHIBIT B

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>against<br><br>RUBEN WEIGAND, and<br>HAMID AKHAVAN a/k/a "Ray Akahavan",<br><br>Defendants. | No. 20-CR-188 (JSR)<br><br>**DECLARATION OF OKORIE OKOROCHA IN SUPPORT OF DEFENDANT AKHAVAN'S OPPOSITION TO REMAND** |

## DECLARATION OF OKORIE OKOROCHA

I, Okorie Okorocha, declare as follows:

1.      I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit A and incorporated herein by reference is a true and correct copy of my *curriculum vitae*, which describes my qualifications and other expert witness testimony I have provided.

3.      I have a Master of Science Degree in Pharmaceutical Science with a specialization in Forensic Science from the College of Pharmacy from the University of Florida. I have a second Master of Science degree in Forensic Toxicology, also from the University of Florida. My formal education includes forensic toxicology, which is the study of chemical test results from biological specimens, and the interpretation of the results. My formal education also includes Pharmaceutical Science (Pharmacology), which is the study of drugs and the effects of drugs on humans. Seven of my papers as a lead author in the area of forensic science/toxicology, have been accepted for publication in major scholarly journals. I have extensive formal education in the testing of urine for drugs of abuse and retrieved and reviewed the relevant literature from the National Library of Medicine (which has literally millions of peer reviewed

DECLARATION OF OKORIE OKOROCHA

scientific journals) and Access Medicine (a compilation of renowned medical textbooks and journals) on many occasions.  I have qualified as an expert in forensic toxicology in State and Federal courts over 440 times throughout the United States and internationally in Japan and Germany.

4.     I have reviewed lab results for Hamid Akhavan, initially collected on August 3, 2020, and reported on August 29, 2020, a true and correct copy of which is attached as Exhibit B ("Drug Test Report").

5.     After my review, it is my opinion that the benzoylecgonine, or cocaine metabolite, detected in Mr. Akhavan's urine sample is from before he entered the rehab facility on July 22, 2020 because benzoylecgonine may be detected for up to 22 days in chronic cocaine users.  *See* Chumley H.S., & Smith M.A., & Perez-Rodriguez E.R., & Speedlin S.L (Eds.), *Cocaine, The Color Atlas and Synopsis of Family Medicine, 3e*. McGraw-Hill  (2019).  *See also* Roger D. Weiss, M.D., & Frank H. Gawin, M.D., *Protracted Elimination of Cocaine Metabolites in Long-Term, High-Dose Cocaine Abusers*, The American Journal of Medicine Volume 85 (December 1988); Vandevenne, M., Vandenbussche, H., & Verstraete, A. *Detection time of drugs of abuse in urine*, Acta Clinica Belgica, 55(6), 323-333 (2000).

6.     It is also my opinion that the results from the Drug Test Report are unreliable. Without further information regarding the testing methodology and how the sample was collected and handled, I cannot rule out the possibility of a false positive, mixed sample or contaminated sample.  Behind every lab test, there are hundreds of pages of raw data to analyze before I can attest to its' reliability.  For example, changes in temperature can affect results. Potential carryover from other test tubes in the batch can also affect results.

7.     Upon my review of the Drug Test Report, there are several missing items that cause me to form the opinion that this test is unreliable.

8.     The Drug Test Report fails to provide the quantitative value of how much benzoylecgonine was in his urine.  The report merely states the threshold reporting limits without providing information as to what the actual value is.  The Drug Test Report also fails to provide the uncertainty level, or the margin of error.  It is widely understood that all measurements

require an "uncertainty" to be reported.  *See* Taylor, B. N., & Kuyatt, C. E., *Guidelines for evaluating and expressing the uncertainty of NIST measurement results*, (1994).  Depending on the quantitative value and the margin of error, Mr. Akhavan could have been under the reporting limits, which would mean nothing is detected in his system.

9.      The Drug Test Report does NOT indicate that the sample was "normalized for creatinine" in Mr. Akhavan's urine.  Creatinine normalization is generally accepted as being required for accurate results.  *See* Paul S. Cary, M.S., *Urine Drug Concentrations: The Scientific Rationale for Eliminating the Use of Drug Test Levels in Drug Court Proceedings*, National Drug Court Institute Vol. IV, No. 1 (January 2004).  Creatinine indicates whether the urine is more or less concentrated than it should be.  There is no indication that the normalization for creatinine in Mr. Akhavan's urine occurred.  It is widely accepted among Forensic Toxicologists that drug concentrations in urine can be misinterpreted if there are not adjustments to urine water content.  *Id*.  Without adjusting for creatinine, Mr. Akhavan could have been under the reporting limits, which would mean nothing is detected in his system.

10.      The lab failed to provide chain of custody documents, including intra-laboratory documents for Mr. Akhavan's sample.  Mr. Akhavan's urine was collected on August 3, 2020, but was not received by the lab until August 27, 2020.  There is no documentation as to how the sample was stored during the intervening 24-day period or how it was transported between the facility and the lab in order to ensure the integrity of the sample.

11.      The lab failed to provide maintenance and repair records of the instrument used in the analysis of Mr. Akhavan's urine.

12.      The lab failed to provide data regarding quality control and calibration data including concentration curves performed on Mr. Akahavan's sample.

13.      I have also reviewed a document purporting to be results for Mr. Akhavan from a handheld device test taken on August 21, 2020, a true and correct copy of which is attached as Exhibit C ("Handheld Test").  After my review, it is my opinion that the results from the Handheld Test are entirely unreliable.

14.     The Handheld Test is a "screening test" and appears to be an "immunoassay" test, an unreliable testing method due to problems with both specificity and selectivity. An immunoassay test is an unsophisticated, rudimentary, preliminary test solely used for the purposes of determining if a "confirmation" test is warranted. It is well-accepted among Forensic Toxicologists that "[n]o scientist should go to court and testify a drug was definitely present in an individual or specimen based solely on a screening test!" *See* Suzanna E. Dana and Vincent J.M. Di Maio, *Handbook of Forensic Pathology*, 262-263 (2006). "To say that a drug is definitely present, the presence of the drug must be confirmed by a second (confirmatory) test that is highly specific. This confirmatory test is absolutely necessary to confirm a positive screening test." *Id*.

15.     Immunoassay tests cannot be relied upon as accurate and are known to have a high rate of false positives.  *See* Jill Tate, Greg Ward, *Interferences in Immunoassay*, Clin. Biochem. Rev. Vol 25, 105-120 (May 2004).  A presumptive positive drug screen without confirmation is highly speculative.

16.     In summary, it is my opinion that both the Drug Test Report and Handheld Test showing allegedly positive results for cocaine metabolite and Suboxone, respectively, are unreliable.  These results cannot, and should not, be used as a basis to violate Mr. Akhavan.


I declare that the foregoing is true and correct.

Executed on this 1st day of September, 2020, at Pasadena, California.

_____
Okorie Okorocha

# Okorocha Declaration EXHIBIT A

# THE OKOROCHA FIRM
LAW + SCIENCE = FORENSICS

ADDRESS                                                          TELEPHONE

Chamber of Commerce Building:                      (310) 497-0321
117 E. Colorado Blvd. Suite 465
Pasadena, CA 91105
E: OO@OOESQ.COM

## OKORIE OKOROCHA, M.S.*, M.S.**, J.D.
## Forensic Toxicology and Pharmacology

**\*Master of Science in Pharmaceutical Science, Specialization in Forensic Science**

**\*\*Master of Science in Forensic Toxicology**

**EXPERT TESTIMONY**

**Impairment, Driving Related Impairment, Drug use and Effects, Chemical Analysis of Blood, Blood Testing in Labs and Hospitals, Breath Testing, Forensic Toxicology, Forensic Science, Field Sobriety Tests, Pharmacology, Hair Follicle Testing, SCRAM Devices, Saliva Testing and general toxicology and pharmacology.**

**EXPERIENCE**

**Testified in over 440 jury trials in 46 California County Courts.  As well as Alaska, Arizona, Colorado, Florida, Minnesota, New Jersey, New Mexico and Texas.  Also qualified internationally in Nuremberg, Germany in U.S. v. Specialist Lee Miller and in Yokosuka, Japan in U.S. v.  Navy Chief Ryan Blackmer.**

**Testified over three thousand (3000) in administrative hearings.**

**EDUCATION**

**Bachelor's Degree in Biology, Northridge State (C.S.U.N.) 1999**

**M.S. in Pharmaceutical Sciences—Specialization in Forensic Science—University of Florida December 2012**

**M.S. in Forensic Toxicology---University of Florida August 2014**

**Juris Doctorate—Whittier College, School of Law 2002**

## POSITIONS HELD

### *ANALYST AND RESEARCHER*
Soberlink, LLC., Huntington Beach, CA

### *ANALYST*
A. K AND A LABORATORIES, SAN DIEGO, CA

## PUBLICATIONS

1)      Okorocha, Okorie, (2012), Commentary on: Sterling K. The rate of dissipation of mouth alcohol in alcohol positive subjects. J Forensic Sci 2012.

2)      Okorocha, Okorie., Strandmark, Matthew, "Alcohol Breath Testing: Is There Reasonable Doubt?." Syracuse Sci. & Tech. L. Rep. 27 (2012): 124-162.

3)   Okorocha, Okorie. "FIELD SOBRIETY TESTS: CRIMINAL INJUSTICE." Journal of Law and Social Deviance 5.1 (2013): 298-325.

4)      Okorocha, Okorie, "FLAWED BLOOD TESTS: The DUI Exception to Admissible Evidence" Alb. LJ Sci. & Tech, 2013 (in press)

5)      Okorocha, Okorie, "Hospital serum blood tests versus common DUI-related whole blood tests" T.M. Cooley J. Prac. & Clinical L. 85 2013 Thomas M. Cooley Journal of Practical and Clinical Law

6)      Okorocha, Okorie, "Commentary on Jaffe, Dena H., et al. Variability in the blood/breath alcohol ratio and implications for evidentiary purposes. J Forensic Sci 2013; Epub May 17; doi: 10.1111/1556-4029.12157.

7)      Okorocha, Okorie, "Commentary on: Vosk T, Forrest AR, Emery A, McLane LD. The measurand problem in breath alcohol testing. J Forensic Sci 2014 Feb 6. doi: 10.1111/1556-4029.12406 [Epub ahead of print]."

# Okorocha Declaration EXHIBIT B



1111 Newton Street
Gretna, LA 70053
(800) 433-3823 - (504) 361-8989
FAX: (504) 361-8298

# Drug Test Report

| | |
|---|---|
| CACP PRETRIAL LOS ANGELES | Account Number: 09730002S |
| ERIC KAUFMAN | Div. Office Number: 09730002S |
| 255 EAST TEMPLE ST. STE 1100 | National Lab Number: 57075108 |
| LOS ANGELES, CA 90012 | Specimen ID Number: B04621476 |
| Facility Phone: 213-894-5395   Fax: 213-894-0231 | Specimen Type: URINE |

| | |
|---|---|
| Collection Site Number: 09730002S | PACTS Number: 6949323 |
| Collection Site Name: CACP PRETRIAL LOS ANGELES | Onsite Test ID: 0100278557 |
| Collection Site Address: 312 NORTH SPRING STREET, ROOM 754 | Case Officer Initials: DD |
| Collection Site City, State Zip: LOS ANGELES, CA 90012 | Collector Name |
| Collection Site Phone: 213-894-5395 | RUBEN CABRERA |
| Collection Site Fax: 000-000-0000 | |

| **Donor Name/ID: AKHAVAN** | Date Collected: 08/03/20 |
|---|---|
| | Date Received: 08/27/20 |
| Reason for Drug Test: Substance Abuse Treatment | Date Reported: 08/29/20 |

Panel Description: BENZOYLECGONINE(COCAINE) CONF CLIN 1098

| Drug Test Result | Drug/Remark | Quantitative Value |
|---|---|---|
| **POSITIVE** | BENZOYLECGONINE-COCAINE METABOLITE | |

Confirmation Method:   GC/MS and/or LC-MS/MS

The following drugs and/or drug classes were tested at the indicated threshold (cut-off) levels:

| Description | Screening Level | Confirmation Level | Result |
|---|---|---|---|
| BENZOYLECGONINE-COCAINE METABOLITE | | 100 ng/ml | POSITIVE |

| Validity Test | Result | Normal Range |
|---|---|---|
| CREATININE | NORMAL | > 20 mg/dL |
| SPECIFIC GRAVITY | NORMAL | = or > 1.0030 - < 1.0450 |
| pH | NORMAL | = or > 4.0 - < 10 |

_T. Junot_

_____
TERI JUNOT - CERTIFYING TECHNICIAN/SCIENTIST

RUBEN CABRERA

_____
COLLECTOR NAME

# Okorocha Declaration EXHIBIT C





X YAHNA R AKLEW

X

X Yvonne Barrera

X Jorume Zararul
   DVOC
   II

X Shorlene Whitley CdNCI

X Shanber Whitley CADCI

# EXHIBIT C

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>against<br><br>RUBEN WEIGAND, and<br>HAMID AKHAVAN a/k/a "Ray Akahavan",<br><br>Defendants. | No. 20-CR-188 (JSR)<br><br>**DECLARATION OF ANTHONY MARKS IN SUPPORT OF DEFENDANT AKHAVAN'S OPPOSITION TO REMAND** |

## <u>DECLARATION OF ANTHONY MARKS</u>

I, Anthony Marks, declare as follows:

1.       I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.       Attached hereto as Exhibit A and incorporated herein by reference is a true and correct copy of my *curriculum vitae*, which describes my qualifications and other expert witness testimony I have provided.

3.       I am a Certified Substance Use Disorder (SUD) Counselor-II (CADC-II) with the California Consortium of Addiction Programs and Professionals (CCAPP).  I certified as a Drug Recognition Expert in 2007 and as a Drug Recognition Expert Instructor in 2008, and I have completed over fifty Drug Recognition Expert Reconstructions for local and Federal court, defense and prosecution.  I hold a Master's Degree in Psychology and a Bachelor's Degree in Business Management.

4.       I have 18 years of experience as a law enforcement professional, including working as a Detention Services Officer with the Los Angeles County Probation Department. Prior to and during my law enforcement career, I was able to obtain a combined total of 25 years of pharmaceutical experience including 17 years in community pharmacy as a Registered

Pharmacy Technician and eight years in pharmaceutical and biotech sales and consulting. As an accomplished instructor, university professor, and public speaker, I have 19 years of experience educating varying audiences, including law enforcement and medical professionals, regarding drug recognition and substance impairment, risks of drug use, and consequences of drug use.

5.      I have reviewed Officer Moscato's letter in support of remanding Mr. Akhavan, drug test results from his August 3, 2020 urine test and his August 21, 2020 handheld test, and Mr. Akhavan's certificate of completion from Alo House Recovery Centers.   I do not personally treat Mr. Akhavan.   My opinions are based on my background, training and experience, as well as review of the relevant documents listed above.

6.      It is my opinion that Inland Valley Recovery System ("IVRS") should not have discharged Mr. Akhavan based on a presumptive positive test only, submitted to a laboratory weeks after its collection, without confirmation.   When a patient receives a presumptive positive test from a urine screen, proper protocol dictates that the urine test should be sent out to a lab for confirmation either that day or the following day, or in the case of a holiday, as soon as possible, with confirmatory results to be received a few days later.

7.      It is my opinion that IVRS should not have discharged Mr. Akhavan on the basis of his first urine screen test, taken on August 3, 2020.   It is widely understood among drug counselors that the first test is typically positive, because it includes drugs ingested by the patient prior to entry into the facility.   A rehab patient's first drug screen, and confirmatory test, should be used as comparative tests in treatment, to show a decrease in levels in subsequent confirmatory tests.   They should not be held against the patient, and should not be used as a reason for discharge.

8.      Suboxone is typically prescribed for patients coming off of opioid dependence.

9.      It is my opinion that if Mr. Akhavan received un-prescribed Suboxone while at IVRS, then IVRS may have breached the standard of care for rehab facilities.   IVRS may not have had the proper measures in place to protect against pill-sharing among its residents or smuggling within the facility.   Proper protocols require facility staff to distribute medication to

each patient individually and to supervise as the patient ingests the medication.  Facility staff needs to watch the patient take the medication, then check to ensure the medication is not stored under their tongue or in their cheek.

10.     If a patient is prescribed Suboxone as part of their treatment at an inpatient facility, then weekly drug screen tests, and follow-up confirmatory tests, would show the patient has positive results.  If a patient on Suboxone, or other prescribed medication, has negative test results, or results inconsistent with the prescribed medication, the facility must investigate whether the patient is sharing, or selling, their medication, or changing the sample.

11.     Generally, drug counselors rely on a five-step Stages of Change model to gauge a patient's progress in substance abuse recovery.  First is the pre-contemplative stage, where patients are not considering a need for change and are therefore uninterested in seeking help.  Second is the contemplative stage, where patients are aware of the personal consequences of their addiction and spend time thinking about their problem.  Third is the preparation stage, where clients have made a commitment to make a change.  Fourth is the action stage, where patients believe they have the ability to change and are actively involved in taking steps in recovery.  This is the stage where the education, coping strategies, and interpersonal communication skills offered in treatment help to bolster the client's personal recovery.  The patient dives deep into assignments, personal inventories, and relapse prevention work to ensure a successful transition out of treatment and into recovery.  Fifth is the maintenance stage, where patients learns to successfully avoid triggers and other temptations that would lead back to active addiction.  *See* Trans-theoretical Model of Behavior Change.

12.     It is my opinion that a patient, such as Mr. Akhavan, who successfully completed a 90-day in-patient program, and then showed decreasing levels of addiction while at a second in-patient program, is in stages four and five of the recovery model, action and maintenance.  Based on my review, Mr. Akhavan has displayed the appropriate steps and progress for recovery.

13.     Patients in the action stage of behavior change are still relatively fragile.  It is important to encourage the steps they are taking to continue to modify behavior.  A custody environment is not typically conducive to behavior modification.

14.     In summary, it is my opinion that IVRS may have acted hastily in their treatment and discharge of Mr. Akhavan.  It is also my opinion that given the progress it appears Mr. Akhavan has made thus far, remanding him into custody will likely have a detrimental effect on his recovery from substance abuse.

I declare that the foregoing is true and correct.

Executed on this 1st day of September, 2020, at Palmdale, California.

Anthony Marks

DECLARATION OF ANTHONY MARKS

# Marks Declaration EXHIBIT A

**Anthony A. Marks, M.S. - Curriculum Vite**
(818) 254-7181
aamarks@earthlink.net

## QUALIFICATIONS

I hold a Master's Degree in Psychology and a Bachelor's Degree in Business Management and I am a Certified Substance Use Disorder (SUD) Counselor-II (CADC-II) with the California Consortium of Addiction Programs and Professionals (CCAPP); in addition to 18 years experience as a law enforcement professional including: drug recognition and instruction, and reconstruction, collision investigation, juvenile detention services and use of force auditing and evaluation. I certified as a Drug Recognition Expert in 2007 and as a Drug Recognition Expert Instructor in 2008, and I have completed over fifty Drug Recognition Expert Reconstructions for local and Federal court, defense and prosecution. Prior to and during my law enforcement career, I was able to obtain a combined total of 25 years of pharmaceutical experience including 17 years in community pharmacy as a Registered Pharmacy Technician and 8 years in pharmaceutical and biotech sales and consulting. As an accomplished instructor, university professor, and public speaker, I have 19 years of experience educating varying audiences, including college students, high school students, parents, teachers, community groups, law enforcement, medical professionals, etc., regarding drug recognition and substance impairment, risks of drug use, consequences, associated laws, and the criminal justice system.

## EDUCATION & CERTIFICATIONS

**Master's of Science, Psychology,** University of Phoenix, 2011
**Bachelor of Science, Business Management,** University of Phoenix, 1999
**CCAPP** – Certified Alcohol and Drug Counselor - II (CADC-II), A050190818 August, 2018
**Los Angeles County Panel of Expert Witnesses** – April 2015 to Present
**(Federal) Forensic Drug Expert** – April 2018
**Drug Recognition Expert Training,** Los Angeles Police Department, 1996 and 2007 **(Certified 2007)**
**Drug Recognition Expert Instructor Training,** Los Angeles Police Department, 2008 **(Certified 2008)**
**Drug Recognition Expert Reconstructionist** – 2016 to present (over fifty to date)
**Basic Collision Investigation Training,** Los Angeles Police Department, 2007
**Standards of Training for Corrections (California)- Instructor Development Course,** December 2010
**Peace Officer Standards and Training-Certified Instructor (Narcotics, DRE, 11550H&S),** June 2011
**NRA Pistol Instructor,** November 2013 to Present
**American Heart Association CPR Instructor,** January 2014 to Present
**Applied Suicide Intervention Skills Training (ASIST)** certified – May 2015
**West L. A. Community College**, C.O.R.E. Training L.A. Co. Probation Academy, 2008
**El Camino College,** PC832(a) and (b) Academy, 1996
**Pharmacy Technician,**     Nevada State Board of Pharmacy, 1993 - Present
                                        California State Board of Pharmacy, 1992 - Present
**Member International Association of Chiefs of Police, 2011**
**Member National Association of Drug Diversion Investigators (NADDI), 2011**
**Member California Narcotic Officers' Association, 2005**
**Member California Peace Officers' Association, 2005**

## PUBLIC SPEAKING/EDUCATIONAL INSTRUCTION

*2012 – Present*     **Associate Professor of Criminal Justice and Psychology**
                             **UNIVERSITY OF ANTELOPE VALLEY**
                             Lancaster, California
                             Provide quality instruction to Psychology students in all areas of undergraduate psychology curriculum
                             and Criminal Justice students in all areas of criminal justice including: dangerous drugs and narcotics,
                             crisis intervention, report writing, traffic enforcement and collision investigation, ethics, emergency
                             management, community policing, firearms, corrections, statistical analysis and research in the criminal
                             justice system, gangs, organized crime and vice operations, and forensics. Additionally, I have developed
                             the curriculum for these classes including assessments in accordance with Western Association of Schools
                             and Colleges (WASC) requirements.

**Anthony A. Marks, M.S.**
 (818) 254-7181
aamarks@earthlink.net

| | |
|---|---|
| *2000 – Present* | **President / Chief Executive Officer**<br>**SUBSTANCE INFLUENCE TRAINING AND EDUCATION CORPORATION (SITE)**<br>Palmdale, California<br>SITE provides professional education regarding the dangers of: drug abuse, driving while intoxicated, drugged driving, drug experimentation, raves, drug diversion, pharmaceutical abuse, drug trends, alcohol intoxication, basic signs and symptoms of drug use, influence, consequences and poly drug use. Audiences include: law enforcement, public and private high schools, parents, students, personnel, community groups, private and public sector supervisors, and mental health professionals. SITE Corp. is a certified California Standards for Training in Corrections (STC) provider. |
| *2000 – Present* | **Independent Contracting, Consulting, and Expert Testimony**<br>Accomplished and engaging speaker; audiences and venues including: private universities, public and private high schools, parents, students, law enforcement personnel, community groups, private and public sector supervisors, and mental health professionals. Subject matter includes: drug recognition curriculum, the dangers of: drug abuse, driving while intoxicated, drugged driving, drug experimentation, raves, drug diversion, pharmaceutical abuse, drug trends, designer drugs, alcohol intoxication, basic signs and symptoms of drug use, influence, consequences of drug use, and poly drug use. Court cases include opinions provided to both prosecutors and defense attorneys, and testimony regarding drug influence and impairment. **Cases include: Driving Under the Influence, Watson (California) murders, specific intent, sexual assault, etc.** Additionally, I have consulted and provided opinions regarding fragmented memory associated with intoxication. |

## LAW ENFORCEMENT EXPERIENCE

| | |
|---|---|
| *Apr. '08 – Sept. '12* | **Detention Services Officer (Ret.)**<br>**LOS ANGELES COUNTY PROBATION DEPARTMENT**<br>Los Angeles, California<br>*Sep. '09 – Jun. '12* - DOJ compliance auditing, special projects, provide instruction / presentations to officers and various levels of management, various administrative tasks/ quality control, instructing new recruits at the Los Angeles County Probation C.O.R.E. Academy, Standards of Training for Corrections (STC) certified instructor (Instructor Development Course completed 12/ 2010).<br>*Apr. '08 – Aug. '09* - Supervise detained juveniles in their activities within a living unit, on work assignments, during recreation periods, on medical or dental appointments, or awaiting court appearances. Maintain order and control of a unit and take appropriate action in connection with rule infractions or other disturbances. Maintain institutional security and take appropriate action to prevent escapes. Supervise the movement of juveniles within and outside the facility. Control and restrain combative or emotionally disturbed juveniles. Provide situational counseling to assist individual juveniles through their daily routines. Observe and record the behavior of juveniles and confer with the supervisor about problem juveniles. Monitor minors' progress throughout their Camp Community Placement program, counsel during crisis situations, preparation and submission of court reports and related court documents. |
| *Jun. '94 – Sept. '12* | **Volunteer and Specialist Reserve Officer (Fmr.)**<br>**LOS ANGELES POLICE DEPARTMENT**<br>Los Angeles, California<br>Collision Investigations, Conducting Drug Recognition Evaluations, preparing and submitting necessary documentation regarding drug evaluations for arrest report and court, Booking and transporting suspects, Property inventory, participating in numerous task forces (Immediate Booking and Release System – IBARS) such as: vice, narcotics, sobriety check points, drunk driving/ driving with out a license and related traffic task forces, failure to yield to a pedestrian task forces, and vehicle impound details; instruction of 11550H&S, Intoxicated Driver Apprehension Program (IDAP), DRE school, and instruction regarding narcotics and drug influence to cadets in the LAPD Cadet program as a Certified Drug Recognition Expert Instructor, participation as an instructor regarding drug influence for outside law enforcement agencies. |

**Anthony A. Marks, M.S.**
 (818) 254-7181
aamarks@earthlink.net

## PHARMACEUTICAL PROFESSIONAL

*Jun. '06 – Feb. '07*   **Senior Marketing Executive**
**LABORATORY CORPORATION OF AMERICA**
San Diego, California
Responsibilities: New account conversion of approximately 300 doctors' offices from competitors' services to LabCorp., included logistics and distribution planning and placement.  Develop new business for diagnostics services in markets including family practice, endocrinology, OBGYN, and infectious disease.  Territory is currently 174% to goal, as of January 23, 2007. Success included landing new business contracts to cover lab services for 93,000 lives.

*Jan. '05 – May '06*   **Immunology Specialist - G.I.**
**CENTOCOR (JOHNSON AND JOHNSON)**
Horsham, Pennsylvania
Responsibilities:  Increased product usage (Remicade) among hospitals and gastroenterologists. Developed relationships and communicated with local thought leaders on Remicade usage and data, provided consultative services, regarding Remicade usage and appropriate patient usage, developed territory trend, reach, and frequency analyses, formulated and implemented territory business development strategies, and made presentations of data to management as needed.

*Jan. '02 – Dec. '04*   **Technical Sales Specialist/ Area Hospital Representative/ Field Sales Trainer**
**PROMETHEUS LABORATORIES**
San Diego, California
Responsibilities: Increased diagnostic testing and product usage among hospitals, gastroenterologists, rheumatologists, hepatologists, transplant nephrologists, pediatricians, and other related specialties; developed local thought leaders on Prometheus technology, provided consultative information on test results, trained new and existing reps on new and existing technology. Arranged phlebotomy and direct bill contracts with territory hospitals, draw sites, and IPA's, helped to influence third party contract agreements to ensure coverage of testing. Educated physicians and office staff through audio, visual, or tactile lessons on the meanings of different biological autoimmune markers and the meanings of different combinations found in test results including positive and negative predictive values, Conducted territory analysis including trends, reach and frequency, and produced business development strategies, and presented data to management as needed or requested.
Hospital Responsibilities: Kaiser Hospitals in the Los Angeles and Kern County areas.  Encino-Tarzana Regional Medical Center(s), St. Joseph -Burbank, Children's Los Angeles, Sherman Oaks, Holy Cross, Northridge, Simi Valley l, West Hills, Mission Hills Community, Olive View Medical Center, Henry Mayo, Conejo Valley, Los Robles Medical Center-Thousand Oaks, Community Memorial-Ventura County, and Cottage -Santa Barbara
**Notable accomplishments:**
- District Field Sales Trainer ('03, '04)
- Celiac Disease Product Life Cycle Team ('04)
- Territory growth of 128+% (since date of hire)
- #1 of 65 Sales Reps  nationwide YTD in sales of Celiac Diagnostic testing ('02, '03, '04)
- #1 of 65 Sales Reps  nationwide YTD in sales of Liver Fibrosis testing ('03, '04)
- #2 of 65 Sales Reps  nationwide YTD in overall revenue ('02, '03, '04)
- 2002 Titan Award Winner (top sales, growth, goal attainment)
- 2002 Rookie of the Year award.
- 2003 104.2% to goal
- 2003 #2 out of 65 overall sales growth in dollars
- 2003 #2 out of 65 overall revenue

3

**Anthony A. Marks, M.S.**
 (818) 254-7181
aamarks@earthlink.net

*Apr. '00 – Jan. '02*   **Associate Territory Business Manager/ Hospital Responsibilities**
                        **BRISTOL-MYERS SQUIBB**
                        Laguna, California
                        Responsibilities: Increasing market share with a wide variety of products including diabetes, cardiology, cholesterol, infectious disease, and neuroscience; interaction with hospitals, doctors, office staff, and pharmacies, working synergistically within a team atmosphere. Develop contractual agreements to obtain formulary status at area hospitals, arrange continuing education programs for doctors and pharmacists, attending and hosting educational fairs.
                        **Notable Accomplishments:**
                        ▪ 2000 Pinnacle award winner- top 15% of sales in the region

*1983 – 2008*          **Pharmacy Technician (California Registration 3974 - Current)**
                        Responsibilities:  Process and fill prescriptions - Interaction with insurance companies, patients, medical and veterinary practitioners and ancillary staff - Outside marketing  - Assist in training pharmacy interns.

                        **KEY PHARMACY ('07 - '08),** Valley Village, California
                        **PLAZA WEST PHARMACY ('97 – '00),** Northridge, California
                        **RITE-AID ('94 – '97),** Sherman Oaks, California
                        **OAKDALE PHARMACY ('83 – '94),** Encino, California