```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
UNITED STATES OF AMERICA           :
                                   :
                                   :    20-cr-188-2 (JSR)
        -v-                        :
                                   :    MEMORANDUM ORDER
HAMID "RAY" AKHAVAN,               :
                                   :
        Defendant.                 :
                                   :
-----------------------------------x
```

JED S. RAKOFF, U.S.D.J.

After substantial delays caused by the pandemic, this case is firmly set for trial beginning March 1, 2021. Defendant Hamid "Ray" Akhavan now moves for pretrial release so that he can adequately prepare for trial. The Government argues that Akhavan should remain in custody pending trial because his repeated violations of this Court's orders demonstrate that he is a flight risk and a danger to the community. Akhavan responds that he can adequately ameliorate the risks of flight and danger to the community by staying in an apartment without visitors (other than his counsel) and hiring private guards to supervise him day and night.

Not without some reservations given Akhavan's prior behavior, the Court finds that Akhavan cannot adequately prepare for trial in this document-heavy case without such release, especially given the limitations imposed by the pandemic on visitations by counsel with incarcerated defendants. Therefore, pursuant to 18 U.S.C.

1

§ 3142(i), the Court orders Akhavan's temporary release pending trial, under strict conditions set forth below, including 24/7 supervision by armed guards at Akhavan's expense.

BACKGROUND

On March 27, 2020, Hamid Akhavan was arrested in the Central District of California on the S(1) superseding indictment filed in this case.  Magistrate Judge John E. McDermott ordered Akhavan to be released pending trial on conditions, including that he sign a $5,000,000 personal recognizance bond secured by $250,000 cash, with three cosigners; attend drug treatment; and not violate state or federal laws.

In August 2020, Pretrial Services alleged that Akhavan had violated these conditions, including by using cocaine.  The Court permitted briefing and conducted a hearing on September 4, 2020. The Court credited those allegations, but rather than remanding Akhavan to custody, the Court ordered that Akhavan enter an inpatient drug treatment program, that he be subject to GPS monitoring, and that all other pretrial release conditions remain in place.  The Court warned, "I've gone out on a limb here a little bit. If you violate any of the conditions of supervised release that were just imposed and are going to be implemented in the next few days, you leave me with no choice but to remand you[.]"  Sept. 3, 2020 Tr. 25.

Nonetheless, Pretrial Services alleges that Akhavan continued to violate the conditions of pretrial release, including by using cocaine, lying to a police officer, and unlawfully possessing firearms.  In November 2020, the Hollywood Police Department arrested Akhavan for the alleged firearm possession, and he was duly remanded.  In December 2020, this Court issued a writ of habeas corpus ad prosequendum, and Akhavan was transferred to federal custody and transported to this District for the jury trial in this case, which is firmly scheduled to begin March 1, 2021. He has been detained since that time, but the Court now considers whether Akhavan should be released pending trial.

LEGAL STANDARD

Even where a defendant would otherwise be detained, 18 U.S.C. § 3142(i) authorizes the "temporary release" of a defendant "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

DISCUSSION

Based upon the Government's proffer, which the defense does not credibly rebut,[1] the Court finds for present purposes that

---

[1] Akhavan pleaded "not guilty" to the associated state charges. The Court's findings on the present record should not be read to suggest the outcome of any state court proceeding, which would involve more stringent evidentiary rules and procedural protections, a higher burden of proof, a more complete record, and a right to trial by jury.

Akhavan violated the conditions of pretrial release in at least
the following ways:

- Akhavan used cocaine while in inpatient drug treatment.

- Within one day of his release from inpatient drug treatment,
  he used cocaine again and apparently overdosed.

- At the hospital following that overdose, Akhavan falsely told
  a police officer that he was not on probation when he was, in
  fact, on probation for a state offense.

- On October 30, 2020, Akhavan missed his appointment for intake
  at an outpatient drug treatment program.

- On November 6, 2020, Hollywood Police Department officers
  found in Akhavan's bedroom two firearms -- one of which was
  a semi-automatic pistol loaded with a high-capacity magazine
  carrying 12 rounds -- and a prescription bottle containing
  what appeared to be a dose of crack cocaine.[2]

  Without substantially denying these allegations, Akhavan
responds that he suffers from a disease, drug addiction, and made

---

[2] The Government also alleges that Akhavan "appears to be
attempting to threaten and interfere with at least one witness[]
in connection with his pending state firearm case."  Gov't Ltr.,
ECF No. 144, at 1.  The Court makes no finding about the veracity
of these allegations because Akhavan has not had a chance to
respond.  Nevertheless, the Court is troubled.  To reasonably
assure the safety of others, as stated more fully below, the Court
limits Akhavan's ability to communicate.  He will have no access
to the internet or to a cellular phone; he may communicate only by
landline, and only with his attorneys and with Pre-Trial Services,
except as authorized by Pre-Trial Services or the Court.

poor choices because of that disease.   The neuroscience of drug addiction doubtless demonstrates that successful recovery is immensely challenging and often begins with fits and starts, but while the Court understands a relapse, the Court cannot condone Akhavan's repeated violations.   More importantly, Akhavan's firearm possession and his alleged attempt to influence a witness extend far beyond a mere relapse and present a risk that Akhavan might harm others or himself.

On these facts, the Court has no difficulty concluding that Akhavan presents both a flight risk and a danger to the community. The Court must therefore ascertain whether "[any] condition or combination of conditions will reasonably assure the appearance of [Akhavan at trial] and the safety of any other person and the community."   18 U.S.C. § 3142(e)(1).   Akhavan argues that he could hire private armed guards whose constant surveillance would reasonably assure his appearance at trial and the safety of other persons and the community.   The Court adopted a similar approach for Akhavan's co-defendant, Ruben Weigand, to ameliorate the risk that Weigand might use his substantial personal wealth and his German citizenship to flee.   The Court agrees that private guards could ameliorate the risks of flight and of danger to the community.

Even so, the Court would not ordinarily permit Akhavan's release on the conditions that he proposes.   A defendant generally

cannot use his wealth to secure release from pretrial detention when a defendant who is similarly situated, but for wealth, would be afforded no such opportunity.  See United States v. Boustani, 932 F.3d 79, 82-83 (2d Cir. 2019)(affirming denial of bail, citing a "fundamental principle of fairness" sounding in equal protection, because "[a] similarly situated defendant of lesser means surely would be detained pending trial, and Boustani is not permitted to avoid such a result by relying on his own financial resources to pay for a private jail").  The Court took a contrary approach with Weigand because "[i]f defendants are to be treated similarly, without regard to wealth, then Weigand cannot be detained when an otherwise similarly situated indigent defendant would be released."  Opinion & Order, ECF No. 112, at 3.  Akhavan, however, is a flight risk and a danger to the community for reasons independent of his wealth.

Usually, this would be the end of the matter, and the Court would continue to remand Akhavan pending trial.  But this case is unusual.  Alongside the important equal protection principle articulated in Boustani, this Court must weigh a panoply of other interests: the constitutional rights of Akhavan, his co-defendant, and the public to a speedy trial; Akhavan's right to access counsel to adequately prepare a defense during a pandemic; and the interests of jurors, attorneys, courthouse staff, and other trial attendees in avoiding exposure to COVID-19.  These interests would

be jeopardized by attempting to conduct a complex, three-week, document-heavy trial at this specific moment in the pandemic, while the defendant remains in custody at the Metropolitan Correctional Center ("MCC").  This is for several reasons:

First, unless the Court orders Akhavan's temporary release, Akhavan would not have sufficient access to counsel before and during the trial.  To be sure, Akhavan has had many months to confer with his counsel, and most of the Government's documents were produced months ago.  Nevertheless, in a complex, document-heavy white-collar case like this, in the days leading up to trial and during the trial itself, Akhavan and his counsel must be able to regularly confer.

Despite the efforts of the Bureau of Prisons ("BOP"), the Court seriously doubts that the MCC will be able to afford Akhavan a sufficient degree of in-person attorney-client contact at this time.  Earlier this week, the Government represented that the MCC "is currently allowing in-person visits, as well as arranging for calls and video conference sessions, with defense counsel."  Gov't Ltr., ECF No. 144, at 5 (emphasis added).  But the Government cannot reasonably represent that regular attorney-client access will continue.  The Court learned just yesterday that the MCC placed two additional units under quarantine for suspected cases of COVID-19.  Even if Akhavan's unit is not one of those affected, the odds are not in our favor: to adequately prepare his defense,

Akhavan will need to have regular access to his counsel for the next five weeks. A lockdown at any point during that period could preclude his access to counsel.

Second, even if the Court ordered the MCC to permit such consultations, the risks to Akhavan, his counsel, and others would be significant. Although the Court fervently hopes that measures taken by the BOP will thwart any COVID-19 outbreak that may have occurred at the MCC, given the present high level of cases and the arrival of more transmissible, vaccine-resistant variants, the Court has reason for concern. The Court has a duty to ameliorate any danger Akhavan poses to the community -- including the risk that he might transmit the virus to other trial participants. The best way to ameliorate that risk is to place Akhavan into an isolated setting -- precisely what Akhavan proposes.

Third, if the Court were to keep Akhavan in custody, the parties to this proceeding would face an unacceptable risk of another delay or a mistrial. The Court noted this risk when releasing Weigand in October. The Court's rationale applies with even more force now: "[t]he logistical challenges of arranging a new trial date under present circumstances would be extraordinary and the ensuing delays could jeopardize the defendants' speedy trial rights." Opinion & Order, ECF No. 112, at 5. Tis trial has been repeatedly rescheduled, with substantial efforts from all involved. Now, a firm trial date is finally in sight. Witnesses

and counsel are on the brink of boarding planes to fly in from across the country.  If Akhavan remains at MCC under present conditions, then there is a substantial risk that he could become infected at some point during the next six weeks.  The Court finds that permitting Akhavan's temporary release into the custody of private guards is necessary to ensure that this trial may proceed on schedule.  Thus, the Court concludes that the "fundamental principle of fairness" described in <u>Boustani</u>, 932 F.3d 79, 82, must yield to the competing considerations set forth in 18 U.S.C. § 3142(i).  After all, the right to a speedy trial, unlike the penumbral principle of fairness articulated in <u>Boustani</u>, is explicitly articulated in the Bill of Rights.  U.S. Const. amend. VI.[3]

For these reasons, the Court hereby orders that, once all custodial holds are lifted (including any imposed by the California state authorities), Akhavan shall be released pending trial on the following conditions:

1. All conditions of pretrial release in effect prior to Akhavan's arrest in November 2020 remain in effect.

---

[3] Moreover, <u>Boustani</u> did not consider the standards for temporary emergency release under 18 U.S.C. § 3142(i).  The Court does not mean to suggest that <u>no</u> trial can presently proceed if it involves a defendant detained at the MCC.  This trial is especially complex and, hence, especially long.  The longer the trial, the longer the window for a COVID-19 exposure that could beget a mistrial.

2. Immediately upon Akhavan's release from custody, he shall be escorted to an apartment in Manhattan rented at his expense, the location of which shall be furnished beforehand to Pre-Trial Services and the Government.  He shall quarantine for four days and obtain a SARS-CoV-2 test on the fifth day. Until he tests negative, he must remain in quarantine except to obtain a SARS-CoV-2 test.

3. Following his negative test result,[4] Akhavan shall remain at his rented apartment at all times of day and night, except that he may leave -- under the supervision of armed security guards -- to meet his counsel at their New York office or hotel room.  Any other exceptions must be expressly authorized by Pre-Trial Services or this Court, in writing, in advance.

4. Akhavan's detention in the rented apartment will be secured at all times by on-premises armed security guards, paid for by Akhavan.

5. Akhavan will give his express consent in writing to the use of reasonable force by the armed security guards to thwart any attempt to flee or to leave his apartment for any reason not authorized by this Order, Pre-Trial Services, or the

---

[4] If Akhavan tests positive, then counsel should jointly call Chambers.

Court.  In addition, the Court hereby authorizes such use of force.

6. Except Akhavan's counsel, any visitors for Akhavan will require pre-approval by Pre-Trial Services.

7. Akhavan will be subject to strict supervision and electronic GPS monitoring, as directed by Pre-Trial Services.

8. Akhavan will not have access to a cell phone.  Akhavan will not have access to the internet by any means, including but not limited to ethernet or wi-fi, except for trial preparation (e.g., review of documents) in the presence of and under the supervision of his counsel.  Akhavan may not send or receive any form of digital message (e.g., email, text message).

9. The rented premises may contain one landline telephone, which must be monitored by a private guard.  Akhavan may use this telephone to communicate only with Pre-Trial Services and his attorneys, except as authorized in advance by Pre-Trial Services or the Court.  The private guard must screen all calls to ensure that Akhavan speaks with no one else.

SO ORDERED.

Dated:    New York, NY
          February 12, 2021

_____
United States District Judge