```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :
                                    :
                                    :   20-cr-188 (JSR)
        -v-                         :
                                    :   MEMORANDUM ORDER
RUBEN WEIGAND & HAMID AKHAVAN,      :
                                    :
    Defendants.                     :
                                    :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On February 5, 2021, with Court authorization, third party Circle Internet Financial LLC ("Circle") moved to quash a subpoena issued by defendant Ruben Weigand pursuant to Federal Rule of Criminal Procedure 17(c). That motion is now fully briefed. For the reasons that follow, the motion is granted in part and denied in part.

BACKGROUND

The S3 superseding indictment charges defendants Weigand and Hamid "Ray" Akhavan with conspiracy to commit bank fraud during the approximate period of 2016 to 2019. It alleges that the defendants and co-conspirators participated in what the Government calls a "transaction laundering scheme" to trick banks into processing debit and credit card transactions for marijuana. Specifically, the Government alleges that the defendants and others conspired to set up "phony merchants," complete with fictitious websites and offshore bank accounts, to process

1

transactions on behalf of Eaze, an online marijuana marketplace. The phony merchants appeared to sell legitimate products, "such as carbonated drinks, face cream, dog products, and diving gear.  Yet . . . these companies were actually being used to facilitate the approval and processing of marijuana transactions."  Indictment ¶ 13.  The indictment alleges that the conspirators used the phony merchants to launder more than $100 million worth of marijuana transactions.  Indictment ¶ 14.

Relevantly for present purposes, the indictment alleges that misrepresentations regarding the phony merchants and their sales mattered to the issuing banks because "[i]ssuing banks in the United States generally will not extend credit (i.e., approve) transactions that involve unlawful activity under federal law, such as the sale of marijuana."  Indictment ¶ 11(e).  At trial, one disputed issue will be the accuracy of this allegation.  To be sure, it is not seriously disputed that banks maintain policies against processing transactions involving unlawful activity under federal law.  But defendants intend to argue that these policies are pretextual -- designed to protect banks from liability, but not enforced in practice.  The dispute now before the Court concerns Weigand's attempt to acquire evidence on this topic.

## LEGAL STANDARD

In contrast to the broad subpoena powers enjoyed by civil litigants and by the Government, utilizing the grand jury, a

criminal defendant may not command production of discovery materials; rather, the defendant must seek leave of Court before issuing a subpoena for documents returnable before trial. See Fed. R. Crim. P. 17(c). Rule 17(c) provides, in pertinent part:

> (1) In General.  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> (2) Quashing or Modifying the Subpoena.  On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

In 1951, the Supreme Court explained that Rule 17(c) permits a defendant to issue a subpoena to the Government compelling the production only of "evidence" -- that is, "any material that had been used before the grand jury or could be used at the trial." Id. at 221.  Rule 17(c) did not permit broad "discovery" against the Government.  Id.  But the fact that the defendant had sought issuance of subpoenas directed to the Government, rather than to a third party, was crucial to the Supreme Court's reasoning.  The Court pointed out that Federal Rule of Criminal Procedure 16 permits only limited discovery from the Government and inferred that "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." Id. at 220.

In 1974, the Supreme Court revisited the issue in the context of a subpoena issued to a third party, albeit a unique one: former president Richard Nixon. Relying upon Bowman, which it called "[t]he leading case in this Court interpreting" Rule 17(c), the Supreme Court found that "the Special Prosecutor, in order to carry his burden [to show entitlement to a Rule 17(c) subpoena], must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. 683, 698 (1974). Nixon, unlike Bowman, concerned a request for a subpoena directed to a third party. But on the other hand, the request was made by the Government, not by the defendant. Thus, like Bowman, Nixon did not consider whether, and under what circumstances, Rule 17(c) might be appropriately used by the defendant to seek discovery against a third party. Indeed, the Nixon Court recognized that a different standard might apply when a subpoena was issued to a third party, even by the Government:

> The District Court found here that it was faced with the more unusual situation where the subpoena, rather than being directed to the government by defendants, issues to what, as a practical matter, is a third party. The Special Prosecutor suggests that the evidentiary requirement of Bowman . . . does not apply in its full vigor when the subpoena duces tecum is issued to third parties rather than to government prosecutors. We need not decide whether a lower standard exists because we are satisfied that the relevance and evidentiary nature of the subpoenaed tapes were sufficiently shown as a preliminary matter to warrant the District Court's refusal to quash the subpoena.

See id. at 699 n.12 (punctuation omitted).

4

Nevertheless, when confronted with defendants' requests to issue a Rule 17(c) subpoena to a third party, courts in this Circuit generally look to the three factors articulated in Nixon. See, e.g., United States v. Skelos, No. 1-CR-317 (KMW), 2018 WL 225453, at *1 (S.D.N.Y. May 17, 2018) ("[C]ourts in the Second Circuit have almost unanimously applied Nixon to subpoenas served on third-parties[.]"). But no binding authority requires such a result.[1] In 2019, when an appellant argued that a district court abused its discretion by quashing a Rule 17(c) subpoena, the Second Circuit explicitly declined to address whether district courts must apply Nixon or whether they might instead apply a different test. See United States v. Bergstein, 788 F. App'x 742, 746 (2d Cir. 2019).

An alternative test was articulated by Judge Scheindlin in United States v. Tucker, 249 F.R.D. 58 (S.D.N.Y. 2008). Judge Scheindlin explained that the Nixon standard

> is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense. A defendant in such a situation need only show that the request is (1) reasonably construed as "material to the defense," and (2) not unduly oppressive for the producing party to respond.

---

[1] The Second Circuit applied the Nixon factors in United States v. Ulbricht, 858 F.3d 71, 109 (2d Cir. 2017), but that case, like Bowman, involved a subpoena issued to the Government -- not to a third party.

5

Id. at 66. Put simply, instead of applying Nixon, Judge Scheindlin went back to basics by requiring defendants to comply with Rule 17(c) itself, which precludes only a subpoena that is "unreasonable or oppressive." The Second Circuit in Bergstrein refused to reject Tucker's more liberal approach, leaving the question open. Bergstein, 788 F. App'x at 746. ("Whether under the Nixon standard or the standard articulated in Tucker, we conclude that the district court did not abuse its discretion in quashing the subpoenas. The district court may quash a Rule 17(c) subpoena 'if compliance would be unreasonable or oppressive.'") (citing Fed. R. Crim. P. 17(c)(2)).

Judge Scheindlin's approach is more consistent with modern principles of liberal discovery than Nixon. Permitting issuance of reasonable third-party subpoenas to take discovery, even when a defendant cannot demonstrate in advance that the sought-after evidence is admissible appropriately aligns criminal discovery more closely with modern principles of liberal discovery and better balances the discovery powers of Government and defense. A more liberal approach is also more consistent with the text of Rule 17(c) itself. After all, "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." Nixon, 418 U.S. at 698 (quoting Fed. R. Civ. P. 17(c)(2). That is the standard this Court will apply.

ANALYSIS

Circle argues that the subpoena should be quashed principally because the documents it seeks are irrelevant. Circle also argues that many of the documents are inadmissible hearsay, that public disclosure of Circle's confidential information would subject it to potential competitive harms, and that the requests are insufficiently specific.[2] The Court begins with relevance.

**I. Relevance**

In assessing whether the subpoena is "unreasonable," the Court must first consider whether it seeks relevant information. The defendants principally contend that the subpoena seeks evidence that would be probative on the question of materiality.

The materiality of an alleged misrepresentations is an element of the charge of bank fraud. Because the Government intends to prove a conspiracy to commit bank fraud, it must prove beyond a reasonable doubt the materiality of the misrepresentations that the defendants allegedly conspired to make. "[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision

---

[2] The Government likewise asks the Court to quash the subpoena, principally arguing that the subpoena does not seek relevant material. The Government cites caselaw to support its contention that it has standing to move to quash the subpoena in its own right. The Court need not decide whether the Government has standing because Circle, the subpoenant and the movant, has standing. The Court considers each of the Government's arguments in assessing the merits of Circle's motion.

7

of the decisionmaking body to which it was addressed." Neder v. United States, 527 U.S. 1, 16 (1999) (citation, alteration, and quotation marks omitted). However, a "mere metaphysical possibility" of influence is insufficient. United States v. Litvak, 808 F.3d 160, 173 (2d Cir. 2015). Rather, a misrepresentation is material when it is "reasonably likely to influence the [decisionmaker] in making a determination required to be made." United States v. Rigas, 490 F.3d at 208, 231 (2d Cir. 2007) (emphasis added). Accordingly, a principal question for the jury will be whether the alleged misrepresentations had a natural tendency to influence, or were reasonably likely to influence, the banks in deciding whether to process Eaze credit and debit card transactions.

To understand why the defendants believe that Weigand's subpoena seeks evidence that bears on materiality, one must first understand the business relationship between Circle and Eaze.[3] The parties (and Circle) agree that after the period described in the indictment, despite the fact that the Government pursued this case, Eaze has continued to permit its customers to purchase marijuana using credit and debit cards issued by U.S. banks. Beginning in July 2020, Circle has facilitated such payments for Eaze, acting

---

[3] The following facts are drawn from the parties' briefing and proffered evidence for present purposes only. At trial, of course, the parties must substantiate any such claims they intend to make with admissible evidence.

8

as an intermediary between Eaze and the credit card companies. Circle offers a "payment infrastructure" to companies like Eaze "whereby online companies can take card and bank transfer payments for goods or services and receive settlement in USD Coin," a cryptocurrency with its value pegged 1:1 to the U.S. dollar. Allaire Aff., ECF No. 137-3, ¶¶ 3-4.

Weigand hired a private investigator to initiate a marijuana purchase on the Eaze platform via Circle. See Larsen Decl., ECF No. 142. Based upon that investigator's findings and the other limited evidence before the Court, there is reason to believe that Circle charges a customer's debit or credit card for USD Coin in the amount of the marijuana purchase; credits Eaze for the purchase, nominally in USD Coin; converts that USD Coin back into U.S. dollars; and transfers those dollars into Eaze's account. In essence, Circle offers Eaze USD Coin as a fig leaf separating the issuing bank from Eaze. But -- and here is defendants' key allegation -- Circle does not hide what it is doing from the banks. When Weigand's private investigator conducted a test buy, her credit card statement included the word "Eaze" in the description of the charge. The private investigator's bank had in its possession information tending to show that this charge related to Eaze.

Akhavan and Weigand observe that anyone who Googles Eaze -- or anyone familiar with this case -- knows that Eaze is a marijuana

marketplace. Given the ease with which a bank could figure out that Eaze sells marijuana, and the alleged quantity of marijuana sales consummated by Eaze (tens of millions of dollars annually), defendants argue that a juror could infer that banks must know what Eaze and Circle are doing. The fact that banks nevertheless process such transactions, like the private investigator's test buy, could arguably support an inference that the banks would not have cared about the misrepresentations that the defendants allegedly made.

To be sure, defendants' argument requires several inferential steps, which a jury is free to make or to reject. All the Court must here decide is whether defendants' subpoena seeks relevant information on this topic.

The Government principally argues that the victim banks have policies prohibiting use of their credit and debit cards to make illegal purchases and that whether banks are effective at enforcing those policies is beside the point because a victim's negligence or ineptitude is no defense to bank fraud. This is true as far as it goes, but it misunderstands defendants' theory. They intend to argue not that banks are lackadaisical in their enforcement, but rather that banks <u>do not care</u> about whether their cardholders are purchasing marijuana (at least in states where that is legal). If defendants uncover evidence sufficient to support such an inference, then, at least arguably, a juror might find that the

10

alleged misstatements did not have a natural tendency to influence or a reasonable likelihood of influencing a bank's decision whether to process Eaze transactions.[4]

For these reasons, the Court finds that the subpoena seeks relevant materials.[5]

## II. Other Objections

Circle argues that some of the documents sought by the subpoena are inadmissible hearsay. While admissibility is the second Nixon factor, Rule 17(c) does not by its terms require that a subpoena seek only admissible evidence. A subpoena for evidence, itself inadmissible, that could lead to the discovery of admissible evidence, is not necessarily "unreasonable or oppressive." In any

---

[4] The Government points out that some Eaze/Circle transactions might have been for legal products (e.g., rolling paper). If it turns out that Circle only or primarily processes Eaze transactions for non-marijuana products, then that could undermine the materiality argument the defendants are trying to make. But this proves the defendants' point: documents responsive to the subpoena will likely address this issue.

The Government also argues that banks might be willing to process Circle's transactions because they are, nominally, purchases of USD Coin rather than marijuana. Thus, even if the banks are knowingly processing marijuana transactions via USD Coin, the misrepresentations alleged in the indictment still would have been reasonably likely to influence the banks' decision whether to process the transactions at issue in this case. This is a reasonable argument that the Government is free to present to the jury. This argument does not, however, demonstrate that the subpoena does not seek relevant material.

[5] The Court does not reach defendants' further argument that the subpoena seeks evidence relevant to impeachment.

11

event, this Court can and will address hearsay objections to specific documents at the pertinent time. At this stage, the objection is too speculative to support the motion to quash.

The same goes for Circle's confidentiality objections. Circle claims, in general, that disclosure of these documents will reveal its proprietary methods and financial and customer information, harming it and placing it at a competitive disadvantage. But a protective order is in place to preserve the confidentiality of such documents until trial. And if a party chooses to offer a Circle exhibit at trial, then the Court will consider confidentiality objections at that time.

Finally, Circle argues that the subpoena is insufficiently specific because it seeks broad categories of documents across a six-year period. Here, Circle has a point. Given the information before the Court, Circle's commercial relationship with Eaze apparently began in July 2020. Perhaps it took a few months for the parties to develop that business relationship before Circle actually processed its first Eaze payment. But the defendants have failed to offer any reason to believe that Circle has relevant evidence from before 2020. For this reason, the Court grants Eaze's motion to quash the subpoena insofar as it seeks documents from prior to January 1, 2020.

Also, Circle objects that certain categories of documents are overly broad, seeking all communications between Circle and

certain entities.  The Court agrees and grants the motion to quash with regard to subpoena items number 1 ("Communications between You and Eaze during the Relevant Time Period . . . .") and 3 ("Communications between You and any Marijuana Dispensaries during the Relevant Time Period . . . .").

For these reasons, Circle's motion to quash the subpoena is granted in part and denied in part.

SO ORDERED.

Dated:   New York, NY
         February 20, 2021                  _____
                                            United States District Judge