UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAMID AKHAVAN and RUBEN WEIGAND | Crim. Action No. 1:20-cr-00188 |

**MEMORANDUM OF LAW OF NON-PARTIES BANK OF AMERICA, N.A.,
MICHAEL FARRELL, AND ROSEMARY STACK IN SUPPORT OF THEIR JOINT
MOTION TO QUASH DEFENDANT HAMID AKHAVAN'S TRIAL SUBPOENAS
AND IN THE ALTERNATIVE TO ALLOW TESTIMONY BY VIDEO**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 2

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ................................................................................................................................. 7

    I.    THE SUBPOENAS ARE UNREASONABLE, AS THEY SEEK TESTIMONY THAT IS IRRELEVANT, IMMATERIAL, AND DUPLICATIVE ................................................................................................. 7

    II.    THE SUBPOENAS ARE UNDULY BURDENSOME AND OPPRESSIVE IN LIGHT OF THE CURRENT COVID-19 PANDEMIC ......... 10

    III.    IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE SUBPOENAS TO PROVIDE FOR VIDEO TESTIMONY ............................... 12

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4 (1st Cir. 2000) ......................................... 6

*United States v. Beasley*, 479 F.2d 1124 (5th Cir. 1973) ............................................................. 6, 7

*United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005) ............................................................. 6

*United States v. Cognetta*, 2019 WL 4198544 (S.D.N.Y. Aug. 13, 2019) ...................................... 6

*United States v. Cordero*, 2007 WL 9672622 (N.D. Ga. Dec. 20, 2007) ....................................... 6

*United States v. Nachamie*, 91 F. Supp. 2d 552 (S.D.N.Y. 2000) .................................................. 6

*United States v. Skelos*, No. 15-CR-317 (KMW), 2018 U.S. Dist. LEXIS 83480
 (S.D.N.Y. May 17, 2018) ............................................................................................................ 8

*United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008) ............................................................... 6

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Crim. P. 17(a) ................................................................................................................. 5, 8

Fed. R. Crim. P 17(c) ....................................................................................................................... 6

Fed. R. Evid. 803(6) ......................................................................................................................... 8

**OTHER AUTHORITIES**

*COVID-19 Travel Advisory*, N.Y. Dep't of Health,
 https://coronavirus.health.ny.gov/covid-19-travel-advisory (last visited
 Feb. 24, 2021) ........................................................................................................................... 11

*Travel During COVID-19*, CDC COVID-19 (Feb. 16, 2021),
 https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-
 covid19.html ............................................................................................................................. 10

*United States COVID-19 Cases and Deaths by State*, CDC COVID Data Tracker,
 https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days
 (last visited Feb. 24, 2021) ....................................................................................................... 10

Non-parties Bank of America, N.A. ("Bank of America" or "the Bank"), Michael Farrell, and Rosemary Stack respectfully submit this Memorandum of Law in Support of their Joint Motion to Quash Defendant Hamid Akhavan's Trial Subpoenas and in the Alternative to Allow Testimony by Video.

## PRELIMINARY STATEMENT

Defendant Hamid Akhavan ("Defendant") seeks—less than a week before trial—to compel non-parties Michael Farrell and Rosemary Stack to travel from Georgia and Delaware, respectively, to appear and testify in person at trial in New York. These subpoenas subject Mr. Farrell and Ms. Stack to unwarranted burdens and grave risks in light of the ongoing COVID-19 pandemic, and they seek testimony that is irrelevant, immaterial, and duplicative. Accordingly, the subpoenas should be quashed—or at the very least, modified to allow the witnesses to testify via live video from their home states.

Throughout Bank of America's involvement in this case as a third party, which dates back to June 2020, the Bank has made every effort to cooperate with requests from both the government and Defendant. The Bank produced over 1,600 pages of documents to Defendant and facilitated a government interview with a Bank of America Senior Vice President, Ms. Stack, which we understand has been summarized for Defendant in a memorandum of interview produced by the government. When it became apparent that Ms. Stack would not be available to testify in person at trial due to the COVID-19 pandemic, Bank of America accommodated the government's request for an alternate employee who could provide in-person testimony, making Senior Vice President Rich Clow available for testimony at trial. When Defendant made clear that he wanted Mr. Clow to testify as part of Defendant's case as well, the Bank engaged in a constructive dialogue with counsel for Defendant concerning the broad range of topics he would

be able to cover in his testimony and the documents he would be able to authenticate and explain.

Despite these efforts, on the eve of the trial, Bank of America is now faced with subpoenas seeking testimony from two additional employees, both supported by only vague and unspecified reasons as to why this testimony is necessary. This is a far cry from the burden placed on a proponent of a subpoena to demonstrate that the material sought is not unreasonable or oppressive.

On the contrary, these subpoenas are unduly burdensome, as they force two non-parties to travel during a pandemic without even providing enough time for the witnesses to clear statewide or courthouse COVID protocols. And they are fundamentally unreasonable in that they seek testimony that is both irrelevant to the defense's case and wholly duplicative of other documents and testimony already proffered. For these reasons, the motion to quash should be granted or, in the alternative, the subpoenas should be modified to allow for video testimony.

**FACTUAL BACKGROUND**

On June 30, 2020, the government contacted Bank of America to facilitate an interview. The government wanted to know what information the issuing bank of a credit or debit card receives about the identity of a merchant and the goods being sold to the customer by the merchant. The government also wanted to know what actions Bank of America would take if a transaction was discovered to be a transaction involving marijuana. On July 10, 2020, the government (including two FBI agents) interviewed Bank of America employee Rosemary Stack regarding those topics. As a Senior Vice President for Card Payments Strategy, Ms. Stack works with the Enterprise Payments Team at Bank of America. The Enterprise Payments Team's work includes overseeing and monitoring the Bank's debit and credit card network controls and engaging with credit card networks (such as Visa, MasterCard, and American Express) to

enhance the Bank's processes and escalate issues to the credit card network as necessary. At the end of the interview, the government requested documents such as Bank of America's policies around marijuana businesses and sample credit card agreements with card holders. Bank of America produced the requested documents to the government in July and August of 2020.

On October 15, 2020, the government requested that Ms. Stack serve as a witness for the government in the trial for this case, which was then set for December 1, 2020. A few days later, counsel for Bank of America informed the government that in light of the risks of the COVID-19 pandemic, Ms. Stack would need to testify by live video or by pre-recorded deposition testimony. The government asked if the Bank had a New York employee who had the requisite knowledge and could testify instead.

The Bank identified Rich Clow, a Senior Vice President for Emerging Payments and Strategy, as a witness who could provide substantially the same testimony and had the requisite knowledge and expertise—and who lives in New Jersey, a state contiguous to New York, and works in New York City. Like Ms. Stack, Mr. Clow works with the Enterprise Payments Team. And like Ms. Stack, Mr. Clow is familiar with the Bank's controls as they relate to the credit and debit card networks and the processes in place to monitor and escalate potentially non-compliant transactions to the card networks.

On October 27, 2020, counsel for Defendant served Bank of America with a Subpoena to Produce Documents, Information, or Other Objects in a Criminal Case, seeking a substantially broader set of materials than those requested by the government. In a series of conference calls beginning on November 2, 2020, counsel for the Bank described to defense counsel the available documents and worked with defense counsel to understand Defendant's discovery needs. On January 13, 2021, Bank of America produced over 1,600 pages of documents to Defendant,

noting that per prior agreement with defense counsel, the production satisfied the October 27 subpoena. The materials produced included periodic audits and reviews of marijuana-related transactions and communications related to dispensary transactions through credit/debit card networks, Bank of America's Marijuana Dispensary Card Transaction Monitoring Procedure, and information on merchant names and actions taken by Bank of America concerning transactions potentially related to the sale of cannabis.

On February 8, 2021, counsel for Defendant contacted counsel for the Bank requesting that it designate a representative who could testify about the substance of the documents produced and attest, where applicable, that the documents were produced in the ordinary course of the Bank's business. During a call on February 9, 2021, counsel for the Bank confirmed that the same witness identified for the government, Mr. Clow, would be able to speak to the topics identified by Defendant, and that the Bank could provide the requested business records certification.

On February 12, 2021, counsel for Defendant again discussed with the Bank's counsel Defendant's desire for testimony on certain topics, and the Bank's counsel reiterated that Mr. Clow was the right witness on these subjects. Counsel for Defendant posed additional questions about the Bank's business, and the Bank's counsel agreed to look into those issues. Following the call, counsel for Defendant served Bank of America with a trial subpoena for testimony on a list of topics identified by Defendant.

On Sunday, February 21, 2021, just days before the trial was set to begin, counsel for Defendant contacted counsel for Bank of America regarding their intent to issue trial subpoenas to Michael Farrell and Rosemary Stack (collectively, the "Subpoenas"). During a February 23, 2021 phone call, and in an email message sent the same day, counsel for Defendant asserted that

they wished to subpoena Ms. Stack because the government's memorandum summarizing her July 2020 interview—which we have never seen—included statements that they viewed as potentially helpful to Defendant's case. Counsel for Defendant asserted that they wished to subpoena Mr. Farrell because Defendant might seek to introduce into evidence certain email messages that included Mr. Farrell but not Mr. Clow—notwithstanding that the government might be willing to admit those emails without requiring a witness, as business records. Defense counsel also stated on the call that Defendant would not support a motion to allow Mr. Farrell and Ms. Stack to testify remotely, stating only that Defendant would "take no position" on such a motion.

In response, counsel for the Bank reiterated on the call that Mr. Clow was knowledgeable as to substantially all of the relevant topics that Ms. Stack had discussed during her interview and that the emails involving Mr. Farrell lacked relevance and duplicated other evidence likely to be admitted at trial.[1] Nonetheless, Defendant served the Subpoenas on Mr. Farrell and Ms. Stack later that day, ordering Mr. Farrell and Ms. Stack to appear in New York to testify less than a week later, on March 1, 2021.[2]

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17(a) governs subpoenas *ad testificandum* in criminal proceedings. Although Rule 17(a) "does not provide explicitly for quashal or modification, courts routinely have entertained motions seeking such relief and decided them by

---

[1] On this call, the attorneys for the Bank made clear that they did not at that time represent Mr. Farrell or Ms. Stack. Counsel explained that, if Defendant served subpoenas on Mr. Farrell or Ms. Stack, and if they chose to be represented by the same firm representing the Bank, counsel would likely recommend moving to quash given the extraordinary burden involved in having to provide trial testimony and the lack of relevance of the requested testimony.

[2] During a February 24, 2021 telephonic conference with the Court's Chambers, counsel for Defendant agreed that Mr. Farrell and Ms. Stack would not need to appear in person during the first week of the trial.

reference to comparable principles." *Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000). Thus, courts apply "[r]oughly the same standard" to subpoenas *ad testificandum* as subpoenas *duces tecum* under Rule 17(c), *id.*, which allows a court to quash or modify a subpoena if "compliance would be unreasonable or oppressive." *See also United States v. Bergeson*, 425 F.3d 1221, 1227-1228 (9th Cir. 2005) (upholding a district court order quashing a subpoena for testimony pursuant to Fed. R. Crim. P. 17(c)(2)).

Accordingly, in order to survive a challenge, the proponent of a subpoena *ad testificandum* must "show that the testimony sought is both relevant and material." *Stern*, 214 F.3d at 17. A motion to quash or modify should be granted when the subpoena seeks testimony that is cumulative or immaterial to the defense. *United States v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973). Further, a motion to quash should be granted if the subpoena is "unduly burdensome or oppressive." *United States v. Cognetta*, 2019 WL 4198544, at *4 (S.D.N.Y. Aug. 13, 2019); *see also United States v. Cordero*, 2007 WL 9672622, at *2 n.4 (N.D. Ga. Dec. 20, 2007) ("Federal Rule of Criminal Procedure 17(c)(2) allows a court to quash a subpoena issued in a criminal case if compliance with the subpoena would be unduly burdensome or oppressive.").[3]

---

[3] In *United States v. Tucker*, the Court articulated a slightly different test for a subpoena *duces tecum* issued by a criminal defendant to a third party on the eve of trial, where "the defendant has an articulable suspicion that the documents may be material to his defense." *See* 249 F.R.D. 58, 66 (S.D.N.Y. 2008). Under this standard, the defendant must show "that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *Id.* (quoting *United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000)). This Court recently adopted the *Tucker* standard with respect to another subpoena seeking documents from a third party. Dkt. No. 177 at 6. For the reasons outlined below, the Subpoenas should also be quashed under this standard.

**ARGUMENT**

Defendant's subpoenas to Mr. Farrell and Ms. Stack should be quashed because the burden on these non-parties, requiring them to travel hundreds of miles to testify during a pandemic, far outweighs the minimal and speculative value that Defendant imagines might come from their testimony. There is no basis to believe that Ms. Stack's testimony will be different in any material respect than the testimony to be presented by Mr. Clow, who is already scheduled to testify pursuant to a defense subpoena. And Defendant cannot show that Mr. Farrell's testimony is needed because emails he is on would not be relevant or helpful to the defense, and their substance could be admitted without his presence.

I. **THE SUBPOENAS ARE UNREASONABLE, AS THEY SEEK TESTIMONY THAT IS IRRELEVANT, IMMATERIAL, AND DUPLICATIVE**

The Subpoenas seek testimony that is irrelevant to the issues in this case and are therefore unreasonable. Moreover, to the extent that Ms. Stack or Mr. Farrell's testimony *could* be deemed relevant, it is duplicative of evidence in the testimony that Bank of America employee Mr. Clow is prepared to offer at trial and in documents already produced by Bank of America to both the government and defense counsel. A motion to quash or modify should be granted when the subpoena seeks testimony that is cumulative or immaterial to the defense. *Beasley*, 479 F.2d at 1128.

*First*, any testimony that Ms. Stack could offer at trial is duplicative of the testimony that Mr. Clow is prepared to offer. Mr. Clow, like Ms. Stack, is personally familiar with the procedures Bank of America has in place for processing and reviewing transactions in order to flag and address those transactions that may violate federal law or internal policies. To the extent Defendant wishes to pursue a defense based on the argument that merchant trickery relating to marijuana sales was immaterial to Bank of America, Mr. Clow understands the

7

importance the Bank places on ensuring its card network is not used for illegal transactions, and the reasons behind that priority. He is thus qualified and prepared to testify to any topics Defendant may wish to explore from Ms. Stack's prior interview.

Indeed, Defendant is apparently unable to identify with any certainty the specific testimony Ms. Stack would provide upon being called to the stand. On the February 24, 2021 call with the Court's Chambers, counsel for Defendant stated that the defense would not call Ms. Stack as a witness *unless* Mr. Clow testified in a manner inconsistent with the FBI's notes of Ms. Stark's interview. This is no way satisfies the requirement that a Rule 17 subpoena seek "specific admissible evidence" in order to survive a motion to quash. *United States v. Skelos*, 2018 U.S. Dist. LEXIS 83480, at *5 (S.D.N.Y. May 17, 2018) (citation omitted).

*Second*, any testimony that Mr. Farrell could offer at trial is unnecessary or irrelevant to the defense, and to the extent that it may be deemed relevant, is duplicative of evidence Bank of America has already produced in cooperation with both the government and Defendant. Mr. Farrell's only connection with this case arises out of three emails included in Bank of America's January 13, 2021 production to Defendant, of which he was a recipient.[4] Defendant's apparent need for testimony from Mr. Farrell is so that Mr. Farrell can authenticate these three emails, as Defendant believes they are unlikely to be admitted as self-authenticating business records. First of all, to the extent that what Defendant is really seeking are the attachments to the emails, those documents likely *would* be business records under Federal Rule of Evidence 803(6) and Bank of

---

[4] Given the compressed timing of the briefing on this motion, as well as the Court's Protective Order protecting third-party material marked as Highly Confidential (*see* Dkt. No. 126), we have not included these Highly Confidential emails as exhibits. We are happy to provide them to the Court as needed or as requested.

America would be willing to provide a certification as to one of the attachments to that effect.[5] However, if authentication is all that Defendant needs, Bank of America is more than willing to provide an affidavit authenticating the documents as emails on the Bank's servers sent or received on the dates indicated by the individuals listed as senders and recipients.

In any event, the emails are irrelevant and immaterial to the defense. The three emails in question—to the extent that they address issues implicated in this trial at all—show Bank personnel working diligently to execute the Bank's procedures for reviewing transactions to flag and address marijuana transactions. In other words, these documents are merely examples of Bank of America employees doing their jobs to ensure that marijuana transactions are properly addressed. These documents are fundamentally unhelpful to the defense's argument, which hinges on a contention that Bank of America "do[es] not care about whether their cardholders are purchasing marijuana." Dkt. No. 177 at 10. Evidence that Bank employees were actively engaged in implementing and improving their procedures to prevent such transactions *cannot* be relevant to support such an argument.

Even if the contents of these emails could be deemed relevant and material, Mr. Farrell's testimony regarding their contents would nonetheless be irrelevant because it is duplicative. Bank of America has produced myriad documents which speak to its policies and procedures for

---

[5] One of the emails Defendant apparently wants Mr. Farrell to authenticate merely transmits a one page document in anticipation of a scheduled call. The other attachment is a completely redacted Visa Confidential document sent to Bank of America by Visa. Presumably, Defendant has or had the ability to procure a copy of this document from Visa (who is also appearing for trial by video), and request a certification as to that document, if he believes the document is material to his defense.

the prevention of marijuana purchases,[6] as well as examples of these procedures in practice.[7] These documents, which Bank of America has certified as business records, are sufficient to speak to the Bank's active interest in and steps towards monitoring against marijuana transactions. Moreover, Mr. Clow will testify to the very same efforts undertaken by the Bank to identify and escalate to the credit card networks non-compliant merchants that are demonstrated by the Farrell emails. The contents of these emails represent cumulative evidence at best, and a subpoena compelling testimony about their contents is therefore unreasonable.

## II. THE SUBPOENAS ARE UNDULY BURDENSOME AND OPPRESSIVE IN LIGHT OF THE CURRENT COVID-19 PANDEMIC

According to the Centers for Disease Control and Prevention ("CDC"), more than 28 million Americans so far have contracted COVID-19 and, as of the drafting of this motion, more than 503,000 have died from it. *See* CDC COVID Data Tracker, *United States COVID-19 Cases and Deaths by State*, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Feb. 25, 2021). Travel increases a person's risk of contracting COVID-19 and the CDC has explicitly warned against individuals travelling at this time. *See* CDC COVID-19 *Travel During COVID-19*, (Feb. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html. In fact, the CDC website states in bold letters: "**COVID-19 Alert: Cases are Extremely High. Avoid Travel.**" *Id.*

---

[6] These documents include, but are not limited to, Bank of America's Marijuana Dispensary Card Transaction Monitoring Procedure, Bank of America's Network Data Integrity Escalations Procedure, Bank of America's Marijuana Related Businesses Policy and Financial Crimes Compliance – Enterprise Policy, and Mastercard Rules and Visa Core Rules and Product Service Rules.

[7] These documents include, but are not limited to, periodic audits and review of marijuana-related transactions, communications related to dispensary transactions through the credit/debit card networks, the Marijuana Overview and Audit Results portion of Bank of America's High-Risk Transaction Monitoring Review, merchant names and actions taken by Bank of America concerning transactions potentially-related to the sale of cannabis, and exemplar credit and debit cardholder agreements issued by Bank of America.

In New York, out-of-state travelers entering the state from a noncontiguous state must first obtain a negative COVID-19 test no more than three days prior to reaching the state. *COVID-19 Travel Advisory*, N.Y. Dep't of Health (Feb. 9, 2021), https://coronavirus.health.ny.gov/covid-19-travel-advisory.  They must then quarantine for a minimum of three days, after which they must take another COVID-19 test.  *Id.*  Further, the Southern District of New York has a standing order in place that provides that anyone who has traveled "in the past 14 days" from "a state that is noncontiguous to New York" cannot enter a courthouse in the Southern District of New York unless "proof of compliance with the Court's test-out protocol has been provided."  *See* Second Amended Standing Order, ECF No. 3, Case No. 1:21-mc-00164-CM.  The test-out protocol[8] provides that, prior to entering the courthouse, individuals must take a COVID PCR diagnostic test "within three days prior to departure from the state of embarkation" *and* take "another COVID PCR diagnostic test on day 5 after arrival in New York," receiving negative results from both tests.

Given that Ms. Stack lives in Delaware and Mr. Farrell lives in Georgia, testifying in person would require at least a five-day stay in New York.  It is unduly burdensome for them to have to consume nearly a week of their lives for the sake of, at most, a few hours on the witness stand, especially given the lack of relevance and materiality to any testimony they could possibly give (as discussed above).  And given that neither Mr. Farrell nor Ms. Stack has received the COVID-19 vaccine, the risk of traveling and attending court is severe.

Even the accommodation afforded to Visa Inc. in a recent Court ruling—that the third-party witness be permitted to testify at trial via live two-way video from a different federal

---

[8] Available at https://www.nysd.uscourts.gov/sites/default/files/2020-11/Entry%20Protocol%20for%20Domestic%20Travelers%2011-20.pdf.

11

courthouse (*see* Dkt. No. 174; Minute Entry (Feb. 19, 2021))—would be unduly burdensome. Although Mr. Farrell and Ms. Stack would not need to navigate interstate travel protocols, they would still need to comply with courthouse protocols at the selected courthouses. And, again, given that neither has been vaccinated from COVID-19, they would both run the risk of contracting the virus in such a public forum.[9]

### III. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE SUBPOENAS TO PROVIDE FOR VIDEO TESTIMONY

In the alternative, if this Court denies this motion to quash the Subpoenas, we respectfully request that Ms. Stack be allowed to testify via live two-way video from a safe location in her home state of Delaware, and Mr. Farrell be allowed to testify via live two-way video from a safe location in his home state of Georgia. One third-party witness has already been approved to testify in this manner, over Defendant's Confrontation Clause objection. *See* Minute Entry (Feb. 19, 2021) (granting non-party's motion to offer trial testimony by video). While, for the reasons articulated in Section II, this option remains an inappropriate burden for Mr. Farrell and Ms. Stack, it would be less intrusive and risky than requiring testimony in New York.

---

[9] Notwithstanding this inconvenience and burden, should the Court deny the motion to quash, the Court should permit Mr. Farrell and Ms. Stack to testify by video, for the reasons outlined in Section III.

## **CONCLUSION**

For the foregoing reasons, Defendant's Subpoenas to Mr. Farrell and Ms. Stack should be quashed or, in the alternative, modified to allow for video testimony.

Dated: February 25, 2021              Respectfully submitted,

 /s/ Justin Goodyear
Justin Goodyear
WILMER CUTLER PICKERING HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
Tel:  (212) 230-8800
Fax:  (212) 230-8888
Justin.Goodyear@wilmerhale.com


Michael J. Leotta
Brian C. Smith
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel:  (202) 663-6000
Fax:  (202) 663-6363
Michael.Leotta@wilmerhale.com
Brian.Smith@wilmerhale.com

*Attorneys for Non-Parties Bank of America, N.A., Michael Farrell, and Rosemary Stack*