```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :
                                    :
                                    :  20-cr-188 (JSR)
        -v-                         :
                                    :  OPINION
HAMID AKHAVAN & RUBEN WEIGAND,      :
                                    :
        Defendants.                 :
                                    :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

From March 1 through March 24, 2021, this Court sat for a jury trial that culminated in the conviction of both defendants on the sole charge, conspiracy to commit bank fraud. The Court took extraordinary steps to facilitate public access to this trial, despite the pandemic. This opinion concerns one of those steps: permitting members of the press to view trial exhibits remotely.

During the trial, Matthew Russell Lee, a reporter for Inner City Press, emailed a letter to Chambers requesting access to (1) the unredacted version of a letter from the Government to the Court, which had been filed on the docket in redacted form during trial, and (2) all trial exhibits. Following expedited briefing, the Court granted the reporter's request by bottom-line Order dated March 15, 2021. See ECF No. 232. This Opinion explains the reasons for that Order.

LEGAL STANDARDS

The reporter's request implicates two rights, related but distinct.

A. <u>Common Law Right of Access to Judicial Documents</u>

First, there is a "common law right of public access to judicial documents [] firmly rooted in our nation's history." <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts, although independent--indeed, particularly because they are independent--to have a measure of accountability and for the public to have confidence in the administration of justice." <u>Id.</u>

Adjudicating a claim regarding the common law right of public access is a three-step process. "[A] court must first conclude [whether] the documents at issue are indeed 'judicial documents.'" <u>Id.</u> at 119-20. A filing is a judicial document if and only if "the item filed [is] relevant to the performance of the judicial function and useful in the judicial process." <u>Id.</u> at 120. "[A] common law presumption of access attaches" to judicial documents. <u>Id.</u>

The second step is to "determine the weight of that presumption," by looking to "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." <u>Id.</u> On one end of the "continuum" are "matters that directly affect an

2

adjudication," and on the other are "matters that come within a court's purview solely to [e]nsure their irrelevance." Id.

The final step is to "balance competing considerations against [the presumption of public access]." Id. at 120. Competing considerations "include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Id.

B. Qualified First Amendment Right of Attendance and Access

Second, there is a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004). To assess whether members of the public have a qualified First Amendment right to attend a proceeding or access a document, courts in this Circuit ask whether the type of exhibit or proceeding at issue "ha[s] historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." Id. (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8). When a movant seeks access to evidence, courts in this Circuit also ask whether it is "derived from or [is] a necessary corollary of the capacity to attend the relevant proceedings." Id. at 93.

If the public has a qualified First Amendment right of access, then the Court may only seal the relevant proceeding or evidence "if specific, on the record findings are made demonstrating that

3

closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 121 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)) (internal quotation marks omitted); accord United States v. Aref, 533 F.3d 72, 81-82 (2d Cir. 2008). For example, "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons," because "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." Lugosch, 435 F.3d at 121 (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982)).

## ANALYSIS

As noted, the reporter requested access to a letter from the Government to the Court filed with redactions at ECF No. 224. He also requested access to all exhibits received in evidence at trial.[1]

I. Government Letter, ECF No. 224

First, the reporter sought to access an unredacted copy of a letter from the Government to the Court filed on March 8 in opposition to a letter from the defense to the Court filed the

---

[1] In addition, the reporter requested access to an exhibit attached to the Government's motions in limine. See ECF No. 170, Exhibit B. That document was ultimately received in evidence at trial, so this Opinion considers that request in tandem with the request for other trial exhibits.

4

previous day. That defense letter, in turn, sought relief for the Government's alleged mishandling of electronic data belonging to cooperating witness Oliver Hargreaves.

No one disputes that the Government's letter is a "judicial document" to which a common law right of public access attaches. The Court considered the letter in connection with the defendants' request for relief relating to Hargreaves's electronic data, so the letter was "relevant to the performance of the judicial function and useful in the judicial process," and, therefore, "a common-law presumption of access attaches." Lugosch, 435 F.3d at 120.

The weight of that presumption of access is moderate. This was not a document that bore on the Court's adjudication of a dispositive motion, but neither was it a document that the Court examined solely to determine its relevance or admissibility. It was a legal brief on an evidentiary issue, so the Court finds that the common law presumption of access has moderate weight.

The Court balanced this presumption against the contrary interests articulated by the parties. The Government opposed the reporter's request for the unredacted letter because it "contains . . . references to 3500 material that is covered by the Court's order governing 3500 material." Gov't Opp. to Reporter Ltr., ECF No. 225 ("Gov't Opp."). The defense agreed. Def'ts' Ltr. Opp. to Reporter Ltr., ECF No. 233 ("Def. Opp."), at 2.

To be sure, the letter in question references 3500 materials, and 3500 materials are covered by the Court's protective order. But the protective order only limits disclosure of 3500 materials by the defendants, their attorneys, and people to whom the defendants disclose the materials. See Protective Order, ECF No. 118. The protective order does not limit the Government's ability to cite its own 3500 materials, including in letters to the Court. When the Government chose to do so, it ran the risk that the public might have a right to access such information to fully understand the basis for the Court's ruling. "[T]hose monitoring the federal courts," Lugosch, 435 F.3d at 120, are not prohibited from viewing information the Court considered in reaching an evidentiary decision merely because that information was also contained in 3500 materials.

The Government also argued, vaguely, that the redacted portions of its letter include "references to proactive cooperation." Gov't Opp. In appropriate instances, protecting the integrity of law enforcement activities and ensuring the safety of cooperating witnesses often will undoubtedly warrant redactions. Here, however, the Government's asserted interest was insufficient because the redacted portions reveal little beyond what Hargreaves had already testified to in open court. See Trial Tr. 650-651 (Hargreaves testifying that he "cooperate[d] with U.S. law enforcement authorities," both in connection with "the

6

extortion scheme that led to [his] arrest" and the Eaze.com scheme). The redacted portions go beyond Hargreaves's testimony by characterizing Hargreaves's cooperation in other investigations as "proactive" and by revealing that his cooperation involved the use of a cell phone. But the Government's cursory opposition did not demonstrate that these minor revelations posed a risk either to the witness or to an investigation.

For these reasons, the parties' interests in redaction did not outweigh the common law presumption of public access, so the Court ordered the Government to file an unredacted copy of the letter on the docket (which it has now done, see ECF No. 234).

II. Trial Exhibits

The reporter also requested access to the exhibits that were received in evidence at trial.[2]

Recent case law on the common law right of access to judicial documents is generally couched in terms of ensuring public oversight of the judge's function. (This is likely because jury trials have grown lamentably rare.) However, the public has a similar right to access documents presented to the jury, and in criminal cases, this right stems from not only the common law, but

---

[2] The reporter's letter was imprecise and could have been construed to request only exhibits offered by the Government, but, to avoid piecemeal litigation and in an exercise of its inherent authority to ensure public access, the Court construed the letter to seek all exhibits received in evidence, whether offered by the Government or the defense.

also the Sixth Amendment guarantee of a "public trial." Indeed, the Second Circuit has explained that "the public has an especially strong right of access to evidence introduced in trials." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) (internal quotation marks and citation omitted). Thus, here, the trial exhibits are judicial documents to which an "especially strong" common law presumption of access applies.

Furthermore, the public holds a qualified First Amendment right of access to these documents because they are "derived from . . . the relevant proceedings" and, for some remote participants, were "a necessary corollary of the capacity to attend" the trial. Hartford Courant, 380 F.3d at 93.

To explain the latter point, the Court offers a few observations regarding the COVID-19 protocols that the Southern District of New York has employed throughout the pandemic and that were carefully observed during this trial. Under the devoted leadership of Chief Judge Colleen McMahon and with the never-failing assistance of the Court's splendid employees, the District restricted courthouse entry, excluding until proven safe those who exhibited COVID-related symptoms, had engaged in interstate or international travel, or who had close contact with infectious or potentially infectious people. For example, lawyers and witnesses who live outside of New York and its adjacent states had to receive

8

two negative SARS-CoV-2 test results, one before traveling to New York and one several days after arriving.[3]

Given these entry restrictions, some members of the public would have been unable to enter the courthouse to view this trial. Therefore, the Court took several extraordinary steps to facilitate remote access to the courtroom. A second "overflow" courtroom offered a video feed of the proceedings, in case the number of attendees exceeded the number of socially distanced seats in the courtroom. Opening and closing arguments were transmitted to the Press Room at 500 Pearl Street. And a telephonic dial-in number was posted on the docket, allowing anyone to listen in.[4]

---

[3] In addition to entry restrictions, the District adopted protocols to protect those inside the courthouse. During trial, everyone was required to wear two masks or a single N95 or KN95 mask, except witnesses and examining attorneys, who were only permitted to remove their masks while within plexiglass boxes containing air filtration systems. The layouts of the courtroom and jury deliberation room were carefully designed -- based on the guidance of a public health expert and on-site study, including smoke tests -- to ensure sufficient social distancing. The Court is happy to report that these safety measures worked. In a global pandemic, no entry protocol can eliminate the possibility that someone enters the building while infectious; indeed, during the trial, the court excused one juror who tested positive for COVID-19 and another who might have been exposed to an infected family member. But all jurors were tested for COVID-19 after the juror tested positive, and the remaining jurors all tested negative.

[4] The Court does not mean to suggest that these extraordinary efforts to facilitate remote access were necessary under the Public Trial Clause or otherwise. Rather, the Court exceeded the constitutional floor to promote the principle that the public should have ready access to the courts, even during a pandemic. See Presley v. Georgia, 558 U.S. 209, 215 (2010) ("Trial courts are obligated to take every reasonable measure to accommodate

For those who would have been excluded at the courthouse door due to travel, COVID-19 symptoms, or the like, their only way to access the testimony of this trial during the pandemic was by telephone. Permitting them to access trial exhibits electronically was, therefore, "a necessary corollary of the[ir] capacity to attend" the trial. Hartford Courant, 380 F.3d at 93. Accordingly, members of the public had a qualified First Amendment right of access to the trial exhibits.

Against the "especially strong" common law presumption of access and the qualified First Amendment right of access, the Court weighed competing considerations offered by the parties. The defense opposed the reporter's request in its entirety, arguing that the reporter was entitled only to the same access that courtroom attendees had: to attend trial and view the exhibits as they were displayed on-screen in the courtroom. Given the circumstances presented by the pandemic, as previously described, the Court disagreed. Indeed, the defense's argument would be dubious even absent the pandemic. The Second Circuit has opined that "there is a presumption in favor of public inspection and copying of any item entered into evidence at a public session of a trial." In re Application of Nat'l Broad. Co., Inc., 635 F.2d 945, 952 (2d Cir. 1980) (hereinafter "NBC"). When an item is

---

public attendance at criminal trials.").

received in evidence, it "bec[omes] known to the members of the public, including representatives of the press, through their attendance at a public session of court"; therefore, "it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction." Id. The NBC panel permitted television networks to copy and broadcast a videotape received in evidence at trial. This Court, likewise, permitted those attending the trial remotely to view the trial exhibits remotely.

The Government did not oppose the reporter's request for access to trial exhibits, but it did ask that it be permitted to redact sensitive personally identifying information and bank records before sharing exhibits with the press. On reply, the reporter did not object to this proposal, which the Court adopted in its bottom-line Order. The Court found that the interest of the affected individuals and entities in preventing public access to their sensitive personally identifying information and bank records outweighed the especially strong common law presumption of access, and the Court found that redaction of such information "[wa]s essential to preserve higher values and [wa]s narrowly tailored to serve th[ose] interest[s]." Lugosch, 435 F.3d at 121

11

(quoting <u>In re New York Times Co.</u>, 828 F.2d 110, 116 (2d Cir. 1987)) (internal quotation marks omitted).[5]

    For the foregoing reasons, the Court issued a bottom-line Order dated March 15, 2021, providing:

1. The Government must file an unredacted version of ECF No. 224 on the docket by 11:59 p.m. today [<u>i.e.</u>, March 15].

2. When an exhibit is received into evidence at trial in this action, the offering party must make the document accessible to the public and the press by no later than 11:59 p.m. the following day.[6] If the version of the document received into evidence contains redactions, then the version made accessible to the public shall contain the same redactions.

3. Before making an exhibit accessible to the public, the offering party must confer with the other parties regarding any further redactions the parties would like to make, beyond those redactions contained in the version received in evidence. Such further redactions should be clearly distinguishable from the redactions present on the version

---

[5] The Court also permitted the parties to retain redactions that were already present on the trial exhibit, as received in evidence at trial, regardless of the bases for those redactions, because the "judicial documents" to which the reporter sought access were the trial exhibits in the form received in evidence.

[6] The offering party may do this by any reasonable means, <u>e.g.</u>, by posting the exhibits on a publicly accessible website for a reasonable duration.

received in evidence, and the basis for each such further redaction should be stated on the face of the document (e.g., "PII" for "sensitive personally identifying information").

4. All exhibits already in evidence must be made accessible to the public in accordance with the procedure stated immediately above by no later than 11:59 p.m. tomorrow [i.e., March 16].

Counsel for all parties subsequently informed the Court that they had complied with this Order.

Dated:   New York, NY
        April 1, 2021

                                          JED S. RAKOFF, U.S.D.J.