2618

L3NHWEI1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        20-CR-188 (JSR)

5   RUBEN WEIGAND and
    HAMID AKHAVAN,
6
               Defendants.              Trial
7
    ------------------------------x
8
                                        New York, N.Y.
9
                                        March 23, 2021
10                                      9:45 a.m.

11

    Before:
12
                     HON. JED S. RAKOFF,
13
                                        District Judge
14

15                        APPEARANCES

16  AUDREY STRAUSS
         United States Attorney for the
17       Southern District of New York
    BY:  NICHOLAS FOLLY
18       TARA MARIE LA MORTE
         EMILY S. DEININGER
19       Assistant United States Attorneys

20  DECHERT LLP
         Attorneys for Defendant Weigand
21  BY:  MICHAEL J. GILBERT
         SHRIRAM HARID
22       ANDREW J. LEVANDER
         STEPHEN PELLECHI
23       -and-
    MICHAEL H. ARTAN
24       Attorney for Defendant Weigand

25

L3NHWEI1

1          (Trial resumed; jury not present)

2          THE COURT:  So I reviewed the transcript on the point

3     that was raised late yesterday, and I do think at one place

4     Mr. Tayback did misstate the law.  He says, this is at

5     page 2581 of the transcript:  "Again, however, that's a little

6     besides the point."  He was referring previously to his

7     argument that the banks don't care, but then he continues.

8          "Again, however, that's a little beside the point

9     because the question for bank fraud isn't what the banks do

10    after the fact; remember, it's what they do to authorize a

11    transaction, and the answer to that is nothing.  It goes back

12    to the earliest quote I gave you, which is Mr. Steinbach, if

13    I'm Mr. Steinbach, and I've got the money, I can buy what I

14    want."

15         So that's clearly not the law, and it's not the law

16    for bank fraud, but it's even less the law for conspiracy to

17    commit bank fraud, which is the only charge here.  So I do

18    think it needs to be briefly corrected in the way that I

19    briefly corrected the government's misstatement on their

20    opening summation.

21         MR. TAYBACK:  Your Honor, may I be heard briefly?

22         THE COURT:  Yes, of course.

23         MR. TAYBACK:  Your Honor, I would just ask the Court

24    to look at the language from the Court's instructions at

25    page 17.  I have a hard copy if it's easier to hand it to you.

L3NHWEI1

1          THE COURT:  From my instructions, the instructions I'm

2     about to give?

3          MR. TAYBACK:  Yes.  And just point to the language --

4          THE COURT:  Just tell me the page and number.

5          MR. TAYBACK:  Sure.  It's page 17.  It's jury

6     instruction 12.  It's page 17 so it's the second page of that

7     instruction, and then I can just read the portion that I

8     believe I was referencing there.

9          THE COURT:  So page 17.  Where on page 17?

10         MR. TAYBACK:  If you go to the top, and then it would

11    be, like, the clause that starts "But only" at the very first

12    sentence, "But only that the federal" --

13         THE COURT:  But the federally insured bank or credit

14    union was induced to authorize the transactions by means of the

15    misrepresentation, and indeed you were the one who suggested

16    the word "authorize" there when we had the charging conference.

17         MR. TAYBACK:  Actually, it was the codefendant's

18    counsel.

19         THE COURT:  OK.  But in any event, I didn't know that

20    you were suggesting or even hinting or imagining that it was

21    the law that that meant that because they didn't check it right

22    then and there, it didn't matter, even though, as government

23    counsel pointed out on his summation, if you find out after the

24    fact that there had been a thousand charges that you have

25    authorized wrongly because you were deceived, you've been

2621

L3NHWEI1

1    defrauded just as much as if you learned it at the very moment

2    of authorization.  Now, if you prefer, I'll give my curative

3    instruction when I get to that part in the charge, but I would

4    have thought you would prefer I just give it briefly at the

5    outset today.

6             MR. TAYBACK:  Actually, your Honor, what my -- I mean,

7    obviously, I would object to further instruction, but beyond

8    that, to the extent your Honor's going to give a curative

9    instruction, the government did propose one, and I think it

10   could be literally added to this jury instruction and I think

11   that would address the issue.

12            THE COURT:  Well, it is now clear from what I regard

13   as a misstatement of law in your summation that I need to

14   clarify for the jury exactly what the law is.  So do you prefer

15   me to do it in a brief instruction when they first come in, or

16   do you prefer me to do it when we get to this point in the

17   charge?

18            MR. TAYBACK:  May I just confer with my codefendant's

19   counsel for a second?

20            THE COURT:  Sure.

21            (Counsel confer)

22            MR. TAYBACK:  Your Honor, I would prefer it be done at

23   the time of the jury instructions when the jury instructions

24   are read.

25            THE COURT:  At the time we get to that point in the

L3NHWEI1

1   jury instructions?

2           MR. TAYBACK:  Yes.

3           THE COURT:  OK.  So now let's look at what the

4   government has suggested.  "It is not necessary that a

5   misrepresentation made in connection with a particular

6   transaction be reasonably" --

7           MS. LA MORTE:  I was typing fast.

8           THE COURT:  -- "reasonably likely to affect the

9   decision to authorize that particular transaction.  In this

10  case the government has charged an ongoing scheme to defraud

11  which involves engaging in a pattern or a course of deceptive

12  conduct.  It is sufficient for a federal bank fraud if there

13  was a misrepresentation as to a material fact that a reasonable

14  banker would have been reasonably likely to consider in making

15  a decision authorizing any bank transaction involving the

16  transfer of money or property that took place at any point

17  during the course of this scheme."

18          That seems awfully wordy to me.

19          MS. LA MORTE:  It is wordy.  We were trying to sort of

20  parrot the language in the instruction already, but it could be

21  decluttered a little bit, I think.

22          THE COURT:  So hold on a minute.  I'm getting a

23  critical note from my boss.

24          The jury is here.  How about this:  "It is not

25  necessary that a misrepresentation made in connection with a

1  particular transaction be reasonably likely to affect a

2  decision to authorize that particular transaction at that time.

3  The government has charged an ongoing scheme to defraud

4  involving a course of misrepresentations over time."

5          How about that?

6          MS. LA MORTE:  That's fine, your Honor.

7          THE COURT:  All right.  Let's bring in the jury.

8          MS. DEININGER:  Your Honor, will that jury instruction

9  be added to the instructions the jurors are going to receive?

10         THE COURT:  No, we don't have time to do that, but

11  I'll make sure they understand that.

12         (Jury present)

13         THE COURT:  Please be seated.

14         So good morning, ladies and gentlemen.  And once again

15  you are a model of promptness, and it's very much appreciated.

16         You all have a copy now of my instructions of law?

17  OK.  Very good.  I'm going to go over here and read them with

18  you, but you can keep them with you as well throughout your

19  deliberations, so that I get to take off my mask here.

20         And by the way, you know I've been criticizing the

21  male members of this jury for not wearing more exciting

22  clothing.  You notice I'm just dressed in black, so I have no

23  calling to complain, but in your honor I wore a very sharp tie

24  today.

25         All right.  Let's get serious.  If you turn to the

table of contents, you'll see that the instructions are divided

into three parts.  The first part is just general instructions

about how you and every other jury goes about their business.

The second group are instructions about the particular charge

in this case, the single charge of conspiracy to commit bank

fraud, and the third section is some concluding instructions

about how you fill out your verdict form and things like that.

So let's turn to page 3 where we begin with the first

instruction.

        We are now approaching the most important part of this

case: your deliberations.  You have heard all the evidence in

the case, as well as the final arguments of the lawyers for the

parties.  Before you retire to deliberate, it is my duty to

instruct you as to the law that will govern your deliberations.

These are the final and binding instructions, which entirely

replace the preliminary instructions I gave you earlier.  As I

told you at the start of this case and as you agreed, it is

your duty to accept my instructions of law and apply them to

the facts as you determine them.

        Regardless of any opinion that you may have as to what

the law may be or ought to be, it is your sworn duty to follow

the law as I give it to you.  Also, if any attorney or other

person has stated a legal principle different from any that I

state to you in my instructions, it is my instructions that you

must follow.

L3NHWEI1                    Charge

1          Because my instructions cover many points, I have

2     provided each of you with a copy of them, not only so that you

3     can follow them as I read them to you now but also so that you

4     can have them with you for reference throughout your

5     deliberations.  In listening to them now and reviewing them

6     later, you should not single out any particular instruction as

7     alone stating the law, but you should instead consider my

8     instructions as a whole.

9          Your duty is to decide the fact issues in the case and

10     arrive, if you can, at a verdict.  You, the members of the

11     jury, are the sole and exclusive judges of the facts.  You pass

12     upon the weight of the evidence; you determine the credibility

13     of the witnesses; you resolve such conflicts as there may be in

14     the testimony; and you draw whatever reasonable inferences you

15     decide to draw from the facts as determine them.

16          In determining the facts, you must rely upon your own

17     recollection of the evidence.  To aid your recollection, we

18     will send you at the start of your deliberations a thumb drive

19     containing all of the exhibits and an index of the exhibits.

20     If you need to review particular items of testimony, we will

21     also arrange to provide them to you in transcript, electronic,

22     or readback form.

23          Please remember that none of what the lawyers have

24     said in their opening statements, in their closing arguments,

25     in their objections, or in their questions is evidence.  Nor is

L3NHWEI1                    Charge

anything I may have said evidence.  The evidence before you

consists of just three things: the testimony given by witnesses

that was received in evidence, the exhibits that were received

in evidence, and the stipulations of the parties that were

received in evidence.

Testimony consists of the answers that were given by

the witnesses to the questions that were permitted.  Please

remember that questions, although they may provide the context

for answers, are not themselves answers -- not themselves

evidence.  Only answers are evidence, and you should therefore

disregard any question to which I sustained an objection.

Also, you may not consider any answer I directed you to

disregard or that I directed be stricken from the record.

Likewise, you may not consider anything you heard about the

contents of any exhibit that was not received in evidence.

Furthermore, you should be careful not to speculate

about matters not in evidence.  For example, there is no legal

requirement that the government prove its case through a

particular witness or by use of a particular law enforcement

technique.  Nor should you speculate about why one or another

person whose name may have figured in the evidence is not part

of this trial or what his or her situation may be.  Your focus

should be entirely on assessing the evidence that was presented

here for your consideration.

It is the duty of the attorney for each side of the

L3NHWEI1                    Charge

1    case to object when the other side offers testimony or other

2    evidence that the attorney believes is not properly admissible.

3    Counsel also have the right and duty to ask the Court to make

4    rulings of law and to request conferences at the sidebar, out

5    of the hearing of the jury.  All such questions of law must be

6    decided by me.  You should not show any prejudice against any

7    attorney or party because the attorney objected to the

8    admissibility of evidence, asked for a conference outside the

9    hearing of the jury, or asked me for a ruling on the law.

10           I also ask you to draw no inference from my rulings or

11   from the fact that on occasion I asked questions of certain

12   witnesses.  My rulings were no more than applications of the

13   law, and my questions were only intended for clarification or

14   to expedite matters.  You are to expressly understand that I

15   have no opinion as to the verdict you should render in this

16   case.

17           You are to perform your duty of finding the facts

18   without bias or prejudice as to any party.  You are to perform

19   your final duty in an attitude of complete fairness and

20   impartiality.  You are not to be swayed by rhetoric or

21   emotional appeals.

22           The fact that the prosecution is brought in the name

23   of the United States of America entitles the government to no

24   greater consideration than that accorded any other party.  By

25   the same token, it is entitled to no less consideration.  All

parties, whether the government or individuals, stand as equals at the bar of justice.

Please also be aware that the question of possible punishment is the province of the judge, not the jury, and it should therefore not enter into or influence your deliberations in any way.  Your duty is to weigh the evidence and not be affected by extraneous considerations.

It must be clear to you that if you were to let bias or prejudice or sympathy or any other irrelevant consideration interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict.  So do not be guided by anything except clear thinking and calm analysis of the evidence.

The defendants here, Hamid (or Ray) Akhavan, and Ruben Weigand are each charged with a federal crime about which I will instruct you shortly.  Please bear in mind that the charge, or "count" as it is called, is not itself evidence of anything.  Both of the defendants have pleaded not guilty, and you must consider the evidence against each of them individually.  To prevail against a given defendant, the government must prove each essential element of the charge beyond a reasonable doubt as to that defendant.  If the government succeeds in meeting this burden, your verdict should be guilty as to that defendant; if it fails, your verdict must be not guilty on that charge.  This burden never shifts to any

L3NHWEI1                         Charge

1    defendant for the simple reason that the law presumes a

2    defendant to be innocent and never requires -- never imposes

3    upon a defendant in a criminal case the burden or duty of

4    calling any witness or producing any evidence.

5            In other words, each defendant starts with a clean

6    slate and is presumed innocent until such time, if ever, that

7    you as a jury are satisfied that the government has proved that

8    he is guilty of the charge beyond a reasonable doubt.

9            Since, to convict a defendant of a given charge, the

10   government is required to prove that charge beyond a reasonable

11   doubt, the question then is, What is a reasonable doubt?  The

12   words almost define themselves.  It is a doubt based upon

13   reason.  It is a doubt that a reasonable person has after

14   carefully weighing all of the evidence.  It is a doubt that

15   would cause a reasonable person to hesitate to act in a matter

16   of importance in his or her personal life.  Proof beyond a

17   reasonable doubt must therefore be proof of a convincing

18   character that a reasonable person would not hesitate to rely

19   on in making an important decision.

20           A reasonable doubt is not caprice or whim.  It is not

21   speculation or suspicion.  It is not an excuse to avoid the

22   performance of an unpleasant duty.  The law does not require

23   the government prove guilt beyond all possible doubt.  Proof

24   beyond a reasonable doubt is sufficient to convict.

25           If, after fair and impartial consideration of the

L3NHWEI1                    Charge

1    evidence, you have a reasonable doubt as to a given defendant's

2    guilt with respect to the charge against him, you must find

3    that defendant not guilty.  On the other hand, if, after fair

4    and impartial consideration of all the evidence, you are

5    satisfied beyond a reasonable doubt of a given defendant's

6    guilt with respect to the charge against him, you should not

7    hesitate to find that defendant guilty.

8              In deciding whether the government has met its burden

9    of proof, you may consider both direct evidence and

10   circumstantial evidence.

11             Direct evidence is evidence that proves a fact

12   directly.  For example, where a witness testifies as to what he

13   or she saw, heard, or observed, that is called direct evidence.

14             Circumstantial evidence is evidence that tends to

15   prove a fact by proof of other facts.  To give a simple

16   example, suppose that when you came into the courthouse today

17   the sun was shining, it was a nice day, but the courtroom

18   blinds were drawn and you could not look outside.  Later, as

19   you were sitting here, someone walked in with a dripping wet

20   umbrella, and soon after somebody else walked in with a

21   dripping wet raincoat.  Now, on our assumed facts you cannot

22   look outside of the courtroom and you cannot see whether it is

23   raining, so you have no direct evidence of that fact.  But on

24   the combination of the facts about the umbrella and the

25   raincoat, it would be reasonable for you to infer that it had

L3NHWEI1                         Charge

1    begun raining.

2              That's all there is to circumstantial evidence.  Using

3    your reason and experience, you infer from established facts

4    the existence or the nonexistence of some other fact.  Please

5    note, however, that it is not a matter of speculation or guess;

6    it is a matter of logical inference.

7              The law makes no distinction between direct and

8    circumstantial evidence.  Circumstantial evidence is of no less

9    value than direct evidence, and you may consider either or both

10   and may give them such weight as you conclude is warranted.

11             It must be clear to you by now that counsel for the

12   government and counsel for the defendants are asking you to

13   draw very different conclusions about various factual issues in

14   the case.  Deciding these issues will involve making judgments

15   about the testimony of the witnesses you have listened to and

16   observed.  In making these judgments, you should carefully

17   scrutinize all the testimony of each witness, the circumstances

18   under which each witness testified, and any other matter in

19   evidence that may help you decide the truth and importance of

20   each witness' testimony.

21             Your decision to believe or to not believe a witness

22   may depend on how that witness impressed you.  How did the

23   witness appear?  Was the witness candid, frank, and forthright,

24   or did the witness seem to be evasive or suspect on some level?

25   How did the way the witness testified on direct examination

L3NHWEI1                    Charge

compare with how the witness testified on cross-examination?
Was the witness consistent or contradictory?  Did the witness
appear to know what he or she was talking about?  Did the
witness strike you as someone who was trying to report his or
her knowledge accurately?  These are examples of the kinds of
commonsense questions you should ask yourselves in deciding
whether a witness is or is not truthful.

         How much you choose to believe a witness may also be
influenced by the witness' bias.  Does the witness have a
relationship with the government or a defendant that may affect
how he or she testifies?  Does the witness have some incentive,
loyalty, or motive that might cause him or her to shade the
truth?  Does the witness have some bias, prejudice, or
hostility that may cause the witness to give you something
other than a completely accurate account of the facts he or she
testified?

         In this regard, you have heard testimony from
witnesses who admitted to being involved in some of the alleged
criminal activity with which the defendants are charged and
testified either pursuant to a cooperation agreement with the
government or pursuant to a grant of immunity.  Specifically,
Michael Tassone, Darcy Cozzetto, and John Wang each testified
pursuant to a grant of immunity, and Oliver Hargreaves and
James Patterson each testified pursuant to a cooperation
agreement with the government.  The law permits the use of

L3NHWEI1                    Charge

1    testimony from some such witnesses.  Indeed, such testimony, if

2    found truthful by you, may be sufficient in itself to warrant

3    conviction of a given defendant if it convinces you of that

4    defendant's guilt beyond a reasonable doubt.  However, the law

5    requires that the testimony and motives of each such witness be

6    scrutinized with particular care and caution.  After carefully

7    scrutinizing the testimony of a witness who is testifying

8    pursuant to either an immunity order or a cooperation agreement

9    and taking account of the special features of such agreements,

10   you may give the testimony as little or as much weight as you

11   deem appropriate.

12          As to all witnesses, you should also consider whether

13   a witness had an opportunity to observe the facts he or she

14   testified about and whether the witness' recollection of the

15   facts stands up in light of the other evidence in the case.

16          In other words, what you must try to do in deciding

17   credibility is to size up a person just as you would in any

18   important matter where you were trying to decide if a person is

19   truthful, straightforward, and accurate in his or her

20   recollection.

21          The defendants did not testify in this case.  Under

22   our Constitution, a defendant has no obligation to testify or

23   to present any evidence because it is the government's burden

24   to prove a defendant guilty beyond a reasonable doubt.  A

25   defendant is never required to prove that he or she is

L3NHWEI1                    Charge

1    innocent.

2         Accordingly, you must not attach any significance to

3    the fact that the defendants did not testify.  No adverse

4    inference against either of the defendants may be drawn by you

5    because that defendant did not take the witness stand, and you

6    may not consider such silence against either of the defendants

7    in any way in your deliberations in the jury room.

8         With these preliminary instructions in mind, let us

9    turn to the specific charge against the defendants, Ray Akhavan

10   and Ruben Weigand.  This charge was originally set forth in

11   what is called an indictment, which is simply a charging

12   instrument.  It is not itself evidence, so it will not be

13   presented to you.  The indictment in this case contains one

14   charge or count.  Specifically, the sole count of the

15   indictment charges that at some time during the years 2016

16   through 2019, the defendants conspired -- that is, agreed with

17   each other and/or with one or more other persons -- to commit

18   federal bank fraud.

19        I will instruct you in a moment concerning -- there's

20   a typo there -- concerning the two elements of that charge.  So

21   if you have a pen, correct the word "three" there to the word

22   "two."  It will be clear from the rest of the instructions.

23        I will instruct you in a moment concerning the two

24   elements of that charge.  At the outset, however, let me

25   instruct you that before either defendant can be convicted of

1    the charge, the government must prove every essential element

2    of the charge against that particular defendant beyond a

3    reasonable doubt.  In your deliberations and in reaching your

4    verdict, you must consider each defendant separately and

5    determine whether the government has carried its burden of

6    proof with respect to each element of the charge as to the

7    defendant you are considering.

8           In order for a given defendant to be guilty of the

9    charge of conspiracy to commit federal bank fraud, the

10   government must prove beyond a reasonable doubt each of the

11   following two elements:

12          First, the existence of a conspiracy to commit federal

13   bank fraud at any time during the charged time period of 2016

14   through 2019; and

15          Second, that the defendant you are considering

16   knowingly, willfully, and with specific intent to defraud

17   joined and participated in this conspiracy.

18          I will now instruct you regarding each of these two

19   elements.

20          Starting with the first element, what is a conspiracy?

21   A conspiracy is an agreement or an understanding of two or more

22   persons to accomplish by concerted action one or more unlawful

23   purposes, known as the objects of the conspiracy.  Here, the

24   object of the alleged conspiracy was federal bank fraud.

25          To prove the charge in this case, the government need

L3NHWEI1                    Charge

1    not prove that a defendant actually committed federal bank

2    fraud.  Rather, to establish the first element, the government

3    must only prove beyond a reasonable doubt that two or more

4    persons reached an agreement or understanding to commit federal

5    bank fraud.  But in order to determine whether there was such a

6    conspiracy, you need to know the elements of federal bank

7    fraud.

8              The elements of federal bank fraud, as applicable

9    here, are three:

10             First, that a person devised a scheme to defraud a

11   federally insured bank or credit union by means of

12   misrepresentations.

13             Second, that one or more of the misrepresentations was

14   material.

15             Third, that the perpetrator devised the scheme

16   knowingly, willfully, and with a specific intent to defraud.

17             Let me now say a brief word about each of these

18   elements of the bank fraud.

19             As to the first element, the scheme to defraud a bank

20   or credit union means a scheme to use one or more

21   misrepresentations to obtain money or property from a bank or

22   credit union.  Here, the alleged bank fraud was a scheme to

23   deceive banks into effectuating credit and debit card purchases

24   of marijuana by disguising those purchases as being for other

25   kinds of goods.  A federally insured bank is one that is

L3NHWEI1                    Charge

insured by the Federal Deposit Insurance Corporation, and a
federally insured credit union is one that is insured by the
National Credit Union Share Insurance Fund.  Banks and credit
unions outside the United States are not federally insured, nor
are credit card companies.  So the scheme to be a bank fraud
must impact a U.S.-based federally insured bank or credit
union.

        However, the perpetrator of federal bank fraud is not
required to personally know that a bank or credit union was
federally insured.  Also, the government does not need to prove
that the scheme succeeded, only that it was planned.  Also, the
government does not need to prove that a bank suffered any
financial loss.  Further, the government does not need to prove
that the misrepresentations were made directly to a federally
insured bank or credit union, but only that the federally
insured bank or credit union was induced to authorize the
transactions by means of the misrepresentations.

        Let me pause there because I think there may have been
some misunderstanding in some of the statements that were made
in one of the defense counsel's summations on this point.  So
let me instruct you.  It is not necessary that a
misrepresentation made in connection with a particular
transaction be reasonably likely to affect the decision to
authorize that particular transaction at that particular time.
Rather, what is charged here is an ongoing scheme to defraud,

L3NHWEI1                        Charge

including a course of misrepresentations over a period of time

through a pattern or a course of deceptive conduct.  So you

need to look at the whole picture.

          Going back to the instructions on page 17.

          As to the second element, a material fact, as

applicable here, is a fact that a reasonable banker would be

reasonably likely to consider in making a decision authorizing

a bank transaction involving the transfer of money or property.

For example, if a perpetrator made misrepresentations designed

to make marijuana purchases look like the purchases of other

goods, the misrepresentations would be material if, had the

banker known that the purchasers -- that the purchases were

disguised and really were for marijuana, such knowledge would

be reasonably likely to influence a reasonable banker in

deciding whether to authorize the purchases.  Keep in mind that

the test of materiality is what a reasonable banker would think

and do.  The government does not need to prove that any bank

actually relied on a misrepresentation.

          As to the third element, "knowingly" means to act

consciously and voluntarily rather than by mistake or accident

or mere inadvertence.  "Willfully" means to act deliberately

and with a bad purpose rather than innocently.  A "specific

intent to defraud" means an intent to use misrepresentations to

obtain money or property from a federally insured bank,

directly or indirectly.

L3NHWEI1                        Charge

1          I've now instructed you regarding the elements of

2     federal bank fraud, the alleged object of the conspiracy.  But

3     please remember that the government is not required to prove

4     that any actual bank fraud was committed, but only that their

5     existed a conspiracy, the object of which was an agreement to

6     commit bank fraud.  Thus, if you find that the government has

7     proved beyond a reasonable doubt the existence of a conspiracy

8     to commit bank fraud during the relevant period, then you must

9     consider the second element of the charge of conspiracy,

10    namely, that the defendant you are considering intentionally

11    joined and participated in that conspiracy.  To prove this

12    element as to a given defendant, the government must prove

13    beyond a reasonable doubt that he entered into the

14    conspiracy -- that is, joined in the agreement to commit bank

15    fraud -- and did so knowingly, intentionally, and with the

16    specific intent to defraud, as I previously described those

17    terms to you.

18          Please note that it is not necessary that the

19    defendant you are considering be fully informed of all the

20    details of the conspiracy in order to justify an inference of

21    participation or his part.  Nor does defendant need to know the

22    full extent of the conspiracy or all of its participants.

23    Indeed, it is not necessary that a defendant know more than one

24    other member of the conspiracy.  Nor is it necessary that the

25    defendant actually receive any monetary or other benefit from

L3NHWEI1                     Charge

1    participating in the conspiracy.  Furthermore, the law does not

2    require that a given defendant join the conspiracy through a

3    written or verbal agreement.  A tacit agreement or

4    understanding is sufficient.

5         Nor does the law require that each conspirator have an

6    equal role in the conspiracy.  The defendant also need not have

7    joined the conspiracy at the outset.  The defendant may have

8    joined it at any time in its progress, and he will still be

9    held responsible for all that was done before he joined, as

10   well as all that was done during the conspiracy's existence

11   while the defendant was a member.

12        However, I want to caution you that the mere

13   association by one person with another person or group of

14   persons does not make that first person a member of the

15   conspiracy even when coupled with knowledge that the second

16   person or group of persons is taking part in a conspiracy.  In

17   other words, knowledge without participation is not sufficient.

18   Likewise, even if a defendant himself caused a

19   misrepresentation to be made but did so in good faith and

20   without an intent to defraud, he would not be guilty of this

21   conspiracy.  What is necessary is that the defendant you are

22   considering participated in the conspiracy with knowledge of

23   its unlawful object, namely, bank fraud, and with intent to aid

24   in the accomplishment of that object.

25        In short, in order to satisfy the second element of

L3NHWEI1                    Charge

1    the charged offense as to a given defendant, you must find

2    beyond a reasonable doubt the defendant you are considering,

3    with an understanding of the unlawful character of the charged

4    conspiracy, knowingly, intentionally, and with an intent to

5    defraud joined and participated in the conspiracy for the

6    purpose of committing bank fraud.

7            One last requirement.  Before either defendant can be

8    convicted, the government must also establish what is called

9    "venue," that is, that some act in furtherance of the

10   conspiracy occurred in the Southern District of New York.  The

11   Southern District of New York is the judicial district that

12   includes the Bronx and Manhattan, as well as Westchester,

13   Rockland, Putnam, Dutchess, Orange, and Sullivan Counties.

14   Venue is proven if any act in furtherance of the conspiracy

15   occurred in the Southern District of New York, regardless of

16   whether it was the act of either charged defendant or anyone

17   else.  Finally, on the issue of venue, and on this issue alone,

18   the government can meet its burden by a preponderance of the

19   evidence, that is, by showing that it was more likely than not

20   that an act in furtherance of the conspiracy occurred in the

21   Southern District of New York.

22           You will shortly retire to the jury room to begin your

23   deliberations.  As soon as you get to the jury room, please

24   select one of your number as the foreperson to preside over

25   your deliberations and to serve as your spokesperson if you

L3NHWEI1                    Charge

1    need to communicate with the Court.

2            You will be bringing with you into the jury room a

3    copy of my instructions of law and a verdict form on which to

4    record your verdict.  Let me show you the verdict form.  It's a

5    very simple one-page document.  It just asks as to each

6    defendant, do you find the defendant guilty or not guilty?

7            After you have filled out your verdict form, your

8    foreperson will sign it and date it and fold it up and put it

9    in this envelope very cleverly marked "verdict."  And that will

10   be sealed, and I will not open it until you're all back here in

11   the courtroom.  Then I will ask each one of you, after I read

12   the verdict, whether, in fact, that is your verdict.  And we go

13   through those technicalities to be absolutely sure we have your

14   verdict as you have decided.

15           OK.  Back to the instructions.

16           In addition, we will send into the jury room a thumb

17   drive with all the exhibits that were admitted into evidence

18   and an index to help you find what you need.  If you have any

19   trouble with the thumb drive, the world's resident expert is my

20   law clerk, Mr. Mandilk, who can send -- you can just send us a

21   note, and he'll come in and show you how to work it.

22           If you want any of the testimony provided, that can

23   also be done in either transcript, electronic, or readback

24   form.  But please remember that it is not always easy to locate

25   what you might want, so be as specific as you can be in

1    requesting portions of the testimony.  Any of your requests, in

2    fact, any communication with the Court, should be made to me in

3    writing, signed by your foreperson, and given to the marshal

4    who will be available outside the jury room throughout your

5    deliberations.  After consulting with counsel, I will respond

6    to any question or request you have as promptly as possible,

7    either in writing or by having you return to the courtroom so

8    that I can speak with you in person.

9            You should not, however, tell me or anyone else how

10   the jury stands on any issue until you have reached your

11   verdict and recorded it on your verdict form.  As I have

12   already explained, the government, to prevail against a

13   particular defendant, must prove each essential element of the

14   conspiracy charge beyond a reasonable doubt.  If the government

15   carries its burden with respect to a defendant, you should find

16   that defendant guilty of that charge.  Otherwise, you must find

17   that defendant not guilty of that charge.

18           Each of you must decide the case for yourself after

19   consideration with your fellow jurors of the evidence in the

20   case, and your verdict must be unanimous.  In deliberating,

21   bear in mind that while each juror is entitled to his or her

22   opinion.  You should exchange views with your fellow jurors.

23   That is the very purpose of jury deliberation -- to discuss and

24   consider the evidence, to listen to the arguments of fellow

25   jurors, to present your individual views, to consult with one

L3NHWEI1                    Charge

1   another, and to reach a verdict based solely and wholly on the

2   evidence.  If, after carefully considering all the evidence and

3   arguments of your fellow jurors, you entertain a conscientious

4   view that differs from the others, you are not to yield your

5   views simply because you are outnumbered.  On the other hand,

6   you should not hesitate to change an opinion that, after

7   discussion with fellow jurors, now appears to you erroneous.

8          In short, your verdict must reflect your individual

9   views and must also be unanimous.

10          This completes my instructions of law.

11          Now, all objections previously made by counsel for any

12   of the parties to my charge are hereby deemed to be renewed at

13   this point and are denied for the reasons stated at the

14   charging conference.

15          Is there any reason any counsel needs to approach the

16   bench otherwise?

17          MR. FOLLY:  No, your Honor.

18          MR. TAYBACK:  No, your Honor.

19          MR. GILBERT:  No, your Honor.

20          THE COURT:  Very good.  We will then swear in the

21   marshal who will guard you throughout your deliberations.

22          THE DEPUTY CLERK:  Marshal, please come forward.

23          (Marshal sworn)

24          THE DEPUTY CLERK:  Jurors, please follow the marshal.

25          (At 10:30 a.m., the jury retired to deliberate)

L3NHWEI1

1          (Jury not present)

2          THE COURT:  Please be seated.

3          All right.  So when I was a trial lawyer, what I most

4    wanted to do at this point in time was get about 15 hours of

5    sleep, but at least one of you from each party has to remain in

6    the courtroom except between 12:45 and 1:45.

7          MS. LA MORTE:  Your Honor, one simple question.

8          THE COURT:  Yes.

9          MS. LA MORTE:  What's the situation with the call-in

10   line for the public?  Like, when there's a jury note or the

11   verdict's read, is it just open?

12         THE COURT:  Everything we do here in court is open.

13         MS. LA MORTE:  OK.  So it will just be silence

14   until --

15         THE COURT:  Pardon?

16         MS. LA MORTE:  So it will just be silence on the line

17   until something happens, is that generally how it works?  I

18   guess we'll find out.

19         THE LAW CLERK:  Yes and no.  We may have other

20   proceedings on that line, so there may or may not be silence.

21   Anyone on that line has to make sure they're not muted so as

22   not to disrupt any other proceedings on that line.  So

23   otherwise there will be silence.

24         MS. LA MORTE:  Thank you.

25         THE COURT:  I actually have proceedings at 11:00,

L3NHWEI1

1    11:15, and some other time.

2              MS. LA MORTE:  OK.

3              THE COURT:  But you're welcome to listen in.

4              MS. LA MORTE:  I will.  We'll be here.

5              THE COURT:  Very good.  We'll see you all.

6              MR. TAYBACK:  Your Honor, one other brief matter.

7              THE COURT:  Yes.

8              MR. TAYBACK:  May we have leave to submit an

9    application to renew our device order for this week?  It

10   expires today.

11             THE COURT:  Sure.

12             MR. TAYBACK:  So that we can bring our devices in.

13             THE COURT:  Yes, absolutely.

14             MR. TAYBACK:  We'll submit that today, your Honor.

15             THE COURT:  Good.  Thanks a lot.

16             MS. LA MORTE:  Thank you, your Honor.

17             (Recess pending verdict)

18             (Continued on next page)

19

20

21

22

23

24

25

1              (In open court; jury not present)

2              THE COURT:  Please be seated.  Nothing of great

3    moment, but first, there was a note received at 11:33:  "Can we

4    have" -- is that "smart board"?

5              MS. LA MORTE:  Yes.

6              MR. GILBERT:  Yes.

7              THE COURT:  -- "smart board and markers," signed

8    H. Todd Freeman, foreperson.

9              So I had my courtroom deputy supply them with what I

10   used to call a white board, but apparently it's now a smart

11   board.  I wonder what a stupid board is?  But in any event,

12   that was taken care of.  I didn't see any need to consult with

13   counsel on that.

14             Then we just received a note at 12:19:  "Can we have

15   the closing remarks from both prosecutor and defendants."  Now,

16   I know you would love to send that in, appropriately stamped

17   with your copyrights, but the law does not permit summations to

18   be sent to the jury.  So I have drafted the following note for

19   your approval:  "To the jury:  Thank you for your note

20   requesting the final arguments of counsel; however, the law

21   does not permit me to send those to you, since they are not

22   evidence.  I regret this, but please let me know if there are

23   any other way counsel and I can be of help."  Signed, "Judge

24   Rakoff."

25             Any disagreement with that?

L3NPWEI2

1             MR. FOLLY:  No, your Honor.

2             MR. GILBERT:  No, your Honor.

3             MR. TAYBACK:  No, your Honor.  That's fine.

4             THE COURT:  I'll give that to my courtroom deputy, and

5     I have another copy here, which I will mark as Court Exhibit 2

6     because I will mark the copy of my charge as Court Exhibit 1

7     and ask that it be docketed.

8             Okay.  I also asked my courtroom deputy to have the

9     marshal inform the jury that you all will be at lunch from

10    12:45 to 1:45; so we won't be able to respond to anything

11    during that period.

12            Anything else?

13            MR. FOLLY:  No.

14            MR. TAYBACK:  Nothing, your Honor.

15            MR. GILBERT:  No, your Honor.

16            THE COURT:  Very good.  See you later.

17            (Recess pending verdict)

18            (In open court; jury not present)

19            THE COURT:  All right.  We received several notes.

20    All right.  One of them, which my courtroom deputy is bringing

21    up but was to the effect that the juror who wanted to leave at

22    3:30 today, which we had agreed to the other day, now wanted to

23    leave at 3:00, and it was signed not just by her but by the

24    foreperson.  So it appears it has the agreement of the jury as

25    a whole.

L3NPWEI2

1           So I think we need to let them go at 3:00, making

2     clear that they all have to go and deliberations have to cease.

3     And I'll have my courtroom deputy instruct them that the

4     foreperson has to make sure they don't recommence deliberations

5     tomorrow morning until all 12 of them are there, and they

6     should plan on a 9:45 to 3:45 day tomorrow.

7           Any problem with any of that?

8           MR. FOLLY:  No, your Honor.

9           MR. GILBERT:  No, your Honor.

10          MR. TAYBACK:  No, your Honor.

11          THE COURT:  Very good.  Then the next note, this one I

12    have here is:  "Can we have the transcript of Ollie's

13    (Hargreaves) testimony."  I know you guys have been working on

14    it, but I've been told that it's taking a long time because you

15    feel that you need to not only eliminate sidebars, which of

16    course I agree with, and any proceedings that occurred outside

17    the presence of the witness, like in between breaks or things

18    like that, but also you have to strike any testimony that was

19    directed to be stricken.  I don't agree with that at all.

20          They've been instructed to disregard it.  That was

21    clear in my instructions and that's going to take much more

22    time.  If we just get rid of sidebars and in-between breaks, it

23    shouldn't take you more than ten minutes to put this darn thing

24    together.  But if you have to go through like each line by line

25    to see if anything was stricken, it's going to take you

L3NPWEI2

1    forever.

2            So unless anyone disagrees, my practice, which I've

3    used for many years, is just to send in -- and here we can do

4    it electronically -- the testimony without the sidebars and

5    without any colloquy that occurred outside the presence of the

6    witness.  Any objection to that?

7            MR. TAYBACK:  Your Honor, no objection.  I'm fine with

8    that.

9            MR. GILBERT:  No objection.

10           MS. LA MORTE:  That's fine, your Honor.

11           THE COURT:  Very good.  All right.  So let's see if we

12   can get that done before they leave at 3:00; so at least

13   they'll know that we've responded to their -- yes, ma'am?

14           MS. LA MORTE:  No, I'm just --

15           THE COURT:  You're just --

16           MS. LA MORTE:  I'm hanging out.

17           THE COURT:  Now, we've got two other notes just

18   received:  "Can you tell us which documents where Ruben signs

19   off on the EUprocessing e-mail account?" So actually, I misread

20   it -- "which document."  I think that's the document each side

21   referred to in the summation.

22           MS. LA MORTE:  Yes.

23           THE COURT:  So what is the number?

24           MS. LA MORTE:  3923.

25           THE COURT:  So we will tell them that it's 3923.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

L3NPWEI2

| | |
|---|---|
| 1 | MS. DEININGER:  Government Exhibit 3923, to be clear. |
| 2 | MS. LA MORTE:  Yes. |
| 3 | THE COURT:  Defense exhibits usually start about |
| 4 | 25,000, right? |
| 5 | MS. LA MORTE:  In this case, yes. |
| 6 | THE COURT:  And then the next final note is:  "Do you |
| 7 | know the document where Ruben states" -- you haven't seen this |
| 8 | yet. |
| 9 | MR. FOLLY:  I think it's "Ruben states that" -- |
| 10 | THE COURT:  I'm sorry? |
| 11 | MR. FOLLY:  I think it's that "Ruben states that four |
| 12 | out of" -- |
| 13 | THE COURT:  Oh, four.  "Four out of." |
| 14 | MR. FOLLY:  I think that's what it is. |
| 15 | MS. LA MORTE:  Something fraudulent -- four of the |
| 16 | applications have been submitted. |
| 17 | THE COURT:  Four out of what? |
| 18 | MR. FOLLY:  It's hard to read that. |
| 19 | MS. LA MORTE:  It's hard to read some words.  I think |
| 20 | it's "the." |
| 21 | THE COURT:  "Out of the five," maybe. |
| 22 | MS. LA MORTE:  I don't know.  We have what we think is |
| 23 | responsive.  It's Government Exhibit 4,004, at page 84. |
| 24 | MR. GILBERT:  I'm sorry, your Honor.  We're just going |
| 25 | to go and look at the document on the screen. |

L3NPWEI2

```
 1                THE COURT:  Yes, go ahead.

 2                (Pause)

 3           I'm sorry if someone wanted to say something, I can't

 4      hear you from back there.

 5                MR. ARTAN:  We're still looking.

 6                THE COURT:  Ms. LaMorte, what was the number of that

 7      first exhibit?

 8                MS. LA MORTE:  3923.

 9                THE COURT:  3923.  Okay.

10                MR. TAYBACK:  I guess just in the interest of clarity,

11      speaking to Mr. Folly, there were portions that I think had

12      been redacted that were inconsistent with what your Honor said,

13      and we're going to redact those only where the jury is not

14      present, right?

15                THE COURT:  You're talking about the testimony?

16                MR. TAYBACK:  Yes.

17                THE COURT:  The only things to be redacted are the

18      sidebars, if any -- I'm not sure there were more than one or

19      two -- and then anything that occurred outside the presence of

20      the jury, like a colloquy at a break.

21                MR. TAYBACK:  Yes.

22                THE COURT:  Everything else goes.

23                MR. TAYBACK:  I understand.

24                (Pause)

25           So now I'm getting used to our foreperson's
```

L3NPWEI2

1   handwriting.  I now would read the most recent note as "Do you

2   know the document where Ruben states that four out of the five

3   applicants" or "applications have been submitted?"

4           MS. LA MORTE:  Your Honor, the thing that I'm thinking

5   of -- I don't remember any such testimony or document.  I

6   have -- what I have up on the screen is 4,004, 84.  Ray says:

7   "Ruben, when was the Hot Robot's app submitted to Wirecard?  I

8   thought only the three other ones got submitted."  And then

9   Ruben responds:  "All four at the same time."  Then Ray says:

10  "Ruben, can you please confirm if we submitted all four of our

11  current corps to Kalixa, as well as Wirecard, or did we submit

12  all four to Wirecard" --

13          THE COURT:  Okay.  I think that must be it.  If it's

14  not it, they'll tell us.  Since it's in evidence, it's harmless

15  if it turns out to be not what they want.  What's the number on

16  that?

17          MS. LA MORTE:  4,004, page 84.

18          THE COURT:  4,004, at page 84.  Okay.  Any

19  disagreement with that?

20          MR. GILBERT:  No.

21          MR. TAYBACK:  No, your Honor.

22          THE COURT:  Okay.  So I'll have my courtroom deputy

23  tell them the following things:

24          One.  That they can leave at 3:00; that they all have

25  to leave, and they can't resume deliberations until all 12 of

L3NPWEI2

1    them are back, and the foreperson is in charge of making sure

2    that's true.  And they should return at 9:45 tomorrow.

3              Two.  That we are working on getting them

4    Mr. Hargreaves' testimony.  We hope to get it to them before

5    they leave at 3:00, but if not, it will be waiting for them

6    when they return at 9:45 tomorrow.

7              Three.  That the exhibit they asked for regarding

8    where Ruben signs off on the EUprocessing e-mail account is the

9    number -- I just gave the number to my courtroom deputy.

10             THE DEPUTY CLERK:  3923.

11             THE COURT:  And finally, that the document responsive

12   to their other note is the number that we -- I also just wrote

13   down and a particular page.  And so we'll give all that to

14   them, and we'll need to excuse my courtroom deputy right now so

15   they get that to them before they leave at 3:00.

16             Okay.  And you all can leave at 3:00.

17             Anything anyone needs to raise with the Court?

18             MR. FOLLY:  No, your Honor.

19             MR. GILBERT:  No, your Honor.

20             MR. TAYBACK:  No, your Honor.

21             MS. LA MORTE:  No.

22             THE COURT:  Very good.  All right.

23             MS. LA MORTE:  See you tomorrow.

24             THE COURT:  No, hang out until 3:00.

25             MS. LA MORTE:  All right.  We have five minutes.

L3NPWEI2

1          THE COURT:  All right.  See you tomorrow.  Oh, this is

2   the one and only thing I will say off the record.

3          (Adjourned until 9:45 a.m. on March 24, 2021)