UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | |
| HAMID AKHAVAN, | |
| Defendant. | |

20-cr-188-2 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

On March 24, 2021, a jury found defendant Hamid Akhavan guilty of one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. The Court sentenced Akhavan, inter alia, to 30 months of imprisonment to be followed by three years of supervised release and, as relevant here, imposed forfeiture in the amount of $103,750 after an evidentiary hearing. In imposing that forfeiture amount, the Court held that although the Government had proven by a preponderance of the evidence that Akhavan "obtained" $17,183,114.57 from his criminal conduct, such a forfeiture would have been an excessive fine prohibited by the Eighth Amendment. The Second Circuit, however, vacated the Court's order of forfeiture and remanded for a fresh analysis. While the Second Circuit upheld the Court's factual findings, it concluded that the Court improperly weighed the factors set forth in United States v. Bajakajian, 524 U.S. 321 (1998) and United States v. Viloski, 814 F.3d 104 (2d Cir. 2016), for determining whether a forfeiture

1

amount is unconstitutionally excessive. After considering the factors anew with the aid of supplemental briefing and oral argument, the Court hereby imposes forfeiture in the amount of $17,183,114.57 under 18 U.S.C. § 982(a)(2).

I.   Background

A. The Court's Previous Forfeiture Order

On March 24, 2021, "Akhavan was convicted of conspiring to defraud U.S. banks and others through a fraudulent payment processing scheme." ECF No. 352 ("Forfeiture Op."), at 1. "Akhavan and his co-conspirators tricked banks and credit card issuers into processing more than $150 million of cardholder transactions for marijuana, purchased through the marijuana delivery company Eaze, when the banks and others had a firm policy of not allowing such transactions." Id. At Akhavan's initial sentencing proceeding held on June 18, 2021, the Court, at first, orally imposed forfeiture of $17,183,114.57. On August 12, 2021, at defense counsel's request, however, the Court held an evidentiary hearing to reconsider the amount of forfeiture, after which it received supplemental briefing on the issue.

After considering the hearing and full briefing, the Court, on August 30, 2021, issued an Opinion and Order revising the amount of forfeiture to $103,750. The Court first made a factual finding that "[t]he Government's evidence as to the rates charged by the processing entities, totaling $17,183,114.57 . . . establish[ed]

Akhavan's 'control' over those funds sufficient for forfeiture liability." Id. at 11. "Specifically, the Government's evidence showed that it was Akhavan who controlled, even dictated, what these charges would be and how they would be disbursed to the co-conspirators." Id. at 11-12. Because, for the purpose of forfeiture, funds are considered "'obtained' by the defendant" if they were "at some point . . . under the defendant's control," the Court concluded that Akhavan "obtained" $17,183,114.57 as a result of the conspiracy for which he was found guilty. Id. at 6-7, 14; see 18 U.S.C. § 982(a)(2) ("The court, in imposing sentence on a person convicted of [conspiracy to commit bank fraud] shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation."); see also United States v. Contorinis, 692 F.3d 136, 147 (2d Cir. 2012) (holding that funds "under the defendant's control" are considered "obtained" by the defendant in assessing forfeiture).

But the Court did not impose forfeiture in that amount. The Court held that such a forfeiture would be "unconstitutionally excessive" under the Eighth Amendment because "it is grossly disproportional to the gravity of the defendant's offense." Forfeiture Op. at 16. In making that holding, the Court considered each of the four non-exhaustive factors identified by the Supreme Court in United States v. Bajakajian, 524 U.S. 321 (1998), as

distilled by the Second Circuit in United States v. Viloski, 814
F.3d 104 (2d Cir. 2016), as well as one additional factor that
Viloski pinpointed. The four "Bajakajian factors" are: "(1) the
essence of the crime of the defendant and its relation to other
criminal activity, (2) whether the defendant fits into the class
of persons for whom the statute was principally designed, (3) the
maximum sentence and fine that could have been imposed, and (4)
the nature of the harm caused by the defendant's conduct." Viloski,
814 F.3d at 110.[1] In addition to those four factors, the Second
Circuit held in Viloski "that, when analyzing a forfeiture's
proportionality under the Excessive Fines Clause, courts may
consider . . . whether the forfeiture would deprive the defendant
of his livelihood, i.e., his future ability to earn a living." Id.
at 111.

As for the first factor, "the essence of the crime of the
defendant and its relation to other criminal activity," id. at
110, the Court reasoned that it cut both ways. Akhavan's conspiracy
"occurred over a period of several years and concerned roughly
$156 million worth of transactions." Forfeiture Op. at 17. "[T]he
scheme was intended to fool the banks and others into accepting
what were disguised marijuana purchases that, in furtherance of
the federal law prohibition on the distribution of marijuana, they

---

[1] Here and elsewhere, internal alterations, citations, and
quotation marks have been omitted.

had decided not to process." Id. "It was thus a serious fraud that potentially placed the banks at risk; but from the economic standpoint, no one lost money." Id.

The second factor -- "whether the defendant fits into the class of persons for whom the statute was principally designed" -- also weighed against Akhavan. Id. "As the one who designed a scheme specifically intended to defraud federal banks, Akhavan clearly fits into the class of persons for whom the bank fraud statute was designed." Id.

The Court, however, placed particular emphasis on the third factor, "the maximum sentence and fine that could have been imposed," which it understood to favor Akhavan. Id. "[T]he maximum sentence was 360 months' imprisonment; the maximum fine was $1 million." Id. at 17-18.[2] The Court noted that "[a] $17 million forfeiture order would be 17 times the maximum fine possible . . . and would be 170 times the amount of the fine actually imposed in this case." Id. at 18. "In either case, it is wholly out of proportion to the maximum and actual fine (which, of course, is

---

[2] The Government had made a belated argument, "for the first time in post-hearing briefing, that the maximum fine amount could have exceeded $300 million under a different statute, 18 U.S.C. § 3571." Forfeiture Op. at 18 n.9. "The Court decline[d] to consider this argument raised for the first time after the Government had previously agreed that the maximum fine was $1 million and after the Court ha[d] already imposed the fine [of $100,000] at sentencing in this case." Id.

the principal and historic means of punishing a defendant financially)." Id.

The Court also weighed the fourth factor, "the nature of the harm caused by the defendant's conduct," in Akhavan's favor. Id. "Here," the Court explained, "neither the banks nor the Government suffered any financial loss as a result of the defendant's conduct." Id.

Finally, the Court held that the fifth factor from Viloski -- "whether the forfeiture would deprive the defendant of his livelihood" -- cut against Akhavan. Id. at 18-19. Although "the forfeiture would substantially diminish his assets and his effective income," the Court concluded that "the history of forfeiture collection suggests that Akhavan could still engage in employment." Id. at 19.

After assessing each of those factors, the Court held as dispositive that "there was no articulable loss to any party as a result of Akhavan's crime and a $17 million forfeiture order is seventeen times the maximum fine and 170 times the actual fine imposed in this case." Id. "Though this was indeed a serious fraud, and though the defendant fits into the class of persons for whom the statute was principally designed," the Court concluded that "neither of these factors outweighs the huge disproportionality that these figures suggest." Id. The Court instead found that "$103,750 -- the value of the Eaze stock option given to Akhavan

-- is proportional to the gravity of his offense." Id. at 20. "This amount is a reasonable estimate," the Court held, "given the available information, and roughly equivalent to the amount of the fine the Court imposed." Id.; see United States v. Treacy, 639 F.3d 32, 48 (2d Cir. 2011) (holding that, because "[t]he calculation of forfeiture amounts is not an exact science," a district court "need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information").

B. The Second Circuit's Vacatur and Remand

In a summary order filed on January 11, 2023, the Second Circuit affirmed the convictions of Akhavan and co-conspirator Ruben Weigand, but, as relevant here, vacated the Court's forfeiture order. ECF No. 377 ("2d Cir. Order"). As an initial matter, the Second Circuit confirmed the parties' understanding "that the forfeiture at issue is a 'fine' within the meaning of the Excessive Fines Clause." Id. at 12 n.3. The Second Circuit also left undisturbed this Court's factual finding "that Akhavan 'obtained' $17,183,114.57 for purposes of forfeiture under 18 U.S.C. § 982(a)(2)." Id. at 13. But the Second Circuit identified two legal errors in the Court's analysis of the Bajakajian factors.

First, the Second Circuit held that the Court's "reasoning as to the third Bajakajian factor stands in tension with [Second Circuit] caselaw." Id. at 14. "In particular," the Second Circuit

explained, "[its] precedents suggest that a forfeiture amount is not necessarily greatly disproportionate where it equals the proceeds of the illegal scheme, even if it significantly exceeds the maximum statutory fine." Id. (citing three prior Second Circuit decisions to that effect). In particular, the Second Circuit relied on United States v. Castello, 611 F.3d 116 (2d Cir. 2010), in which it had "ordered the district court to reimpose a $12 million forfeiture order where the maximum penalty was five years' imprisonment and the maximum statutory fine was $250,000, but where the defendant's fraud involved more than $200 million in unreported funds." 2d Cir. Order at 14 (summarizing Castello). The Second Circuit then emphasized that "because a $17 million forfeiture is equivalent to Akhavan's proceeds from the fraud, the fact that a forfeiture in that amount would greatly exceed [the] statutory maximum fine does not, in and of itself, compel a finding of unconstitutionality." Id. at 14–15.

Second, again relying on Castello, the Second Circuit held that the Court's "harm inquiry" -- in which this Court "stated that Akhavan's scheme generated no articulable loss" to the banks or others -- "should not be so narrow." Id. at 14 n.5. The Second Circuit emphasized that "[m]arijuana is a federally illegal narcotic" and that "Akhavan's scheme resulted in banks processing transactions they would not have otherwise processed and allowed others to take actions that, absent the scheme, the government

could have prevented or prosecuted." Id. "Though not articulable in dollars," the Second Circuit explained, "those consequences are nonetheless a harm." Id.

Because of the need for resentencing in light of the Second Circuit's vacatur of the Court's forfeiture order, the parties submitted renewed briefing on the proper forfeiture amount. See ECF No. 378 ("Gov't Mot."); ECF No. 380 ("Akhavan Opp."); ECF No. 381 ("Gov't Reply"); ECF No. 384 ("Akhavan Supp. Letter"); ECF No. 385 ("Gov't Supp. Letter"). The Court held an additional hearing on January 22, 2024.

II.  Analysis

The Court imposes forfeiture in the amount of $17,183,114.57, the sum that Akhavan "obtained . . . as the result of" his criminal conduct. 18 U.S.C. § 982(a)(2). Although the Court previously held such a forfeiture to be an excessive fine prohibited by the Eighth Amendment, the Second Circuit's vacatur order undercut both aspects of the Court's reasoning that tilted in Akhavan's favor. It should be remembered that, of the five Bajakajian-Viloski factors, this Court had already held that the second and fifth factors weighed against Akhavan. Nothing in the Second Circuit's order casts doubt on those conclusions. But the Second Circuit's order held that the Court's analysis of the remaining three factors contained legal error. When reperforming the analysis in light of the Second Circuit's order and guidance, those three factors do

not establish that forfeiting the amount Akhavan obtained as a result of the offense is an unconstitutionally excessive fine.

The Court had relied on two grounds -- related to the first, third, and fourth Bajakajian factors -- in previously holding that the $17 million forfeiture amount was excessive. First, relevant to the third factor, the Court had noted that "a $17 million forfeiture order is seventeen times the maximum fine and 170 times the actual fine imposed in this case." Forfeiture Op. at 19. But the Second Circuit held that this Court's "reasoning as to the third Bajakajian factor stands in tension with [Second Circuit] caselaw." 2d Cir. Order at 14. In particular, "a forfeiture amount is not necessarily greatly disproportionate where it equals the proceeds of the illegal scheme, even if it significantly exceeds the maximum statutory fine." Id. As noted, the Second Circuit particularly relied on United States v. Castello, 611 F.3d 116 (2d Cir. 2010), which held that in a case involving statutory maximum penalties of "five years' imprisonment and a $250,000 fine," "the third factor weigh[ed] in favor of full forfeiture" of $12 million even though "the statutory maximum fine was a small fraction of the $12 million." 611 F.3d at 123.[3] In that case, the ratio of

_____

[3] The Second Circuit had also held in Castello that, in considering the ratio between the forfeiture amount and the maximum fine for the third Bajakajian factor, "the relevant metric is the top of the Guidelines for the fine," rather than the maximum statutory fine. 611 F.3d at 123. Here, however, the parties agree that the top of the Guidelines range for the fine is $1 million. See Gov't

forfeiture to maximum statutory fine was thus a whopping 48 to 1 -- even more concerning than the ratio of 17 to 1 here. Yet the Second Circuit "ordered the district court to reimpose [the] $12 million forfeiture order." Forfeiture Op. at 14 (summarizing Castello). Accordingly, the Second Circuit's vacatur order in this case explained that "because a $17 million forfeiture is equivalent to Akhavan's proceeds from the fraud, the fact that a forfeiture in that amount would greatly exceed [the] statutory maximum fine does not, in and of itself, compel a finding of unconstitutionality." Id. at 14-15. Thus, to make such a finding of unconstitutionality, something more would be needed.

The "something more" that this Court had previously identified in concluding that $17 million of forfeiture would be an excessive fine was that "there was no articulable loss to any party as a result of Akhavan's crimes." Forfeiture Op. at 19. That affected the Court's weighing of both the first and fourth Bajakajian factors -- respectively, "the essence of the crime of the defendant and its relation to other criminal activity," and "the nature of the harm caused by the defendant's conduct." Id. at 17-18. But the Second Circuit took issue with the Court's determination "that Akhavan's scheme generated no articulable

---

Mot. at 5 n.3; Akhavan Opp. at 6. Setting aside the Government's waived argument that the statutory maximum fine is more than $300 million because of a different statute, the maximum Guidelines fine is thus equivalent to the statutory maximum fine.

loss," explaining that "the harm inquiry should not be so narrow." 2d Cir. Order at 14 n.5. In particular, "[m]arijuana is a federally illegal narcotic" and "Akhavan's scheme resulted in banks processing transactions they would not have otherwise processed and allowed others to take actions that, absent the scheme, the government could have prevented or prosecuted." Id. "Though not articulable in dollars, those consequences are nonetheless a harm." Id.

Because of the Second Circuit's guidance and mandate, the Court can no longer conclude that Akhavan's conduct did not lead to an "articulable loss" or that it did not cause the banks some harm, even though the banks profited from processing the federally illegal transactions. Id. As a result, the first and fourth Bajakajian factors do not tilt in Akhavan's favor. At most, the Court can conclude that Akhavan's crime could have been worse if it also imposed economic loss in addition to its less tangible harms. But that is not a sufficient reason to conclude that forfeiture equivalent to the amount Akhavan obtained from the crime is "grossly disproportional to the gravity of [the] offense." Bajakajian, 524 U.S. at 334.

"The burden rests on the defendant to show the unconstitutionality of the forfeiture," Castello, 611 F.3d at 120, and Akhavan has not done so here. In his recent briefing, Akhavan first seeks to revisit the Court's factual finding that he obtained

$17 million as a result of his criminal conduct. See Akhavan Opp. at 2-5. But Akhavan argued that same point to the Second Circuit, which rejected it. The Second Circuit's order endorsed the Court's factual finding by specifically stating that "a $17 million forfeiture is equivalent to Akhavan's proceeds from the fraud." 2d Cir. Order at 14. Akhavan's argument is thus barred by the mandate rule. See United States v. Malki, 718 F.3d 178, 182 (2d Cir. 2013) ("When [the Second Circuit's] remand is limited, the mandate rule generally forecloses re-litigation of issues previously . . . decided by the appellate court. Similarly, it also precludes litigation of issues impliedly resolved by the appellate court's mandate."); United States v. Baresi, 361 F.3d 666, 672 (2d Cir. 2004) ("If the remand specifies the nature of the correction to be made, the scope of the issues on remand is thereby limited.").

Akhavan next argues that $17 million is grossly disproportional to the gravity of his offense because "the scheme was never intended to cause any economic harm (and, in fact, none occurred)." Akhavan Opp. at 5. As a result, he argues, "[t]he crime thus lacks the malicious nature (and economic impact) characteristic of a traditional bank fraud." Id. Similarly, he contends that his conduct "caused no harm" because "the very entities the statute is designed to protect -- the U.S. banks -- did not lose money." Id. at 7. But the Second Circuit has already cautioned the Court not to take such a narrow view of the harms of

Akhavan's offense and the losses it caused. See 2d Cir. Order at 14 n.5. Accepting Akhavan's argument would once more place the Court in the crosshairs of a legal error that led the Second Circuit to vacate the previous forfeiture order. Moreover, Akhavan's limited focus on economic harm obfuscates the harm that his conduct did cause, namely, tricking banks into processing $156 million of transactions that propagated the unlawful distribution of a controlled substance.

Once more seeking to sidestep the Second Circuit's mandate, Akhavan points out that $17 million "remains 17 times the maximum applicable fine of $1 million." Akhavan Opp. at 6.[4] True as that is, the Second Circuit was quite clear that the Court cannot rest a constitutional reduction of the forfeiture amount on that ground alone.

The only other ground Akhavan offers, besides his unavailing argument about harm, is that imposing a $17 million forfeiture

---

[4] The Government re-peddles its already-waived argument that the maximum statutory fine is in fact over $300 million. See Gov't Mot. at 3 & n.5. As the Court explained in its previous forfeiture order, the Court "declines to consider this argument raised for the first time after the Government had previously agreed that the maximum fine was $1 million." Forfeiture Op. at 18 n.9. In any event, this point makes no difference to the Court's analysis because, in light of the Second Circuit's order and mandate, the third Bajakajian factor cannot independently demonstrate that the forfeiture amount is an excessive fine.

"will deprive [him] of his livelihood." Id. at 7.[5] That contention has two subparts, neither of which is successful. First, he states in a cursory manner that "there is virtually no prospect for Mr. Akhavan, a convicted felon, to ever again work in the financial sector, the only area in which he has meaningful experience." Id. But the Court already considered and rejected that argument in its analysis of this factor -- the fifth Viloski factor -- in its previous forfeiture order. See Forfeiture Op. at 19 (finding that "the history of forfeiture collection suggests that Akhavan could still engage in employment" even "though the forfeiture would

_____

[5] Akhavan's latest submission details the progress that he has made -- and the hardships he still faces -- since completing his term of imprisonment. Its gravamen is that "[t]here is simply no justice to be served by imposing further financial punishment on Mr. Akhavan." Akhavan Supp. Letter at 3. But "there is a significant difference between a district court's role in determining the appropriate length of a sentence and its role in ordering a criminal forfeiture." Viloski, 814 F.3d at 111 n.11. "In general, a sentencing court is empowered by statute to consider a wide range of factors when determining what sentence to impose." Id. "In the case of forfeiture, however, once a court determines that property sought by the government was" obtained as a result of the defendant's criminal conduct, "the court shall order that such property be forfeited." Id. "As long as the factual predicate for the application of" the criminal forfeiture statute "has been satisfied, therefore, a district court has no discretion not to order forfeiture in the amount sought." Id. "The court's only role is to conduct the gross disproportionality inquiry required by Bajakajian." Id.

Akhavan's latest submission also asks the Court to lift certain conditions of his supervised release. But because jurisdiction over Akhavan's supervised release has been transferred to the Central District of California, see ECF No. 379, Akhavan must pursue his request in that forum.

substantially diminish his assets"). Second, Akhavan asserts that "he lacks the resources to pay an award of this magnitude." Akhavan Opp. at 7. But "courts may not consider as a discrete factor a defendant's personal circumstances, such as . . . present financial condition, when considering whether a criminal forfeiture would violate the Excessive Fines Clause." Viloski, 814 F.3d at 112. That is because "asking whether a forfeiture would destroy a defendant's future livelihood is different from considering as a discrete factor a defendant's present personal circumstances, including age, health, and financial situation." Id. "While hostility to livelihood-destroying fines is deeply rooted in our constitutional tradition, consideration of personal circumstances is not." Id.

The Court is mindful, however, "that a person's health and financial condition might bear on his ability to make a living" in the future. Id. at 113. "Personal circumstances might thus be indirectly relevant to a proportionality determination, to the extent that those circumstances, in conjunction with the challenged forfeiture, would deprive the defendant of his livelihood." Id. To extinguish any possibility that the $17,183,114.57 forfeiture amount may deprive Akhavan of his livelihood, the Court orders, with the consent of both parties, that Akhavan pay the forfeiture at a rate of 5% of his gross monthly income. At the hearing on January 22, 2024, the parties

additionally represented that they would cooperate to determine whether, apart from future income, Akhavan possesses forfeitable assets to provide to the Government. The Court trusts that the parties will undertake such cooperation in good faith.

III. <u>Conclusion</u>

The Court orders that Akhavan pay forfeiture under 18 U.S.C. § 982(a)(2) in the amount of $17,183,114.57, to be paid at a rate of 5% of Akhavan's gross monthly income, beginning in the month after the amended judgment is entered in this case. In addition to the payments of 5% of his gross monthly income, Akhavan must cooperate with the Government to provide any other forfeitable assets that will be credited toward the $17,183,114.57 upon their tender. The Clerk is respectfully directed to close documents 373 and 378 on the docket of this case.

SO ORDERED.

New York, NY
January 29, 2024

JED S. RAKOFF, U.S.D.J